IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.

JOHN ANTHONY CASTRO (01)

CRIMINAL NO.   4:24-CR-1-Y

## GOVERNMENT=S EXPERT WITNESS DESIGNATION

Pursuant to Federal Rules of Criminal Procedure Rule 16(b)(1)(C) and 16(a)(1)(G), the United States of America, by and through its counsel, respectfully notifies the defendant of its intent to offer testimony during its case-in-chief of the following individual who will serve as expert witness or witness with expertise under Federal Rules of Evidence 701, 702, 703, or 705: Internal Revenue Agent Adam Wieborg.   The following information is designed to comply with the disclosures required under Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) and (v).

The United States does not concede or contend that every portion of the testimony described below necessarily qualifies as expert testimony under the Federal Rules of Evidence or implicates the disclosure requirements of Federal Rule of Criminal Procedure 16.   Nonetheless, the United States provides this disclosure out of an abundance of caution, or if the defense argues, or if the Court concludes, that such testimony constitutes expert opinion testimony.   Further, the United States may not elect to elicit from this witness all the testimony described herein.

**Government=s Notice of Expert Witness - Page  1**

In addition, this notice may need to be supplemented based upon the expert disclosures submitted by the defense, due on April 6, 2024.

**A.      Background –** Agent Wieborg has been a revenue agent with the IRS since 2021.   He received a bachelor's degree in business administration, with an accounting major from the University of West Florida in 2012.   He then received a Master of Accountancy from the University of West Florida in 2022.   As a revenue agent, he has received IRS training in in income tax law and special enforcement training. Before becoming a revenue agent, Agent Wieborg served as an accounting manager for Tata Consultant Services between 2018 and 2021 and a Senior Accountant with TransAmerica Life Insurance Company between 2017 and 2018.   Prior to that, Agent Wieborg served as a Senior Accountant with the Department of Public Safety and Office of Management and Finance for the State of Louisiana between 2014 and 2017 and as a Senior Recovery Grant Analyst for the state of Louisiana between 2012 and 2014.   He is a member of the National Treasury Employees Union and taught other IRS agents on a variety of tax topics since 2021.

**B.      Prior Work as Expert Witness and Publications –** Agent Wieborg has not testified as an expert witness in a trial or in a deposition over the previous four years. Agent Wieborg has not authored any publications in the previous 10 years.

**C.      Overview of Testimony –** It is anticipated that Agent Wieborg will assist the Court (now that the defendant has elected for a bench trial) to understand the tax reporting and payment obligations of individuals and entities in the United States.   He will

testify about the purpose and use of certain tax forms, including a Form 1040, Schedule A, and Schedule C.

It is anticipated that Agent Wieborg will explain what the IRS does, and the programs and services funded by income and other taxes (this will be abbreviated because the case will proceed as a bench trial).  He will testify that the IRS is an agency of the United States Department of the Treasury responsible for the enforcement and administration of the tax laws, and the collection of taxes owed to the United States.  He will explain that taxes collected by the IRS fund various federal programs including but not limited to Social Security, Medicare, the military, law enforcement, disaster relief, and education.

It is anticipated that Agent Wieborg will provide a general explanation of the voluntary tax system in the United States and the duty to file a tax return when an individual's income reaches a certain threshold.  He will explain the different types of filing statues (married, single, married filing separately, and head of household) and which classification should be used.   He will explain the different parts of an income tax return, including the sections addressing income, deductions, calculation of the tax, and the obligation to sign the tax return under penalty of perjury.

It is anticipated that Agent Wieborg will explain the various forms that businesses may take, including Schedule C sole proprietorships. This explanation will include how such businesses report income to the government, whether separate tax returns are required

for the businesses, and how individuals associated with those businesses are required to report income.

It is anticipated that Agent Wieborg will explain the nature of the income which must be reported to the federal government—in other words, what constitutes income and what does not constitute income for tax purposes.   Money or other compensation paid to any individual for goods sold or services rendered constitutes income to that individual.

It is anticipated that Agent Wieborg will explain Treasury Regulation § 1.6001-1 requires persons subject to tax under Subtitle A of the Code or any person required to file a return of information with respect to income, shall keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information. The books or records required by this section shall be kept at all times available for inspection by authorized internal revenue officers or employees, and shall be retained so long as the contents thereof may become material in the administration of any internal revenue law.

He will also calculate the correct taxes for each of the counts listed in the Indictment.

It is anticipated that Agent Wieborg will testify that the positions taken by Castro with respect to tax returns identified in the Indictment were contrary to IRS tax regulations and the law and are not accepted positions in the tax field.   He will provide specific details, as discussed more fully below.

**D.      Schedule A "Unreimbursed Employee" Expenses** – Agent Wieborg will testify about how an individual can claim certain unreimbursed employee business expenses in accordance with Internal Revenue Code 162 and Internal Revenue Code 212 as a deduction on Schedule A and what expenses qualify under that deduction.   It is anticipated that Agent Wieborg will testify that to qualify, prior to 2018, you generally could deduct on Schedule A, Line 21, unreimbursed employee expenses that are paid or incurred during the tax year, for carrying on your trade or business of being an employee and were ordinary and necessary.

An expense is ordinary if it is common and accepted in a given trade, business, or profession.   An expense is necessary if it is appropriate and helpful to a given business. Examples of unreimbursed employee expenses include business bad debt of an employee, education that is work related, legal fees related to a job, licenses and regulatory fees, malpractice insurance premiums, medical examinations required by an employer, occupational taxes, a passport for a business trip, subscriptions to professional journals and trade magazines related to work, travel, transportation, entertainment, and gifts related to work.

Internal Revenue Code 274 does not allow expenses based on guesses or estimates and requires the taxpayer to prove the exact amount and circumstances of business expenses involving entertainment, travel, and gifts. Taxpayers are also required to keep documentary evidence to support business expenses such as receipts and mileage logs in accordance with Treasury Regulation 1.162-17.

It is anticipated that Agent Wieborg will testify that the total of these expenses must exceed 2% of a taxpayer's adjusted gross income and the excess amount is deductible.

It is anticipated that Agent Wieborg will testify that as a result of changes in tax law, starting in 2018, most taxpayers could no longer claim unreimbursed business expenses as a deduction.   Starting in 2018, taxpayers could deduct employee business expenses only if they were an Armed Forces reservist, qualified performing artist, fee-basis state or local government official, or an employee with impairment-related expenses.

An example of Castro improperly deducting unreimbursed employee business expenses on a taxpayer's tax return includes Counts 6 and 7 for the 2017 and 2018 Form 1040 prepared for a taxpayer identified here as L.R. The 2017 Form 1040 prepared by Castro reported on Schedule A $7,445 of unreimbursed employee expenses which included $600 for uniforms and protective clothing, $3,460 for work tools, and $3,385 for vehicle expense.   The 2018 Form 1040 prepared by Castro reported on Form 2106 $32,018 of business expenses of reservists, performing artists, and fee-basis government officials.

During 2017 and 2018, the taxpayer identified here as L.R. worked in the medical claims industry as a W2 employee for Florida Hospital Medical Group Inc. and Adventist Health System Sunbelt Inc. and stated that she did not have any unreimbursed employee expenses in 2017 or 2018 and was not a reservist, performing artist, or fee-basis government official.   L.R. also stated she did not provide the figures reported on the 2017 Schedule A or 2018 Form 2106 to Castro.

Because L.R. did not provide the unreimbursed business expense figures reported

on the 2017 and 2018 Form 1040, could not substantiate the business purpose or expense amounts reported, and was not an Armed Forces Reservist, performing artist, or fee-basis government official, the unreimbursed expenses amounts are not deductible and cannot not be reported on the tax returns.

Another example of Castro improperly deducting unreimbursed employee business expenses on a taxpayer's tax return includes Counts 22 and 23 for the 2017 and 2018 Form 1040 prepared for a taxpayer identified here as C.W. The 2017 Form 1040 prepared by Castro reported on Schedule A $6,210 of unreimbursed employee expenses which included $500 for uniforms and protective clothing, $2,360 for work tools, and $3,350 for vehicle and transportation expense. The 2018 Form 1040 prepared by Castro reported on Form 2106 $10,739 of business expenses of reservists, performing artists, and fee-basis government officials.

During 2017 and 2018, C.W. worked as a patient care technician as a W2 employee for Orlando Health and Newmours Foundation and stated the $500 unreimbursed employee expense related to the 2017 uniforms and protective clothing appeared correct but that she did not have any other unreimbursed employee expenses in 2017 or 2018 and was not a reservist, performing artist, or fee-basis government official.   C.W. also stated she did not provide the figures reported on the 2017 Schedule A or 2018 Form 2106 to Castro.

Because C.W. did not provide the unreimbursed business expense figures reported on the 2017 and 2018 Form 1040, could not substantiate the business purpose or expense amounts reported, and was not an Armed Forces Reservist, performing artist, or fee-basis

government official, the unreimbursed expenses amounts are not deductible and cannot not be reported on the tax returns.

It is anticipated that Agent Wieborg will testify that the same analysis would apply to Counts 1-3, 9-21, and 24-31.

**E.      Schedule A "Other" Expenses –** It is anticipated that Agent Wieborg will testify that a taxpayer could deduct certain "other" expenses as a deduction on Schedule A Line 23.  "Other" expenses are amounts paid to produce or collect taxable income and manage or protect property held for earning income including certain legal and accounting fees, clerical help and office rent, custodial fees, certain losses on non-federally insured deposits in an insolvent or bankrupt financial institution, casualty and theft losses of property used in performing services as an employee from Form 4684 or Form 4797, deduction for repayment of amounts under a claim of right if $3,000 or less, convenience fee charged by card processor for paying your income tax by credit or debit card.  It is anticipated that Agent Wieborg will testify that if an expense was not specifically identified by the IRS as subject to this deduction, the "other" expenses deduction could not be utilized by a taxpayer.

Having reviewed the interviews with the victim taxpayers, it is anticipated that Agent Wieborg will testify that they did not know what this claimed deduction represented or was connected to and there was no substantiation for these deductions.  The phrase "workplace goodwill development," which is often used in connection with this deduction by Castro is not a term commonly used in connection with Schedule A.   That phrase or

concept is not specifically identified as a deduction that can be properly utilized in the Schedule A "other" expenses.

It is anticipated that Agent Wieborg will also testify that in reviewing victim-taxpayer filings completed and submitted by Castro, Castro often uses vehicle depreciation in connection with this claimed deduction.   It is anticipated that Agent Wieborg will also testify this is not a proper deduction on a Schedule A for that specific section.

An example of Castro improperly deducting other expenses on a taxpayer's tax return includes Count 12 for the 2017 Form 1040 prepared for a taxpayer identified here as R.R.   The 2017 Form 1040 prepared by Castro reported on Schedule A $8,265 of other expenses, which included $1,404 for workplace goodwill development, $729 for qualified deductible legal fees, $416 for work-related family supervision, and $5,716 for depreciation.

R.R. stated he did not provide the workplace goodwill development, work-related family supervision, or depreciation expense amounts to Castro.   R.R. also stated the legal fees were for his daughter. Because Randolph could not substantiate the workplace goodwill development, work-related family supervision, or depreciation expense amounts the expense amounts are not deductible and cannot be reported on the tax return.   Because the legal fees were for his daughter and considered personal in nature, they also are not deductible and cannot be reported on the tax return.

Another example of Castro improperly deducting other expenses on a taxpayer's tax return includes Count 18 for the 2017 Form 1040 prepared for taxpayers known here as

J.Z. and K.Z.   The 2017 Form 1040 prepared by Castro reported on Schedule A $17,750 of other expenses which included $350 for workplace goodwill development and $17,400 for depreciation. J.Z. stated he did not provide the workplace goodwill development expense amount to Castro and that the depreciation amount was probably related to a new car purchased that was used for personal purposes and commuting to work.   Commuting to work is not typically deductible.   Because J.Z. could not substantiate the workplace goodwill development expense amount, it is not deductible and cannot be reported on the tax return. Because the depreciation expense was personal in nature and not business related it is not deductible and cannot be reported on the tax return.

It is anticipated Agent Wieborg would testify that the same analysis would apply to Counts 1-3, 6, 9, 11, 15-17, 21-22, and 27-28.

**F.    Schedule A "Other Miscellaneous Deductions/Other Itemized Deductions"** – It is anticipated that Agent Wieborg will testify that prior to 2018, taxpayers could claim certain "other miscellaneous" expenses as a deduction on Schedule A.   These included items such as gambling losses, loss from other activities from form Schedule K-1 box 2, federal estate tax on income in respect of a decedent, a deduction for amortizable bond premium, an ordinary loss attributable to a contingent payment debt instrument or an inflation-indexed debt instrument, certain unrecovered investment in a pension, and impairment-related work expenses of a disabled person.

As Agent Wieborg observed, Castro often utilizes "temporary work-related impairment expenses" as a basis for a claimed deduction under this section.   Under 26

U.S.C. § 67(d) "impairment-related work expenses means expenses of a handicapped individual (as defined in section 190(b)(3)) for attendant care services at the individual's place of employment and other expenses in connection with such place of employment which are necessary for such individual to be able to work, and (2) with respect to which a deduction is allowable under section 162 (determined without regard to this section)."

Section 190(b)(3) defines the term "handicapped individual" as any individual who has a physical or mental disability (including, but not limited to, blindness or deafness) which for such individual constitutes or results in a functional limitation to employment, or who has any physical or mental impairment (including, but not limited to, a sight or hearing impairment) which substantially limits one or more major life activities of such individual.

Castro adds the word "temporary" in claiming these deductions.   That qualifier is not used in the relevant statutes.   In his Form 8275 filings, Castro often omits key portions of the statutes.   Further, Castro argues that general efforts to prevent generalized health maladies (such as strep throat) or prevent the infection of coworkers can be deducted. There is no basis for this in the tax law.

Based on his review of the case materials, it is anticipated that Agent Wieborg will testify that none of the victim-taxpayers identified in the indictment were "handicapped" individuals as defined in section 190(b)(3), did not identify themselves as such to Castro, do not identify that way now, and did not identify or provide substantiation to Castro for any claimed "work-related impairment expenses."

**Government=s Notice of Expert Witness - Page 11**

It is anticipated that Agent Wieborg will testify that as a result of changes in tax law, starting in 2018, most taxpayers could no longer claim "miscellaneous" expenses subject to the 2% adjusted gross income limitation as a deduction. Beginning in 2018 the Schedule A removed the "other miscellaneous deductions" line and added the "other itemized deductions" line.

An example of Castro improperly deducting Schedule A other miscellaneous expenses on a taxpayer's tax return includes Count 31 for the 2017 Form 1040 prepared for taxpayers identified here as F.T and J.T.   The 2017 Form 1040 prepared by Castro for these taxpayers reported on Schedule A $37,502 of miscellaneous expenses which included $37,002 for impairment-related work expenses and $500 for casualty and theft loss.   It is anticipated that Agent Wieborg will testify that, in reviewing the case materials, neither F.T. nor J.T. had a qualifying impairment or impairment-related expenses.

Because F.T. and J.T. do not meet the definition of a handicapped individual and could not substantiate the expense amount, the impairment-related work expenses are not deductible and cannot be reported on the tax return. Also because F.T. and J.T. cannot substantiate the casualty and theft loss reported, it is not deductible and cannot be reported on the tax return.

Another example of Castro improperly deducting miscellaneous expenses on a taxpayer's tax return includes Count 28 for the 2017 Form 1040 prepared for a taxpayer identified here as A.L.   The 2017 Form 1040 prepared by Castro reported on Schedule A $9,141 of miscellaneous expenses for impairment-related work expenses.   A.L. stated he

did not provide the impairment-related work expense amount to Castro. He also stated that he has no impairment, did not tell Castro he was impaired, and has no documentation of impairment-related expenses. Because A.L. is not impaired and cannot substantiate the miscellaneous expense amount, it is not deductible and cannot be reported on the tax return.

An example of Castro improperly deducting Schedule A other itemized expenses on a taxpayer's tax return includes Count 8 for the 2019 Form 1040 prepared for taxpayer identified here as L.R. The 2019 Form 1040 prepared by Castro for the taxpayer reported on Schedule A $3,434 of other itemized expenses for impairment-related work expenses. L.R. stated that she did not know what impairment related work expenses were and did not have any disabilities that would require such special accommodations for work and did not recognize the amount. Because L.R. is not impaired and cannot substantiate the other itemized expense amount, it is not deductible and cannot be reported on the tax return.

Another example of Castro improperly deducting Schedule A other itemized expenses on a taxpayer's tax return includes Count 14 for the 2019 Form 1040 prepared for taxpayers identified here as R.R and R.R. The 2019 Form 1040 prepared by Castro for the taxpayers reported on Schedule A $30,586 of other itemized expenses for impairment-related work expenses. R.R. stated that he did not recognize the amount or recall telling Castro he or his wife had impairment related work expenses. Because R.R. is not impaired and cannot substantiate the other itemized expense amount, it is not deductible and cannot be reported on the tax return.

It is anticipated that the Agent Wieborg will testify that the same analysis would apply to counts 3, 6, 9, 12, 18, 22, 24, 25 and 27.

**G.      Schedule C (in general) –** It is anticipated that Agent Wieborg will testify that if a taxpayer owned or operated their own business, an attachment to IRS Form 1040, known as Schedule C, was used to report profits and losses from that business.   It is anticipated that Agent Wieborg will testify that to qualify, the primary purpose for engaging in the activity had to be for income or profit and a taxpayer had to be involved in the activity with continuity and regularity and that a hobby did not qualify as a business.

It is anticipated that Agent Wieborg will testify that in accordance with Internal Revenue Code 262, no deduction shall be allowed on a Schedule C for personal, living, or family expenses.

It is anticipated that Agent Wieborg will testify that in accordance with Internal Revenue Code 280A, certain expenses of a dwelling unit, used by the taxpayer during the taxable year as a residence, are not deductible unless used regularly and exclusively for business to the extent gross income derived from the business exceeds the deductions allowed.

It is anticipated that Agent Wieborg will testify that taxpayers were required to report all money flowing into the business as their "gross receipts" on Schedule C.   It is anticipated that Agent Wieborg will testify that taxpayers could deduct certain expenses from these gross receipts, including costs related to licenses, utilities, and insurance.   It is anticipated that Agent Wieborg will testify that taxpayers could also deduct the actual

**Government=s Notice of Expert Witness - Page  14**

expenses of operating their car or truck or take the standard mileage rate. (see below in car expense section).

**H.    Schedule C "Employee Benefit Program" Expenses –** It is anticipated that Agent Wieborg will testify that "employee benefit program expenses" on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business described in Treasury Regulation § 1.162-10. These include payments made on behalf of employees (that are not related to pensions or profit-sharing plans) such as accident and health plans, group-term life insurance, dependent care assistance programs, cafeteria plans (IRC 125 plans), and educational assistance plans and could not be used for personal related expenses or non-substantiated expenses.

Publication 334 is an IRS publication designed to assist self-employed individuals on the filing of taxes.   Publication 334 has information on business income, expenses, and tax credits that may help a small business owner file income tax return.   Publication 334 states that self-employed persons are those that carry on a trade or business as a sole proprietor or an independent contractor and are not considered an employee of the trade or business.

An example of Castro improperly deducting employee benefit program expenses on a taxpayer's tax return includes Count 26 for the 2019 Form 1040 prepared for a taxpayer couple identified here as M.P. The 2019 Form 1040 prepared by Castro reported on Schedule C $36,576 of employee benefit program expenses related to M.J.'s piano tutoring

business.   M.P. stated that they did not provide the employee benefit program expense amount reported on the tax return to Castro.

Based on communications from Castro, it appears he is using mortgage-related expenses, utility-expenses, and grocery expenses, for this deduction.   These are not properly deductible under this section of the Schedule C and his stated positions in this regard have no basis in tax law.   There are other sections of the Schedule C where these deductions would be appropriate if these expenses are legitimate and substantiated business-related expenses.   Based on this and because M.P. cannot substantiate the employee benefit expense amount it is not deductible and cannot be reported on the tax return.

Another example of Castro improperly deducting employee benefit program expenses on a taxpayer's tax return includes Count 30 for the 2019 Form 1040 prepared for a taxpayer identified here as F.R. The 2019 Form 1040 prepared by Castro reported on Schedule C $33,132 of employee benefit program expenses related to F.R.'s consulting business. F.R. stated that he did not provide the employee benefit program expense amount reported on the tax return, has no employees, and does not pay for any benefits for himself from his business. Because F.R. does not have any employees and cannot substantiate the employee benefit expense amount, it is not deductible and cannot be reported on the tax return.

It is anticipated that the Agent Wieborg will testify that the same analysis would apply to Counts 2-5, 8-11, 15, 17, 32, and 33.

**Government=s Notice of Expert Witness - Page 16**

I.      **Schedule C "Depreciation" Expenses –** It is anticipated that Agent Wieborg will testify that "depreciation" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with qualified property for a trade or business and could not be used for personal related expenses or non-substantiated expenses.

Internal Revenue Code Section 179 states that a depreciation election amount deductible is limited by an annual maximum deduction, an investment limitation on the aggregate cost of qualifying property, and an income limitation.  These deductions are generally used for tangible property such as equipment, vehicles, and other capital assets that are acquired by purchase and must be used more than 50% for business purpose in the active conduct of a trade or business.

An example of Castro improperly deducting depreciation expense on a taxpayer's tax return includes Count 2 for the 2017 Form 1040 prepared for taxpayers identified here as P.C. and A.C.   The 2017 Form 1040 prepared by Castro reported on Schedule C $20,000 of IRC 179 depreciation expense. P.C. stated that he did not provide the depreciation expense amount reported on the tax return to Castro and the vehicle reported on Form 4562 was purchased in 2014 and he did not provide the cost amount.   P.C. also reported that the business income amount of $67,958 is also incorrect on Form 4562 and should be ($15,684) based on the Schedule C figures reported which would not allow a section 179 depreciation expense deduction. Castro also previously took depreciation on the taxpayer's same vehicle on the 2015 and 2016 tax return. The IRC 179 deduction may

only be elected if the use of the property is more than 50% for business in the year it was first placed in service.

Because P.C. cannot substantiate the depreciation expense amount and the reported business income on the Schedule C is below the allowable threshold, and the vehicle was depreciated in a prior tax year, it is not deductible and cannot be reported on the tax return.

Another example of Castro improperly deducting depreciation expenses on a taxpayer's tax return includes Count 4 for the 2018 Form 1040 prepared for taxpayers identified here as J.B. and F.F.B.   The 2018 Form 1040 prepared by Castro reported on Schedule C $30,711 of IRC 179 depreciation expense.   F.F.B. stated that she did not provide the depreciation expense amount reported on the tax return to Castro and the vehicles reported on the Form 4562 were for personal use and she did not provide the cost amount to Castro. F.F.B. also reported that the business income amount of $100,358 is incorrect on Form 4562 and should be ($16,362) based on the Schedule C figures reported which would not allow a Section 179 depreciation expense deduction.

Because F.F.B. cannot substantiate the depreciation expense amount and the reported business income on the Schedule C is below the allowable threshold, it is not deductible and cannot be reported on the tax return.

It is anticipated that the Agent Wieborg will testify that the same analysis would apply to Counts 3, 15, 26, and 30.

**J.    Schedule C "Supplies" Expenses** – It is anticipated that Agent Wieborg will testify that "supplies" expenses on Schedule C described in Treasury Regulation § 1.162-

**Government=s Notice of Expert Witness - Page  18**

3 were for tangible property that is used or consumed in the taxpayer's operations that is not inventory and that is a component acquired to maintain, repair, or improve a unit of tangible property owned, leased, or serviceable by the taxpayer. The expense must be an ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses.

An example of Castro improperly deducting supplies expenses on a taxpayer's tax return includes Count 2 for the 2017 Form 1040 prepared for P.C. and A.C.  The 2017 Form 1040 prepared by Castro reported on Schedule C $6,771 of supplies expense related to P.C.'s self-employment as a pastor.  P.C. stated that he did not provide the supplies expense amount reported on the tax return and the correct amount should have been $2,752.

Because P.C. cannot substantiate the total supplies expense amount, it is not deductible and cannot be reported on the tax return.

Another example of Castro improperly deducting supplies expenses on a taxpayer's tax return includes Count 26 for the 2019 Form 1040 prepared for a taxpayer couple identified here as M.P.  The 2019 Form 1040 prepared by Castro reported on Schedule C $31,797 of supplies expense related to M.P.'s piano tutoring business.  M.P. stated that they did not provide the supplies expense amount reported on the tax return and that he suspects Castro estimated the total cost of their piano and used that figure.

Because M.P. cannot substantiate the supplies expense amount, the business usage percentage, and the year placed in service, it is not deductible and cannot be reported on the tax return.

**Government=s Notice of Expert Witness - Page  19**

**K.      Schedule C "Travel" Expenses –** It is anticipated that Agent Wieborg will testify that "travel" expenses on Schedule C described in Treasury Regulation § 1.162-2 include travel fares, meals, lodging and incidental costs. Only such traveling expenses as are reasonable and necessary in the conduct of the taxpayer's business and directly attributable to it may be deducted. If the trip is undertaken for other than business purposes, the travel fares and expenses incident to travel are personal expenses and the meals and lodging are living expenses. If the trip is solely on business, the reasonable and necessary traveling expenses, including travel fares, meals and lodging, and incidental expenses are business expenses. Internal Revenue Code 274(d) describes the substantiation requirements and states no deduction shall be allowed for any traveling expenses (including meals and lodging while away from home) unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel or the date,   (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of the person receiving the benefit.

An example of Castro improperly deducting travel expenses on a taxpayer's tax return includes Count 2 for the 2017 Form 1040 prepared for the taxpayers known as P.C. and A.C.   The 2017 Form 1040 prepared by Castro reported on Schedule C $862 of travel expense related to P.C.'s self-employment as a pastor.   P.C. stated that he did not provide the travel expense amount reported on the tax return to Castro and that if he did travel for

work, the party that hired him would cover the cost.   Because there was no substantiation, the travel expense amount it is not deductible and cannot be reported on the tax return.

**L.      Schedule C "Utilities" Expenses –** It is anticipated that Agent Wieborg will testify that "utilities" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses.   These deductions are generally used for business-related expenses for utilities such as water, electricity, sewer, trash, and internet. Treasury Regulation § 1.262-1 describes personal, living, and family expenses that are not deductible and include expenses of maintaining a household, including amounts paid for rent, water, utilities, domestic service and the like.

An example of Castro improperly deducting utilities expenses on a taxpayer's tax return includes Count 3 for the 2017 Form 1040 prepared for the taxpayers identified here J.B. and F.F.B.   The 2017 Form 1040 prepared by Castro reported on Schedule C $7,598 of utilities expense related to F.F.B.'s cruise planner business.   F.F.B. stated that she provided expense figures with documentation to Castro and that her home office equaled 160 square feet of the 2,294 square foot house equal to 7% allowed as a business deduction for utilities.   She also provided these documents to investigating agents.   The documents F.F.B. provided show an allowable utilities expense amount of $1,858 that could be deducted.

Because F.F.B. cannot substantiate the total utilities expense amount, it is not deductible and cannot be reported on the tax return.

Another example of Castro improperly deducting utilities expenses on a taxpayer's tax return includes Count 17 for the 2019 Form 1040 prepared for taxpayers identified here as J.S. and B.S.   The 2019 Form 1040 prepared by Castro reported on Schedule C $858 of utilities expense related to B.S.'s realtor business.   J.S. and B.S. stated they did not provide the utilities expense amount reported on the return to Castro.   Because J.S. and B.S. cannot substantiate the utilities expense amount, they were not deductible and cannot be reported on the tax return.

**M.     Schedule C "Office" Expenses –** It is anticipated that Agent Wieborg will testify that "office" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses.   These deductions are generally used for work-related expenses for things like ink, paper, and other office necessities used in the trade or business.

An example of Castro improperly deducting office expenses on a taxpayer's tax return includes Count 4 for the 2018 Form 1040 prepared for taxpayers identified here as J.B. and F.F.B.   The 2018 Form 1040 prepared by Castro reported on Schedule C $7,885 of office expense related to F.F.B.'s cruise planner business.   F.F.B. stated she provided expense figures and documentation to Castro that evidence that she did not spend that much in office expenses.   She also provided these documents to investigating agents. The documents that F.F.B. provided show an allowable office expense amount of $1,851 that could be deducted.

Because F.F.B. cannot substantiate the total office expense amount, it was not deductible and cannot be reported on the tax return.

Another example of Castro improperly deducting office expenses on a taxpayer's tax return includes Count 5 for the 2019 Form 1040 prepared for J.B. and F.F.B.   The 2019 Form 1040 prepared by Castro reported on Schedule C1 $8,812 of office expense related to F.F.B.'s cruise planner business.   F.F.B. stated she provided expense figures and documentation to Castro that evidence that she did not spend that much in office expenses. She also provided these documents to investigating agents. The documents F.F.B. provided show an allowable office expense amount of $6,140 that could be deducted.

It is anticipated that the Agent Wieborg will testify that the same analysis would apply to Count 26.

**N.     Schedule C "Taxes and Licenses" Expenses –** It is anticipated that Agent Wieborg will testify that "taxes and licenses" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses. These deductions are generally used for state business taxes and professional licenses.

An example of Castro improperly deducting taxes and licenses expenses on a taxpayer's tax return includes Count 26 for the 2019 Form 1040 prepared for taxpayers (a couple) identified here as M.P.   The 2019 Form 1040 prepared by Castro reported on Schedule C $13,682 of taxes and licenses expense related to M.P.'s piano tutoring business. M.P. stated that they did not provide the taxes and licenses expense amount reported on

the tax return to Castro and has no documentation supporting that.   Because the taxes and licenses expense amounts are not supported by documentation, it is not deductible and cannot be reported on the tax return.

Another example of Castro improperly deducting taxes and licenses expenses on a taxpayer's tax return includes Count 4 for the 2018 Form 1040 prepared for J.B. and F.F.B. The 2018 Form 1040 prepared by Castro reported on Schedule C $5,914 of taxes and licenses expense related to F.F.B.'s cruise planner business.   F.F.B. stated the amount was incorrect and had no documentation supporting that claimed deduction.   Because F.F.B. cannot substantiate, the taxes and licenses expense amount it is not deductible and cannot be reported on the tax return.

It is anticipated that the Agent Wieborg will testify that the same analysis would apply to Counts 5, 10, 17, and 33.

**O.**   **Schedule C "Car and Truck" Expenses –** It is anticipated that Agent Wieborg will testify that "car and truck" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses.   If a car is used for business purpose, an expense related to that use may be deductible by using either the standard mileage rate method or the actual expense method.

The term "car" includes a van, pickup, or panel truck.   The standard mileage rate method is not allowed if you use five or more cars at the same time, claimed a depreciation deduction for the car using a method other than straight line, claimed an IRC 179 deduction

on the car, claimed the special depreciation allowance on the car, or claimed actual expenses after 1997 for a car you lease.

If the actual car expense method is used, deductible expenses include: depreciation, licenses, gas, oil, tolls, lease payments, insurance, garage rent, parking fees, registration fees, repairs and tires.   A taxpayer must substantiate this deduction with records.

If an individual uses the vehicle for both business and personal purposes, they must divide the expenses between business and personal by divided the expense amount based on the miles driven for each purpose.   Internal Revenue Code 274 states that no deduction shall be allowed unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement of the amount of such expense or other item, the time and place of the travel, and the business purpose.

Adequate substantiation for car and truck expenses include the cost of the car and any improvements, the date it was being used for business, the mileage for each business use and the total miles for the year and the description of the place or destination the car was used for.

An example of Castro improperly deducting car and truck expenses on a taxpayer's tax return includes Count 15 for the 2017 Form 1040 prepared for taxpayers identified here as J.S. and B.S.   The 2017 Form 1040 prepared by Castro reported on Schedule C $4,040 of car and truck expense related to B.S.'s business.   J.S. and B.S. stated they did not provide the car and truck expense amount reported on the return to Castro and the car listed

was J.S.'s car and B.S. did not use it.   Because there was no substantiation for the car and truck expense amount, it was not deductible and was not properly listed on the tax return.

Another example of Castro improperly deducting car and truck expenses on a taxpayer's tax return includes Count 26 for the 2019 Form 1040 prepared for taxpayers   (a couple), known here as M.P.   The 2019 Form 1040 prepared by Castro reported on Schedule C $6,340 of car and truck expense related to M.P.'s piano tutoring business. M.P. stated that they did not provide the car and truck expense amount reported on the tax return and the car was the personal family vehicle and that M.P. only conducts the business at home, so she would not have any such expenses.   Because there was no substantiation, the car and truck expense amounts were not deductible and was not properly reported on the tax return.

It is anticipated that the Agent Wieborg will testify that the same analysis would apply to Counts 5 and 30.

**P.    Schedule C "Interest" Expenses –** It is anticipated that Agent Wieborg will testify that "interest" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses. These deductions are generally used for interest paid for a business-related assets.

An example of Castro improperly deducting interest expenses on a taxpayer's tax return includes Count 16 for the 2018 Form 1040 prepared for taxpayers identified here as J.S. and B.S.   The 2018 Form 1040 prepared by Castro reported on Schedule C $7,842 of

interest expense related to B.S.'s business.   J.S. and B.S. stated the amount appeared to represent or match their personal home mortgage interest amount.   Mortgage interest related to a business property, other than your personal home, can be deducted here.

Another example of Castro improperly deducting interest expenses on a taxpayer's tax return includes Count 5 for the 2019 Form 1040 prepared for J.B. and F.F.B.   The 2019 Form 1040 prepared by Castro reported on Schedule C $1,520 of interest expense related to F.F.B.'s cruise planner business.   F.F.B. stated the amount appeared to represent or match their personal home mortgage interest amount.

It is anticipated that the same analysis would apply to counts 11, 17, and 33.

**Q.**     **Schedule C "Advertising" Expenses –** It is anticipated that Agent Wieborg will testify that "advertising" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses.   These deductions are generally used for business-related advertising expenses, such as internet, television, or print advertising.

An example of Castro improperly deducting advertising expenses on a taxpayer's tax return includes Count 11 for the 2019 Form 1040 prepared for taxpayers (a couple) identified here C.K.   The 2019 Form 1040 prepared by Castro reported on Schedule C $4,161 of advertising expense related to C.K.'s photography business.    C.K. stated they did not pay that much for advertising for this business and had no substantiation for that amount and did not tell Castro they spent that much on advertising.

Another example of Castro improperly deducting advertising expenses on a taxpayer's tax return includes Count 30 for the 2019 Form 1040 prepared for a taxpayer identified here as F.R.   The 2019 Form 1040 prepared by Castro reported on Schedule C $300 of advertising expense related to F.R.'s consulting business.   F.R. stated he did not provide the expense amount to Castro and did not spend that amount of money on advertising.

**R.     Schedule C "Insurance" Expenses –** It is anticipated that Agent Wieborg will testify that "insurance" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses. An individual can generally deduct premiums paid for the insurance that covers fire, storm, theft, accident, or similar losses, credit insurance, liability insurance, malpractice insurance, worker's compensation, car and other vehicle insurance if using the actual expense method.   Life insurance premiums are generally deductible only if the taxpayer is not directly or indirectly a beneficiary of the policy.   Self-employed individuals may deduct certain amounts paid for medical insurance coverage for themselves, their spouses, their dependents, and any of their children who are under the age 27 at the end of the taxable year.

The medical insurance deduction is limited and not allowed if the deduction exceeds the taxpayer's earned income derived by the taxpayer from the trade or business with respect to which the plan providing the medical coverage is established. The medical insurance is also not allowed if the taxpayer is eligible to participate in any subsidized

health plan maintained by an employer of the taxpayer or of the spouse of, or any dependent.

An example of Castro improperly deducting insurance expenses on a taxpayer's tax return includes Count 11 for the 2019 Form 1040 prepared for taxpayers (a couple) identified here as C.K.   The 2019 Form 1040 prepared by Castro reported on Schedule C $1,396 of insurance expense related to C.K.'s photography business.   C.K. stated the amount was false and it was not correct or related for C.K.'s business.   Because there was no substantiation, the insurance expense amount was not deductible and not properly deducted on the tax return.

**S.      Schedule C "Legal and Professional" Expenses –** It is anticipated that Agent Wieborg will testify that "legal and professional" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses. These deductions are generally used for the expenses associated with a notary, accountant or an attorney who represents the business.

An example of Castro improperly deducting legal and professional expense on a taxpayer's tax return includes Count 17 for the 2019 Form 1040 prepared for taxpayers identified here as J.S. and B.S.  The 2019 Form 1040 prepared by Castro reported on Schedule C $1,000 of legal and professional expense related to B.S.'s business.   J.S. and B.S. stated they did not provide the expense amount to Castro, and they did not have legal

expenses for that amount. Because it had no basis in fact, it was not properly deducted on the tax return.

Another example of Castro improperly deducting legal and professional expense on a taxpayer's tax return includes Count 33 for the 2019 Form 1040 prepared for taxpayers identified here as F.T. and J.T.  The 2019 Form 1040 prepared by Castro reported on Schedule C $21,000 of legal and professional expense related to F.T.'s business.  F.T. stated he did not provide the expense amount to Castro and they did not have legal expenses for that amount.  Because it had no basis in fact, it was not properly deducted on the tax return.

**T.    Schedule C "Repairs and Maintenance" Expenses –** It is anticipated that Agent Wieborg will testify that "repairs and maintenance" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses.   These deductions are generally used for business-related repairs and maintenance on tangible business property, such as equipment or vehicles.

An example of Castro improperly deducting repairs and maintenance expense on a taxpayer's tax return includes Count 17 for the 2019 Form 1040 prepared for the taxpayers identified as J.S. and B.S.   The 2019 Form 1040 prepared by Castro reported on Schedule C $598 of repairs and maintenance expense related to B.S.'s business. J.S. and B.S. stated they did not provide the expense amount to Castro and it was not correct.   Because the

repairs and maintenance expense amount was incorrect and unsubstantiated, it is not deductible and not properly deducted on the tax return.

U.     **Schedule C "Other" Expenses –** It is anticipated that Agent Wieborg will testify that "other" expenses on Schedule C were for ordinary and necessary expenses paid or incurred in connection with a trade or business and could not be used for personal related expenses or non-substantiated expenses.   These deductions are generally used for additional business-related expenses without a descriptive line included on the Schedule C.

An example of Castro improperly deducting other expenses on a taxpayer's tax return includes Count 11 for the 2019 Form 1040 prepared for the taxpayers identified as C.K. and C.K.   The 2019 Form 1040 prepared by Castro reported on Schedule C $2,145 of other expense including $750 for unidentified other expense and $1,395 for mortgage insurance premiums. C.K. stated that the reported amounts did not seem reasonable. Because the other expense amount was incorrect and unsubstantiated, it is not deductible and not properly deducted on the tax return.

Another example of Castro improperly deducting other expenses on a taxpayer's tax return includes Count 16 and 17 for the 2018 and 2019 Form 1040 prepared for the taxpayers identified as J.S. and B.S.   The 2018 and 2019 Form 1040 prepared by Castro reported on Schedule C $918 of other expense for mortgage insurance premiums. J.S. stated that the reported appeared to be the full mortgage insurance premium amount for

their personal residence.   Because the other expense amount was not unsubstantiated, it is not deductible and not properly deducted on the tax return.

V.      **Schedule E "Auto and Travel" Expenses –** It is anticipated that Agent Wieborg will testify that "auto and travel" expenses on Schedule E in accordance with Treasury Regulation § 1.212-1 were for ordinary and necessary for the production or collection of income and could not be used for personal related expenses or non-substantiated expenses. A Schedule E is typically used to report rental property income and expenses.

An example of Castro improperly deducting auto and travel expenses on a taxpayer's tax return includes Count 26 for the 2019 Form 1040 prepared for the taxpayers (a couple), known here as M.P.   The 2019 Form 1040 prepared by Castro reported on Schedule E $5,800 of auto and travel expense related to their rental property in Australia. M.P. stated that they did not provide the auto and travel amount reported on the tax return to Castro and that it appeared to include expenses for the entire family.   Because it was unsubstantiated and includes personal related travel it is not deductible and not properly deducted on the tax return. Treasury Regulation § 1.162-2 include travel fares, meals, lodging and incidental costs.   Only such traveling expenses as are reasonable and necessary in the conduct of the taxpayer's business and directly attributable to it may be deducted. If the trip is undertaken for other than business purposes, the travel fares and expenses incident to travel are personal expenses and the meals and lodging are living expenses.   If the trip is solely on business, the reasonable and necessary traveling

expenses, including travel fares, meals and lodging, and incidental expenses are business expenses. Internal Revenue Code 274(d) describes the substantiation requirements and states no deduction shall be allowed for any traveling expenses (including meals and lodging while away from home).

**W.     Schedule A "Gifts to Charity" –** It is anticipated that Agent Wieborg will testify that "gifts to charity" on Schedule A that were made within the taxable year to, or for use of, a qualified organization defined in IRC 170(c) and could not be used for non-qualified organizations or non-substantiated "gifts to charity."

An example of Castro improperly including and deducting gifts to charity can be found in Count 29 for the 2018 Form 1040 prepared for a taxpayer identified here as A.L. The 2018 Form 1040 prepared by Castro reported on Schedule A $6,720 of gifts to charity other than by cash or check for clothing and housewares.   A.L. stated he did not provide the amount to Castro and the correct amount should have been approximately $1,500. Because it was incorrect and there was no substantiation, the gifts to charity amount is not deductible and not properly deducted on the tax return.

**X.     Relationships with Clients** – It is anticipated that Agent Wieborg will testify that it is was highly uncommon for a tax preparer to refuse to meet with client taxpayers in person or to demand a significant fee before any meeting in person.   It is anticipated that Agent Wieborg will testify that it is was highly uncommon and inappropriate for a tax preparer to file a taxpayer's taxes without reviewing them with the taxpayer and sending a copy of the taxes to the taxpayer before filing.   As an enrolled agent, Castro is required to

follow the guidelines administered in the Treasury Department Circular No. 230. Treasury Department Circular No. 230 §10.21 requires that  "a practitioner who, having been retained by a client with respect to a matter administered by the Internal Revenue Service," and who "knows that the client has not complied with the revenue laws of the United States or has made an error in or omission from any return, document, affidavit, or other paper which the client submitted or executed under the revenue laws of the United States, must advise the client promptly of the fact of such noncompliance, error, or omission. The practitioner must advise the client of the consequences as provided under the Code and regulations of such noncompliance, error, or omission."

Treasury Department Circular No. 230 §10.22 requires enrolled agents to "exercise due diligence (1) in preparing or assisting in the preparation of, approving, and filing tax returns, documents, affidavits, and other papers relating to Internal Revenue Service matters; (2) in determining the correctness of oral or written representations made by the practitioner to the Department of the Treasury; and (3) in determining the correctness of oral or written representations made by the practitioner to clients with reference to any matter administered by the Internal Revenue Service.

Except as modified by §§10.34 and 10.37, a practitioner will be presumed to have exercised due diligence for purposes of this section if the practitioner relies on the work product of another person and the practitioner used reasonable care in engaging, supervising, training, and evaluating the person, taking proper account of the nature of the relationship between the practitioner and the person."

Government=s Notice of Expert Witness - Page 34

Treasury Department Circular No. 230 §10.28 states that "(a) in general, a practitioner must, at the request of a client, promptly return any and all records of the client that are necessary for the client to comply with his or her Federal tax obligations. The practitioner may retain copies of the records returned to a client. The existence of a dispute over fees generally does not relieve the practitioner of his or her responsibility under this section. Nevertheless, if applicable state law allows or permits the retention of a client's records by a practitioner in the case of a dispute over fees for services rendered, the practitioner need only return those records that must be attached to the taxpayer's return. The practitioner, however, must provide the client with reasonable access to review and copy any additional records of the client retained by the practitioner under state law that are necessary for the client to comply with his or her Federal tax obligations.

**Y.    Splitting Fees** – It is anticipated that Agent Wieborg will testify that it was highly uncommon and inappropriate for a legitimate tax preparer to split a tax refund with a tax preparer, as opposed to charging a standard fee. As an enrolled agent, Castro is required to follow the guidelines administered in the Treasury Department Circular No. 230.

Treasury Department Circular No. 230 §10.27 disallows the use of contingent fees, except in limited circumstances, none of which apply to the allegations in this case.

**Z.    Specific Review of Tax Returns** – Agent Wieborg has reviewed each of the tax returns which are identified in the indictment and calculated the appropriate tax owed based on known facts, adduced from interviews with the victim-taxpayers,

communications between the victim-taxpayers and Castro or his staff, source documents, and relevant tax law.   More specifically, he will testify that:

       **1.**   **P.C. and A.C.** – P.C. and A.C. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a refund issued in the amount of $9,384.   Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses and other expenses (including workplace goodwill development) that could not be substantiated in accordance with Treasury Regulation § 1.162-17. The tax return also included Schedule C expenses for depreciation, employee benefit programs, supplies, and travel that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 280A resulting in a tax loss of $7,508.

       **2.**   **Undercover Officer Angela Johnson** – An undercover agent identified as Angela Johnson used Defendant Castro to prepare and file her Form 1040 tax return for the tax year ending December 31, 2017, which resulted a refund issued in the amount of $6,007.   Based on my analysis of the filed tax return and documents provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses and other expenses that could not be substantiated under Treasury Regulation § 1.162-17 resulting in a tax loss of $5,634.

       **3.**   **J.B. and F.F.B** – J.B. and F.F.B used Defendant Castro to prepare

and file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a refund issued in the amount of $9,360. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses, other expenses (including depreciation), and miscellaneous deductions for impairment related work expenses that could not be substantiated under Treasury Regulation § 1.162-17, Internal Revenue Code 67, and Internal Revenue Code 190.  The tax return also included Schedule C expenses for depreciation, employee benefit programs, and utilities that could not be substantiated under Internal Revenue Code 162, Internal Revenue Code 179, and Internal Revenue Code 280A resulting in a tax loss of $7,705.

J.B. and F.F.B used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2018, which resulted a refund issued in the amount of $11,463. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2018 tax return was incorrect and included expense amounts reported on Schedule C for depreciation, employee benefit programs, office expenses, and taxes and licenses, that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 280A resulting in a tax loss of $8,468.

J.B. and F.F.B used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2019, which resulted a refund issued in the

amount of $10,448. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2019 tax return was incorrect and included expense amounts reported on Schedule C for car and truck, depreciation, employee benefit programs, interest, office expenses, and taxes and licenses, that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 280A resulting in a tax loss of $5,184.

      **4.**    ***L.R.*** – L.R. used Defendant Castro to prepare and file her Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a refund issued in the amount of $3,164. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses, other expenses (including depreciation and workplace goodwill development), and miscellaneous deductions for impairment related work expenses that could not be substantiated under Treasury Regulation § 1.162-17, Internal Revenue Code 67, and Internal Revenue Code 190 resulting in a tax loss of $4,235.

        L.R. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2018, which resulted a refund issued in the amount of $3,797. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2018 tax return was incorrect and included expense amounts reported on Form 2106 for unreimbursed employee expense that could not be substantiated under Treasury Regulation § 1.162-17 resulting in a tax loss of $4,492.

L.R. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2019, which resulted a refund issued in the amount of $3,263. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2019 tax return was incorrect and included expense amounts reported on Schedule A for impairment related work expenses that could not be substantiated under Internal Revenue Code 67, Internal Revenue Code 190, and Internal Revenue Code 162. The tax return also included Schedule C expenses for employe benefit programs that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 280A resulting in a tax loss of $3,649.

   **5.**   ***C.K. and C.K.*** – C.K. and C.K. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a refund issued in the amount of $6,171. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses, other expense (including depreciation), and miscellaneous deductions for impairment related work expenses that could not be substantiated under Treasury Regulation § 1.162-17, Internal Revenue Code 67, and Internal Revenue Code 190. The tax return also reported Schedule C expenses for employe benefit programs that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 280A resulting in a tax loss of $1,516.

   C.K. and C.K. used Defendant Castro to prepare and file their Form 1040 tax

return for the tax year ending December 31, 2018, which resulted in a refund issued in the amount of $5,954. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2018 tax return was incorrect and included expense amounts reported on Form 2106 for car and truck expenses and depreciation and Schedule C expenses for employee benefit programs and taxes and licenses that could not be substantiated under Internal Revenue Code 162, Internal Revenue Code 179, and Internal Revenue Code 280A resulting in a tax loss of $2,679.

C.K. and C.K. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2019, which resulted in a refund issued in the amount of $10,753. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2019 tax return was incorrect and included expense amounts reported on Form 2106 for car and truck expenses and depreciation and Schedule C expenses for advertising, employee benefit programs, insurance, interest, and other expenses including mortgage insurance premiums that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 280A resulting in a tax loss of $3,526.

6.    *R.R. and R.R.* – R.R. and R.R. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a refund issued in the amount of $2,132. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed

employee expenses, other expense (including workplace goodwill development, and depreciation), and miscellaneous deductions for impairment related work expenses that could not be substantiated under Treasury Regulation § 1.162-17, Internal Revenue Code 67, and Internal Revenue Code 190 resulting in a tax loss of $4,891.

R.R. and R.R. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2018, which resulted in a refund issued in the amount of $4,128. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2018 tax return was incorrect and included expense amounts reported on Form 2106 for car and truck expenses and depreciation that could not be substantiated under Internal Revenue Code 162 resulting in a tax loss of $7,099.

R.R. and R.R. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2019, which resulted in a refund issued in the amount of $9,254. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2019 tax return was incorrect and included expense amounts reported on Form 2106 for car and truck expenses and depreciation and Schedule A miscellaneous expenses for impairment related work expenses that could not be substantiated under Internal Revenue Code 162, Internal Revenue Code 67, and Internal Revenue Code 190 resulting in a tax loss of $11,695.

7.    *J.S. and B.S.* – J.S. and B.S. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted

in a refund issued in the amount of $7,766. Based on my analysis of the filed tax return and the memorandum of interview prepared by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses and other expenses (including continuing education, professional exams and license fees, and qualified deductible legal fees) that could not be substantiated under Treasury Regulation § 1.162-17. The tax return also included Schedule C expenses for car and truck, depreciation, and employee benefit programs that could not be substantiated under Internal Revenue Code 162, Internal Revenue Code 179, and Internal Revenue Code 280A resulting in a tax loss of $1,812.

J.S. and B.S. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2018, which resulted in a refund issued in the amount of $11,563. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2018 tax return was incorrect and included expense amounts reported on Form 2106 for car and truck expenses and depreciation and Schedule C expenses for interest and other expenses (including mortgage insurance premiums) that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 280A resulting in a tax loss of $948.

J.S. and B.S. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2019, which resulted in a refund issued in the amount of $11, 367. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2019 tax return was incorrect and

included expense amounts reported on Form 2106 for car and truck expenses and depreciation and Schedule C expenses for employee benefit programs, interest, legal and professional expenses, repairs and maintenance, taxes and licenses, utilities, and other expenses (including mortgage insurance premiums) that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 280A resulting in a tax loss of $4,223.

        **8.**    ***J.Z. & K.Z.*** – J.Z. & K.Z. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a refund issued in the amount of $1,861. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses, other expense (including depreciation), and miscellaneous deductions for impairment related work expenses that could not be substantiated under Treasury Regulation § 1.162-17, Internal Revenue Code 67, and Internal Revenue Code 190 resulting in a tax loss of $2,768.

        J.Z. & K.Z. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2018, which resulted in a refund issued in the amount of $2,637. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2018 tax return was incorrect and included expense amounts reported on Form 2106 for car and truck expenses and depreciation that could not be substantiated under Internal Revenue Code 162 resulting in

a tax loss of $3,484.

J.Z. & K.Z. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2019, which resulted in a refund issued in the amount of $3,087. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2019 tax return was incorrect and included expense amounts reported on Form 2106 for car and truck expenses and depreciation that could not be substantiated under Internal Revenue Code 162 resulting in a tax loss of $3,793.

9.    *J.M. and K.M.* – J.M. and K.M. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a a refund issued in the amount of $19,269. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses, other expense (including workplace goodwill development and depreciation) that could not be substantiated under Treasury Regulation § 1.162-17 resulting in a tax loss of $15,565.

10.   *C.W.* – C.W. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a refund issued in the amount of $2,028. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed

employee expenses, other expense (including workplace goodwill development and depreciation), and miscellaneous deductions for impairment related work expenses that could not be substantiated under Treasury Regulation § 1.162-17, Internal Revenue Code 67, Internal Revenue Code 179, and Internal Revenue Code 190 resulting in a tax loss of $2,372.

C.W. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2018, which resulted in a refund issued in the amount of $511. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2018 tax return was incorrect and included expense amounts reported Form 2106 for car and truck expenses and depreciation that could not be substantiated under Internal Revenue Code 162 resulting in a tax loss of $1,374.

C.W. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2019, which resulted in a refund issued in the amount of $2,213. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2019 tax return was incorrect and included expense amounts reported on Form 2106 Form 2106 for car and truck expenses and depreciation and Schedule A for impairment related work expenses that could not be substantiated under Internal Revenue Code 162, Internal Revenue Code 67, and Internal Revenue Code 190 resulting in a tax loss of $2,130.

11. **K.Q. and B.Q.** – K.Q. and B.Q. used Defendant Castro to prepare and

file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a refund issued in the amount of $4,179. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses and other expense (including workplace goodwill development, continuing education, home office expenses, deductible interest, and depreciation that could not be substantiated under Treasury Regulation § 1.162-17 and Internal Revenue Code 280A resulting in a tax loss of $816.

   **12. M.P. and M.P.** – M.P. and M.P. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2019, which resulted in a refund issued in the amount of $32,987. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2019 tax return was incorrect and included expense amounts reported on Form 2106 for car and truck expenses and depreciation and Schedule C expenses for car and truck, depreciation, employe benefits program, office, supplies, and taxes and licenses that could not be substantiated under Internal Revenue Code 162, Internal Revenue Code 179, and Internal Revenue Code 280A. The tax return also included Schedule E expense for auto and travel that could not be substantiated under Internal Revenue Code 162, Internal Revenue Code 212, and Internal Revenue Code 274 resulting in a tax loss of $43,278.

   **13. M.N. and A.N.** – M.N. and A.N. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2017, which

resulted in a refund issued in the amount of $2,000. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses, other expense (including workplace goodwill development and depreciation), and miscellaneous deductions for impairment related work expenses that could not be substantiated under Treasury Regulation § 1.162-17, Internal Revenue Code 67, and Internal Revenue Code 190 resulting in a tax loss of $3,835.

14.   *A.L.* – A.L. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a refund issued in the amount of $6,755. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses, other expense (including workplace goodwill development, continuing education, and depreciation), and miscellaneous deductions for impairment related work expenses that could not be substantiated under Treasury Regulation § 1.162-17, Internal Revenue Code 67, and Internal Revenue Code 190 resulting in a tax loss of $4,625.

A.L. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2018, which resulted in refund issued in the amount of $18,209. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2018 tax return was incorrect and included expense amounts reported on Form 2106 for car and truck expenses and depreciation and

Schedule A expense for gifts to charity that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 170 resulting in a tax loss of $17,312.

      **15.    *F.R.*** – F.R. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2019, which resulted in a refund issued in the amount of $8,001. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2019 tax return was incorrect and included expense amounts reported on Form 2106 for car and truck expenses and depreciation and Schedule C for advertising, car and truck, depreciation, and employee benefits programs that could not be substantiated under Internal Revenue Code 162, Internal Revenue Code 179, and Internal Revenue Code 280A resulting in a tax loss of $23,399.

      **16.    *F.T. and J.T.*** – F.T. and J.T. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2017, which resulted in a refund issued in the amount of $13,859. Based on my analysis of the filed tax return and the memorandum of interview provided  by Special Agent Tina Kim, the 2017 tax return was incorrect and included expense amounts reported on Schedule A for unreimbursed employee expenses, other expense (including workplace goodwill development, continuing education, and depreciation), and miscellaneous deductions for impairment related work expenses that could not be substantiated under Treasury Regulation § 1.162-17, Internal Revenue Code 67, and Internal Revenue Code 190 resulting in a tax loss of $13,126.

F.T. and J.T. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2018, which resulted in a refund issued in the amount of $36,883. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2018 tax return was incorrect and included expense amounts reported on Schedule C for employee benefits programs that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 280A resulting in a tax loss of $21,930.

F.T. and J.T. used Defendant Castro to prepare and file their Form 1040 tax return for the tax year ending December 31, 2019, which resulted in a refund issued in the amount of $45,106. Based on my analysis of the filed tax return and the memorandum of interview provided by Special Agent Tuan Ma, the 2019 tax return was incorrect and included expense amounts reported on Schedule C for employee benefits program, interest, legal and professional, and taxes and licenses that could not be substantiated under Internal Revenue Code 162 and Internal Revenue Code 280A resulting in a tax loss of $34,808.

Agent Wieborg's opinions, as identified above are based on his education, experience, and review of facts in this case, including the filed tax returns and interview summaries of victim-taxpayers.  His opinions are based on his extensive knowledge of IRS regulations and federal tax law.

Signature: _____

IRS Revenue Agent Adam Wieborg

Respectfully submitted,

LEIGH SIMONTON
UNITED STATES ATTORNEY

/s/   *P.J. Meitl*_____

P.J. MEITL
Assistant United States Attorney
D.C. Bar No. 502391
801 Cherry Street, 17th Floor
Fort Worth, Texas 76102
Telephone:   817.252.5272
E-mail: philip.meitl@usdoj.gov

## CERTIFICATE OF SERVICE

On April 1, 2024, I electronically submitted the following document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.   I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Criminal Procedure 49(b).

/s/ *P.J. Meitl*_____
P.J. Meitl
Assistant United States Attorney