IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. |
| | | 4:24-CR-00001-Y-1 |
| JOHN ANTHONY CASTRO, | | |
| | | |
| Defendant. | | |

## DEFENDANT'S EXPERT WITNESS DESIGNATION

### Qualification as an Expert

The defense anticipates that it may call Joseph A. DiRuzzo, III, Esq., CPA, B.C.S, as an expert witness.  Mr. DiRuzzo's CV is attached hereto as **Exh. A**.

### Anticipated Testimony

### General Tax Matters

It is anticipated that Mr. DiRuzzo will testify regarding the proliferation of tax laws, regulations, and other sources of tax authority, as well as the promulgation of those sources of authority under the Administrative Procedure Act (Title 5 of the United States Code) and their impact on the interpretation and validity of tax regulations and statutes at issue in the Indictment. Moreover, it is anticipated that Mr. DiRuzzo will explain current trends with respect to the interpretation of these sources of authority, including the application of tools of statutory construction, and the general impact of those trends on the statutory provisions at issue in this case.

It is anticipated that Mr. DiRuzzo will explain the purpose and use of certain individual tax forms, including Form 1040, Schedule A (Itemized Deductions), and Schedule C (Profit or Loss from Business).

It is anticipated that Mr. DiRuzzo will explain the nature of income that is required to be reported to the Internal Revenue Service. § 61(a).

It is further anticipated that Mr. DiRuzzo will opine that the positions set forth in the Appendix hereto have at least a reasonable basis in the tax laws.

## Reporting and Disclosure Standards

It is anticipated that Mr. DiRuzzo will explain the purpose and use of Form 8275 (Disclosure Statement), the disclosure of certain tax positions, and the various applicable standards for reporting positions, including reasonable basis and substantial authority. He is expected to provide an opinion that the legal/tax positions reflected and disclosed in the tax returns listed in the Indictment satisfied at least the reasonable basis level of authority.

Moreover, Mr. DiRuzzo is expected to testify regarding the reasonable basis standard, including under Treas. Reg. 1.6662-3(b)(3). He will explain that the standard is less stringent than both the "substantial authority" standard and the "more likely than not" standard. Treas. Reg. 1.6662-4(d)(3).

He is expected to testify regarding the disclosure of positions, such as through use of Form 8275. Treas. Reg. § 1.6662-3(c)(2).  It is anticipated that Mr. DiRuzzo will testify that he has reviewed positions set forth on certain federal income tax returns identified in the Indictment, including on Form 8275, and that such tax reporting positions taken and disclosed on the tax returns at issue had at least a reasonable basis for such positions. § 6694(a)(2)(B).

It is anticipated that Mr. DiRuzzo will testify to each count which had a reasonable basis and was adequately disclosed under the foregoing standards.

## Reimbursed & Unreimbursed Employee Expenses

It is anticipated that Mr. DiRuzzo will explain the law with regard to reimbursed and unreimbursed employee business expenses, including under § 62(a)(2)(A); Treas. Reg. § 1.62-1; Treas. Reg. § 1.62-1T; Treas. Reg. § 1.62-2; and Treas. Reg. § 1.162-17(b)-(c).

It is anticipated that Mr. DiRuzzo will provide an explanation of miscellaneous itemized deductions, such as their definition, role, and availability under §§ 63(d), 67. Additionally, he is expected to testify and explain itemized deductions under §§ 62, 63, 67.

It is anticipated that his testimony will provide an opinion that there is at least a reasonable basis for certain deductions under section 62(a) of the Internal Revenue Code, including unreimbursed employee business expenses, including with respect to deductions for unreimbursed employee business expenses alleged in the Indictment, based upon §§ 62(a)(2)(A), 62(c), 67, 162(a); Treas. Reg. § 1.6662-3(b)(3) (reasonable basis); Treas. Reg. § 1.62-1; Treas. Reg. § 1.62-1T; Treas. Reg. § 1.62-2; and Treas. Reg. § 1.167-17.  In addition, he is expected to testify that there is at least a reasonable basis for the position that such expenses are not miscellaneous itemized deductions and for reporting such items on Schedule 1, Line 24 under I.R.C. §§ 63(d); 67(a), (b); and 62(a)(2)(A). He is anticipated to provide an opinion that there is a reasonable basis for concluding that the applicable Treasury Regulations are invalid under the Administrative Practices Act and that Treasury Reg. § 1.62-1T has been phased out.

It is anticipated that Mr. DiRuzzo will provide testimony that explains the legal definition of ordinary and necessary expenses in the context of §§ 62(a)(2)(A) and 162.

It is anticipated that Mr. DiRuzzo will testify that the unreimbursed employee expenses that are the subject of Counts 1, 2, 3, 6, 7, 9, 10 through 31 of the Indictment had at least a reasonable basis in the law and that positions disclosed through Forms 8275 had at least a reasonable basis.

For instance, it is anticipated that Mr. DiRuzzo will explain that ordinary and necessary business expenses are generally common and helpful expenses and that, with regard to Count 1, there is a reasonable basis for expensing ordinary and necessary cellular and internet bills incurred in the employee's trade or business and for which an employee paid and was not reimbursed.

It is anticipated that Mr. DiRuzzo will provide similar analysis to each respective count in the Indictment which represented a reimbursed or unreimbursed employee expense.

**Trade or Business Deductions vs Expenses for the Production of Income (Investment)**

It is anticipated that Mr. DiRuzzo will explain the difference between investment activity and trade or business activity under §§ 162, 212. It is anticipated that Mr. DiRuzzo will discuss and compare the application of general restrictions on deductions to investment activities versus trade or business activities. *Id.* It is also anticipated that Mr. DiRuzzo will explain the proper treatment and reporting of deductions from both investment activities and from trade or business activities on an individual taxpayer's return.  It is anticipated that he will provide an opinion that investment-related restrictions on deductions are not applicable to deductions on tax returns listed in the Indictment where the taxpayer's activities rose to the level of a trade or business under §§ 162, 212 and *Higgins v. Commissioner*, 312 U.S. 212 (1941) and its progeny, and that there is at least a reasonable basis for the position that such expenditures are not miscellaneous itemized deductions.  §§ 63(d); 67(a),(b); and 62(a)(4).

It is anticipated that Mr. DiRuzzo will discuss federal authority recognizing employees as being engaged in a trade or business for tax purposes. E.g., Treas. Reg. § 1.199A-5.

It is anticipated that Mr. DiRuzzo will testify about trade or business income and loss and reporting these items on Form 1040, Schedule C.  It is anticipated Mr. DiRuzzo will discuss the current

framework for determining whether an activity gives rise to a trade or business and thus permits the deduction of certain expenses under *Commissioner v. Groetzinger*, 480 U.S. 23 (1987) and its progeny.

It is anticipated that Mr. DiRuzzo will explain that the Internal Revenue Code permits the deduction of certain home-related expenses for taxpayers engaged in a trade or business involving the use of the taxpayer's home. It is also anticipated that Mr. DiRuzzo will discuss the proper reporting of such deductions on an individual taxpayer's Form 1040.  He is expected to opine that there is a reasonable basis to report home-related expenses for taxpayers engaged in a trade or business involving the use of the taxpayer's home.

It is anticipated that Mr. DiRuzzo will opine that there is a reasonable basis to report mortgage-mandated homeowner's insurance as substituted mortgage insurance, which is deductible per § 163(h)(3)(E).

### Other Expenses

Mr. Diruzzo is expected to testify that there is at least a reasonable basis for the reporting position that expenses of the nature of those that are the subject of Counts 1, 2, 3, 6, 9, 12, 15, 18, 21, 22, 25, 27, 28 and are reported on Schedule A, Line 23 "Other Expenses" are deductible.

For example, it is anticipated that Mr. DiRuzzo will explain deductions related to vehicles or vehicle use that may be available to taxpayers engaged in a trade or business, including various methods of depreciation, such as accelerated and bonus depreciation, and section 179 deductions.  He is expected to provide an opinion that deductions at issue in the Indictment that are based upon these provisions are supported by a reasonable basis or higher standard in the law, so long as the amounts at issue were paid or incurred in furtherance of a taxpayer's trade or business.

It is anticipated that Mr. DiRuzzo will explain the history and current framework for depreciating capitalized expenditures under §§ 167, 168. It is anticipated that Mr. DiRuzzo will contrast

the historical treatment of depreciation, which was based on an asset's useful life, with the application of more recent Internal Revenue Code provisions permitting the accelerated cost recovery of certain expenses, including accelerated deductions under §§ 168(k), 179.

It is anticipated that Mr. DiRuzzo will testify that the trade or business deductions that are the subject of Counts 2, 3, 4, 5, 7, 8, 9, 10, 11, 15, 16, 17, 26, 30, 32, and 33 of the Indictment had a reasonable basis in law. Furthermore, to the extent the Indictment mislabeled a Count, Mr. DiRuzzo is expected to testify about those deductions in the same regard.  For example, with respect to Count 5, it is anticipated that Mr. DiRuzzo will explain that Schedule C to Form 1040 in 2019 provided for a taxpayer to report business expenses. Additionally, Mr. DiRuzzo will discuss, in conjunction with the forms and instructions to those forms, the law set forth above with respect to the allowability of the particular deductions at issue and the reasonable basis or other standard under the regulations for taking those deductions.

It is anticipated that Mr. DiRuzzo will testify about the effect of the U.S. Supreme Court's decision in *U.S. v. Home Concrete & Supple, LLC*, 566 U.S. 478 (2012), the pending U.S. Supreme Court case of *Relentless, Inc. v. Department of Commerce*, and the implications these cases had and have, respectively, for Treasury Regulations as well as prior case law that afforded a greater degree of deference to Treasury regulations, including, but not limited to, the U.S. Supreme Court cases of *Flowers* and *Woodward* addressing commuting and depreciation.

It is anticipated that Mr. DiRuzzo will opine that there is a reasonable basis to account for commuting in calculating the business use percentage of a vehicle. § 280F(d)(6)(B).

It is anticipated that Mr. DiRuzzo will opine that there is a reasonable basis to deduct assets purchased in furtherance of a trade or business activity.

6

It is anticipated that Mr. DiRuzzo will provide similar analysis to each respective count in the Indictment which represent a trade or business expense.

It is anticipated that Mr. DiRuzzo will opine that there is a reasonable basis to deduct child care that was ordinary and necessary to pursue one's trade or business.

## Impairment-Related Work Expenses

It is anticipated that Mr. DiRuzzo will testify regarding impairment-related work expenses. It is anticipated that Mr. DiRuzzo will discuss the circumstances under which a taxpayer can deduct these expenses, and how such deductions should be reported. This is expected to include a discussion on the law generally, the forms, and the reporting obligations in a general sense and to each count where applicable.

It is also anticipated that Mr. DiRuzzo will discuss the applicability of certain statutory limitations on deductions to expenses permitted under I.R.C. § 162, including impairment-related work expenses. Mr. DiRuzzo is expected to provide an opinion that the reporting position with respect to impairment-related work expenses in the tax returns listed in the Indictment is based upon at least a reasonable basis in the tax law, as is the disclosure of such position on Forms 8275, including Counts 3, 6, 8, 9, 12, 14, 15, 18, 22, 24, 27, 28, 31.  His opinion is expected to confirm that impairment-related work expenses are not subject to the limitations on medical expenses set forth in section 213.  (E.g., https://www.irs.gov/publications/p502#en_US_2022_publink1000179146)

## § 119 and Employee Benefit Program Expenses

It is anticipated that Mr. DiRuzzo will testify regarding § 119 of the Code. He is expected to testify that there is a reasonable basis for the Defendant's legal/interpretive position with respect to § 119 and other employee benefits program expenses, including under *Armstrong v. Phinney*, 394 F.2d 661 (5th Cir. 1968) (extending application of section 119 to partners, who, like sole proprietors, are subject to self-employment tax; rejecting IRS's position that partners could not be an employee of partnership for section 119 purposes). He is expected to opine that there was at least a reasonable basis for reporting positions taken and disclosed on tax returns listed in the Indictment pursuant to § 119, including Counts 2, 3, 4, 5, 8, 9, 10, 11, 15, 17, 26, 30, 32, and 33 of the Indictment.

It is anticipated that Mr. DiRuzzo will explain certain deductions related to employee-benefit programs that may be available to taxpayers engaged in a trade or business, including accident and health care plans, group term life insurance, and dependent care assistance programs.

## Charitable Deductions

It is further anticipated that Mr. Diruzzo's testimony will provide that charitable donations under section 170 are generally deductible as an itemized deduction on Schedule A if the requirements of that provision are satisfied.

It is further anticipated that Mr. DiRuzzo's testimony will provide that if a charitable contribution was not made out of detached and disinterested generosity and was motivated out of pecuniary interest, there is at least reasonable basis to report it as an advertising expense.

## Substantiation

It is anticipated that Mr. DiRuzzo will testify to the standards of substantiating deductible expenses and their application to tax returns listed in the Indictment. It is anticipated that Mr. DiRuzzo will discuss the application of the "Cohan Rule," which generally permits taxpayers to rely on

reasonable estimates for expenses, particularly where they are unable to produce records of actual expenses.

## **Tax Preparer Fees**

It is anticipated that Mr. DiRuzzo will testify that there is recognized authority providing that a tax preparer may be engaged on a contingency-fee basis and will testify regarding practice before the IRS, including under *Ridgely v. Lew*, 55 F. Supp. 3d 89 (D.D.C. 2014); *Loving*, 742 F.3d 1013 (D.C. Cir. 2014).

*Joseph DiRuzzo*
Joseph A. DiRuzzo, III, Esq., CPA, BCS

Dated: April 27, 2024

Respectfully submitted,

By: */s/ Jason B. Freeman*

Jason B. Freeman
TX Bar No. 24069736
FREEMAN LAW, PLLC
7011 Main Street
Frisco, Texas 75034
Tel.:  214.984.3410
Fax:  214.984.3409
jason@freemanlaw.com

By: */s/ Franklyn Mickelsen*

Franklyn Mickelsen
TX Bar No. 14011020
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204

(214) 720-9552
(214) 720-9594 (facsimile)
mick@texascrimlaw.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing motion was served on all counsel of record via CM/ECF, on this 27th day of April 2024.

*/s/ Jason B. Freeman*

*United States v. John Castro*

NDTX Case No. 4:24-CR-001-Y

# EXHIBIT A

# CV of Joseph A. DiRuzzo, III, ESQ., C.P.A., B.C.S.

## JOSEPH A. DiRUZZO, III, ESQ., C.P.A., B.C.S.*

401 East Las Olas Blvd.                                              954.615.1676 (o)
Suite 1400                                                          954.827.0340 (f)
Ft. Lauderdale, Florida, 33301                              jd@margulisgefland.com

## EXPERIENCE

### MARGULIS GELFAND DiRUZZO & LAMBSON (as successor to DiRUZZO & COMPANY)
Ft. Lauderdale, Florida
*Partner, March 2017 – present*

• Argued eleven cases before the United States Court of Appeals for the 2nd, 3rd, 11th, and D.C. Circuits on a range of cases including class actions, Federal Trade Commission Act, civil taxation, direct criminal appeals, and habeas corpus.

• Successfully tried a Tax Court case (*Meggs v. Comm'r*, T.C. Memo. 2019-5) regarding the treatment of the transfer of intellectual property.

• Represented individuals asserting that various firearms statutes were unconstitutional under federal and state law.

• Tried a District Court bank and wire fraud case in the Southern District of New York. *United States v. Teman*, 465 F. Supp. 3d 277 (S.D.N.Y. 2020).

• Represented a taxpayer before the Canadian Revenue Authority and the Internal Revenue Service regarding request for competent authority relief from double taxation under the United States-Canada tax treaty.

• Expert witness in two civil malpractice actions regarding criminal defense counsel's failure to move to dismiss, and civil tax counsel's failure to timely file tax returns.

• Submitted numerous offers in compromise ("OIC") under 26 U.S.C. § 7122 to the Internal Revenue Service attempting to mitigate a taxpayer's outstanding federal tax liabilities.

• Represented an individual in various Marjorie Stoneman Douglas (Parkland, Florida) school shooting cases.

### FUERST ITTLEMAN DAVID & JOSEPH, PL
Miami, Florida
*Partner, 2011 – March 2017*

• Argued before the United States Courts of Appeals for the 1st, 2nd, 3rd, 4th, 8th, 9th, and 11th Circuits on a range of cases such as tax, bank secrecy act, securities fraud, intervention, bankruptcy fraud, and habeas corpus. Argued five cases before the Virgin Islands Supreme Court on a range of cases including preliminary injunction, direct criminal appeals, and habeas corpus.

• Represented, as lead counsel, the New York City Detectives, Lieutenants, and Captains police unions in connection with the "stop and frisk" litigation (*Floyd v. City of New York*) in the Second Circuit.

• Successfully represented a taxpayer against the U.S. Department of Justice in an appeal of summary judgment entered in favor of the Government (*United States v. Hom*) involving a case of first impression addressing the applicability of the Bank Secrecy Act/Foreign Bank Account Report ("FBAR") to on-line poker websites before the Ninth Circuit.

• Lead counsel on numerous cases before the U.S. Tax Court, the District Courts, and the U.S. Court of Federal Claims on a range of cases including tax, IRS summons enforcement, and civil investigative demands; tried seven cases before the U.S. Tax Court.

- Represented a court-appointed client in federal case involving Title III wiretaps, administrative subpoenas, and a warrantless search of cellular telephone.
- Obtained a full trial acquittal in court-appointed federal criminal case in *United States v. Williams*, case no. 3:10-cr-39 (D.V.I.).
- Represented targets of grand jury investigations before the U.S. District Court for the Southern District of Florida in petitions to quash grand jury subpoenas.

LAW OFFICE OF MARJORIE ROBERTS PC
St. Thomas, United States Virgin Islands
*Associate, 2008 – 2011*
- Lead counsel on numerous U.S. Tax Court cases, and four District Court of the Virgin Islands tax cases, involving alleged Virgin Islands tax shelters and residency disputes.  Lead counsel on thirteen District Court cases involving summons enforcement issued to third parties regarding Virgin Islands taxpayer audits.
- Lead counsel on two U.S. District Court freedom of information act (FOIA) cases for Virgin Islands taxpayers.  Tried (as part of multi-attorney trial team) a District Court civil tax case involving disputed Virgin Islands residency.
- Lead counsel on five U.S. Court of Appeals cases involving direct criminal and collateral attack appeals.
- Responsible for all stages of tax litigation including responding to information document requests, interviewing and preparing witnesses for examination, representing clients in IRS interviews, and drafting protests to IRS 30-day letters.  Drafted tax opinions of regarding tax consequences the interplay of the Internal Revenue Code as mirrored to the Virgin Islands for issues of source and effectively connected income, for both inbound and outbound transactions.
- Court-appointed counsel on federal international criminal case involving mutual legal assistance treaties (MLATs) and taking of foreign evidence via letters rogatory and Fed. R. Crim. P. 15 depositions.  Tried two federal criminal jury trials to verdict.

PRICEWATERHOUSECOOPERS LLP
New York, New York
*Tax Associate, 2006 - 2008*
- Drafted tax opinions analyzing U.S. tax consequences of a multinational corporation's global restructuring involving domestic entities and controlled foreign corporations.  Performed tax research and drafted internal memoranda for corporate mergers and acquisitions.
- Reviewed SEC filings and assessed tax attributes of potential targets for clients' tax due diligence.
- Assisted in the tax calculations under generally accepted accounting principles for quarterly and annual SEC filings and for financial statement "carve outs" for corporate spin-offs.
- Member of a tax team that audited a regulated corporation's tax calculations and uncertain tax positions.
- Produced pro forma and consolidated federal returns for domestic corporations and informational returns for controlled foreign corporations and foreign disregarded entities.

OFFICE OF THE PUBLIC DEFENDER, 17TH JUDICIAL CIRCUIT
Ft. Lauderdale, Florida
*Assistant Public Defender, 2003 - 2005*
• Awarded Attorney of the year 2003, County Division; held office trial record (28 jury trials in one year).
• Tried thirty-seven total jury trials, with twenty-three successful verdicts.
• Conducted all aspects of case investigation and discovery, including potential witness interviews, client direct and cross examination preparation, and deposing scores of prosecution witnesses.
• Handled every stage of case litigation including drafting and arguing dispositive motions at the trial level and some appellate litigation including direct appeals.

## EDUCATION

Loyola University Chicago, School of Law, Chicago, Ill. – *LL.M. (Healthcare Law), May 2022*
The University of Miami, School of Law, Coral Gables, Fla. – *J.D., May 2002*
The University of Connecticut, School of Business, Storrs, Conn. – *M. Acc., December 2009*
Florida International University, Miami, Fla. – *B. Acc., August 2006*
Mary Washington College, Fredericksburg, Va. – *B. S. in Business Admin. and International Affairs, May 1999*

## PROFESSIONAL LICENSURE

Admitted to practice law in Florida (2002), New Jersey (2006), New York (2006), and U.S. Virgin Islands (2008); licensed as a Solicitor in England & Wales (2010) (inactive), and Certified Public Accountant in Florida (2008).

## BOARD CERTIFICATION

*Florida Bar Board Certified Specialist ("B.C.S.") – Criminal Appellate Law (2013).

## COURT ADMISSIONS

U.S. Supreme Court, 1st Circuit, 2nd Circuit, 3rd Circuit, 4th Circuit, 8th Circuit, 9th Circuit, 11th Circuit, Federal Circuit, D.C. Circuit, U.S. Tax Court, U.S. Court of Federal Claims, and the U.S. Court of International Trade.  United States District Courts for the Southern District of Florida, Middle District of Florida, District of the Virgin Islands, District of New Jersey, Southern District of New York, Western District of Michigan, D.C. District, Eastern District of Missouri, and the District of Colorado.

## SPEAKING ENGAGEMENTS

• Panelist, *Ensuring Ethical Client Solicitations,* American Bar Association – Tax Section, 2015 May Meeting
• Presenter, *Accounting for Bitcoin*, Florida Institute of Certified Public Accountants, 30th Annual Accounting Show, September 2015
• Panelist, *Civil and Criminal Enforcement Tools for Use Against Overseas Taxpayers and Taxpayers with Overseas Assets*, American Bar Association – Tax Section, 2016 October Meeting
• Panelist, *How to Affirmatively Defend an FBAR ("Foreign Bank Account Report") Case*, American Bar Association – Tax Section, 2017 January Meeting

- Presenter, *CPAs Civil & Criminal Liability in Tax Practice*, Florida Institute of Certified Public Accountants, 2018 Accounting & Business Show, September 2018
- Panelist, *The Administrative Procedure Act v. the IRS: Which Regulations, Rules, and Notices Will Survive?*, New York University School of Professional Studies, June 2023

## REPORTED CASES

UNITED STATES COURTS OF APPEALS:

*Apex Constr. Co., Inc. v. United States Virgin Islands*, 2023 WL 5287668 (3d Cir. 2023)

*Gillette v. Warden Golden Grove Adult Corr. Facility*, 75 F.4th 191 (3d Cir. 2023)

*Powers v. U.S. Homeland Sec.*, 2023 WL 4623608, (11th Cir. 2023), *cert. denied sub nom. Powers v. Dep't of Homeland Sec.*, 2024 WL 675254 (2024)

*V.I. Derivatives, LLC v. Dir., Virgin Islands Bureau of Internal Revenue*, 2023 WL 4117403 (3d Cir. 2023)

*Crim v. Comm'r of Internal Revenue*, 66 F.4th 999 (D.C. Cir. 2023)

*Simon v. Gov't of Virgin Islands*, 2023 WL 2707180 (3d Cir. 2023)

*Duncan v. Governor of Virgin Islands*, 48 F.4th 195 (3d Cir. 2022)

*McLane v. Comm'r of Internal Revenue*, 24 F.4th 316 (4th Cir. 2022)

*United States v. McIntosh*, 2022 WL 212310 (3d Cir. 2022)

*Morton v. United States Virgin Islands*, 128 A.F.T.R.2d 2021-7051, 2021 WL 6137867 (3d Cir. 2021)

*United States v. Brooks*, 841 F. App'x 346 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2654 (2021)

*United States v. Baxter*, 951 F.3d 128 (3d Cir. 2020), *cert. denied*, 141 S.Ct. 1269 (2021)

*In re Brooks*, 791 F. App'x 327 (3d Cir. 2020)

*Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649 (11th Cir.), *cert. denied sub nom. Gus Paez v. Inch*, 141 S. Ct. 309 (2020)

*Simon v. Gov't of the Virgin Islands*, 929 F.3d 118 (3d Cir. 2019)

*Myers v. Comm'r of Internal Revenue Serv.*, 928 F.3d 1025 (D.C. Cir. 2019)

*United States v. James*, 928 F.3d 247 (3d Cir. 2019)

*Fed. Trade Comm'n v. Rensin*, 771 F. App'x 84 (2d Cir. 2019)

*Jones v. Sec'y, Dep't of Corr.*, 778 F. App'x 626 (11th Cir.)

*United States v. Castillo*, 772 F. App'x 11 (3d Cir.), *cert. denied*, 140 S. Ct. 508 (2019)

*United States v. Ayala*, 917 F.3d 752 (3d Cir.), *cert. denied*, 140 S. Ct. 164 (2019)

*Martinez v. Warden Golden Grove Corr. Facility*, 757 F. App'x 86 (3d Cir. 2018)

*Crim v. Comm'r of Internal Revenue*, 742 F. App'x 309 (9th Cir. 2018)

*Thompson v. Comm'r of Internal Revenue*, 742 F. App'x 316 (9th Cir. 2018)

*United States v. Castillo*, 742 F. App'x 610 (3d Cir. 2018)

*Berkun v. Comm'r of Internal Revenue*, 890 F.3d 1260 (11th Cir. 2018)

*Teffeau v. Comm'r of Internal Revenue*, 709 F. App'x 170 (4th Cir. 2017)

*United States v. Brooks*, 872 F.3d 78 (2d Cir. 2017), *cert. denied*, 139 S. Ct. 171 (2018)

*Gillette v. Prosper*, 858 F.3d 833 (3d Cir. 2017)

*Fed. Trade Comm'n v. Rensin*, 687 F. App'x 3 (2d Cir. 2017)

*United States v. Fredericks*, 684 F. App'x 149 (3d Cir. 2017)

*United States v. Willis*, 844 F.3d 155 (3d Cir. 2016)

*United States v. Crim*, 665 Fed. App'x 144 (3d Cir. 2016)

*United States v. Hom*, 657 Fed. App'x 652 (9th Cir. 2016)

*United States v. Macias*, 654 Fed. App'x 458 (11th Cir. 2016)
*Gov't of the Virgin Islands v. Mills*, 821 F.3d 488 (3d Cir. 2016)
*Gangi v. United States*, 638 Fed. App'x 16 (1st Cir. 2016)
*United States v. Moore*, 628 Fed. App'x 736 (11th Cir. 2016)
*United States v. Gibson*, 615 Fed. App'x 619 (11th Cir. 2015)
*Fisher v. Sec'y, Florida Dep't of Corr.*, 616 Fed. App'x 916 (11th Cir. 2015)
*In re Martinez*, 594 Fed. App'x 96 (3d Cir. 2015)
*Stoddard v. Sec'y, Florida Dep't of Corr.*, 600 Fed. App'x 696 (11th Cir. 2015)
*Patterson v. U.S. Virgin Islands*, 597 Fed. App'x 671 (3d Cir. 2015)
*Floyd v. City of New York*, 770 F.3d 1051 (2d Cir. 2014)
*Winthrop-Redin v. United States*, 767 F.3d 1210 (11th Cir. 2014)
*Hill v. Sec'y, Florida Dep't of Corr.*, 578 Fed. App'x 805 (11th Cir. 2014)
*Marcum LLP v. United States*, 753 F.3d 1380 (Fed. Cir. 2014)
*United States v. Locklear*, 575 Fed. App'x 125 (4th Cir. 2014)
*United States v. Curshen*, 567 Fed. App'x 815 (11th Cir. 2014)
*United States v. Territory of Virgin Islands*, 748 F.3d 514 (3d Cir. 2014)
*Gillette v. Territory of Virgin Islands*, 563 Fed. App'x 191 (3d Cir. 2014)
*United States v. Dames*, 556 Fed. App'x 793 (11th Cir. 2014)
*United States v. Crim*, 553 Fed. App'x 170 (3d Cir. 2014) *cert. denied*, 134 S. Ct. 2851 (2014)
*United States v. Gillette*, 738 F.3d 63 (3d Cir. 2013) *cert. denied*, 134 S. Ct. 2714 (2014)
*United States v. Benoit*, 730 F.3d 280 (3d Cir. 2013)
*United States v. Curbelo*, 726 F.3d 1260 (11th Cir. 2013) *cert. denied*, 134 S. Ct. 962 (2014)
*United States v. Schuerer*, 525 Fed. App'x 902 (11th Cir. 2013) *cert. denied*, 134 S. Ct. 1350 (2014)
*Cooper v. Comm'r*, 718 F.3d 216 (3d Cir. 2013)
*Apex Oil Co. v. Comm'r*, 500 Fed. App'x 552 (8th Cir. 2013)
*Simon v. Gov't of the Virgin Islands*, 679 F.3d 109 (3d Cir. 2012)
*McHenry v. Comm'r*, 677 F.3d 214 (4th Cir. 2012)
*Birdman v. Office of the Governor*, 677 F.3d 167 (3d Cir. 2012)
*Cross v. Comm'r*, 499 Fed. App'x 857 (11th Cir. 2012)
*In re Morton*, 491 Fed. App'x 291 (3d Cir. 2012)
*United States v. Russell*, 479 Fed. App'x 420 (3d Cir. 2012)
*Gangi v. United States*, 453 Fed. App'x 255 (3d Cir. 2011)
*United States v. Crim*, 451 Fed. App'x 196 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 2682 (2012)
*Cherys v. United States*, 405 Fed. App'x 589 (3d Cir. 2011)
*Lizardo v. United States*, 619 F.3d 273 (3d Cir. 2010)

DISTRICT COURTS, TAX COURT, & COURT OF FEDERAL CLAIMS:

*United States v. James*, 677 F. Supp. 3d 329 (D.V.I. 2023)
*Wright v. Comm'r of Internal Revenue*, T.C. Memo. 2023-153 (Tax Court 2023)
*Berkun v. Comm'r of Internal Revenue*, T.C. Memo. 2023-127 (Tax Court 2023)
*Gagliardi v. Soc. Sec. Admin.*, 622 F. Supp. 3d 1250 (S.D. Fla. 2022)
*United States v. Solomon by & through Solomon*, 570 F. Supp. 3d 1195 (S.D. Fla. 2021)
*Crim v. Comm'r of Internal Revenue*, T.C. Memo. 2021-117 (Tax Court 2021)
*Battat v. Comm'r of Internal Revenue*, T.C. Memo. 2021-57 (Tax Court 2021)

*United States v. Teman*, 465 F. Supp. 3d 277 (S.D.N.Y. 2020)
*Thompson v. Comm'r of Internal Revenue*, 155 T.C No. 5 (Tax Court 2020)
*Gagliardi v. Soc. Sec. Admin.*, 441 F. Supp. 3d 1284 (S.D. Fla. 2020)
*Fonticiella v. Comm'r of Internal Revenue*, T.C. Memo. 2019-74 (Tax Court 2019)
*Meggs v. Comm'r of Internal Revenue*, T.C. Memo. 2019-5 (Tax Court 2019)
*Rademacher v. Comm'r of Internal Revenue*, T.C. Memo. 2018-43 (Tax Court 2018)
*Mencias v. Comm'r of Internal Revenue*, T.C. Memo. 2017-109 (Tax Court 2017)
*Taft v. Comm'r of Internal Revenue*, T.C. Memo. 2017-66 (Tax Court 2017)
*Thompson v. Comm'r of Internal Revenue*, 148 T.C. 59 (Tax Court 2017)
*Battat v. Comm'r of Internal Revenue*, 148 T.C. 32 (Tax Court 2017)
*Nutrition Formulators, Inc. v. Comm'r*, T.C. Memo 2016-60 (Tax Court 2016)
*Simon v. Gov't of the Virgin Islands*, 116 F.Supp.3d 529 (D.V.I. 2015)
*Cooper v. Comm'r*, T.C. Memo. 2015-72 (Tax Court 2015)
*Uribe v. Comm'r*, T.C. Memo. 2014-116 (Tax Court 2014)
*Gangi v. United States*, 2 F.Supp.3d 12 (D. Mass. 2014)
*Sugarloaf Fund LLC v. Comm'r*, 141 T.C. No. 4 (Tax Court 2013)
*Marcum LLP v. United States*, 112 Fed. Cl. 167 (Fed. Cl. 2013)
*Villareale v. Comm'r*, T.C. Memo 2013-74 (Tax Court 2013)
*Huff v. Comm'r*, 138 T.C. 258 (Tax Court 2012)
*Cross v. Comm'r*, T.C. Memo 2012-344 (Tax Court 2012)
*Philemond v. Comm'r*, T.C. Memo 2012-29 (Tax Court 2012)
*Gaitan v. Comm'r*, T.C. Memo. 2012-3 (Tax Court 2012)
*Huff v. Comm'r*, 135 T.C. 605 (Tax Court 2010)
*Huff v. Comm'r*, 135 T.C. 222 (Tax Court 2010)
*Vento v. IRS*, 714 F. Supp.2d 137 (D.D.C. 2010)
*Twin Palms Resort, LLC v. United States*, 676 F. Supp.2d 1350 (S.D. Fla. 2009)

STATE & TERRITORIAL COURTS:

*Krapacs v. Bacchus*, 301 So. 3d 976 (Fla. 4th DCA 2020)
*A & S Ent., LLC v. Fla. Dep't of Revenue*, 282 So. 3d 905 (Fla. 3rd DCA 2019)
*Simon v. Gov't of Virgin Islands*, 67 V.I. 702 (V.I. 2017)
*In re: Gillette*, 64 V.I. 440 (V.I. 2016)
*Yusuf v. Hamed*, 59 V.I. 841 (V.I. 2013)
*Farrington v. People*, 59 V.I. 690 (V.I. 2013)
*Merrifield v. People*, 56 V.I. 769 (V.I. 2012)
*In re Morton*, 56 V.I. 313 (V.I. 2012)
*Farrington v. People*, 55 V.I. 644 (V.I. 2012)

*United States v. John Castro*

NDTX Case No. 4:24-CR-001-Y

# Appendix to Defendant's Expert Witness Designation

# APPENDIX

## SECTION 62(A)(2)(A)

The following is applicable to Counts 1-3, 6-7, 9-21, 23-28, 30, and 32.

Gross Income is defined in Title 26, Subtitle A, Chapter B Computation of Taxable Income, Part I Definitions, as income "from whatever source derived" with due regard to Part II (§§ 71-91), *Items Specifically Included in Gross Income*, and Part III (§§ 101-140), *Items Specifically Excluded in Gross Income*. Once total gross income is calculated, it would be reported on a U.S. individual income tax return as your "Total Income," which, on the 2022 Form 1040, U.S. Individual Income Tax Return, is Line 9. Although this is identified on the Form 1040 as "Total Income," the correct statutory term is "Gross Income."

After total gross income is calculated, you next determine "Adjusted Gross Income," which is defined and calculated in accordance with Section 62 titled "Adjusted Gross Income Defined."

Section 62(a) states "For purposes of this subtitle [Subtitle A, *Income Taxes*], the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:" Before going through the list, it's important to understand terminology. These deductions are not "itemized deductions." Because these deductions adjust and reduce *Gross Income* to calculate "*Adjusted Gross Income*," in the tax industry, these are informally referred to as "*Above-the-Line Deductions*" since they are calculated "above the line" for "adjusted gross income" as shown below. More accurately, they should be referred to as *Gross Income Deductions*.

| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** . . . . . . . . | 9 | |
|---|---|---|---|
| 10 | Adjustments to income from Schedule 1, line 26 . . . . . . . . . . . | 10 | |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** . . . . . . . . | 11 | |
| 12 | **Standard deduction or itemized deductions** (from Schedule A) . . . . . . . | 12 | |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A . . . . . . | 13 | |
| 14 | Add lines 12 and 13 . . . . . . . . . . . . . . . . . . | 14 | |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** . . . | 15 | |

**Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**    Cat. No. 11320B    Form **1040** (2023)

Semantics is critical to proper statutory interpretation.  Section 62(a)(1)-(21) is the list of subsections that identify all of the *Above-the-Line* Gross Income Deductions taken into account to adjust and calculate "*Adjusted Gross Income*."  That is, Section 62(a) lists deductions that are taken from gross income to arrive at adjusted gross income.  Note that Section 67(b) defines "miscellaneous itemized deductions" as follows: "For purposes of this section, the term 'miscellaneous itemized deductions' means the *itemized deductions* other than" those listed therein.[1]  Section 63(d), in turn, defines "itemized deductions" as "the deductions allowable under this chapter *other than* the deductions allowable *in arriving at* adjusted gross income."  The deduction under Section 62(a)(2)(A), which is deducted in arriving at adjusted gross income, is, therefore, not an "itemized deduction" and, therefore, is not a "miscellaneous itemized deduction."

For example, Section 62(a)(1) identifies "deductions allowed by this chapter [*Chapter 1, Normal Taxes, covering Sections 1- 1400Z-1, other than Part VII, covering Sections 212-224*]… which are attributable to a trade or business carried on by the taxpayer, if such trade or business does **not** consist of the performance of services by the taxpayer as an employee."  As such, Section 62(a)(1) expressly limits this subsection to independent trade craftsmen and business owners.

Section 62(a)(2), however, lists five subsections, (A)-(E), that cover various trade expense deductions for employees.  Subsection (A) identifies the deductible expenses in Part VI, which covers Sections 161-199A (including, in particular, the Section 162 trade expense deduction), as applicable to all employees in general if it was under a reimbursement arrangement.  Subsection (B) identifies Section 162 trade expenses of a performing artist.  Subsection (C) identifies Section 162 trade expenses of an official of a state or political subdivision compensated on a fee-basis.  Subsection (D) identifies Section 162 trade expenses of elementary and secondary school teachers.

---

[1] (Emphasis added).

And lastly, Subsection (E) identifies Section 162 trade expenses of members of reserve components of the Armed Forces of the United States.

With regard to Section 62(a)(2)(A), the full text reads "For purposes of this subtitle, the term 'adjusted gross income' means, in the case of an individual, gross income minus… [t]he deductions allowed by part VI (section 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer. The fact that the reimbursement may be provided by a third party shall not be determinative of whether or not the preceding sentence applies."

In applying the late United States Supreme Court Associate Justice Antonin Scalia's canons of statutory interpretation as delineated in his book, *Reading Law: The Interpretation of Legal Texts*,[2] including, but not limited to the *Title and Heading Canon*, the first step is to read the actual text of the statute. If and only if there is ambiguity, then one may look beyond the text of the statute.

The United States Supreme Court has held that although "it has long been established that the title of an Act 'cannot enlarge or confer powers,'"[3] the title of a statute or section "can aid in resolving an ambiguity in the legislation's text."[4] As Chief Justice John Marshall once explained, "[w]here the mind labours to discover the design of the legislature, it seizes everything from which aid can be derived."[5] A title or heading, however, being only "a short-hand reference to the general

---

[2] Scalia & Gardner, *Reading Law: The Interpretation of Legal Texts* (2012).
[3] *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 19 n.14 (1981) (quoting *U.S. v. Oregon & California R.R.*, 164 U.S. 526, 541 (1896) and *Cornell v. Coyne*, 192 U.S. 418, 430 (1904); citing *U.S. v. Fisher*, 2 Cranch 358, 386 (1805) and *Yazoo & Mississippi Valley R.R. v. Thomas*, 132 U.S. 174, 188 (1889)).
[4] *INS v. National Center for Immigrants' Rights*, 502 U.S. 183, 189-90 (1991) (citing *Mead Corp. v. Tilley*, 490 U.S. 714, 723 (1989) and *FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 388-89 (1959)).
[5] *U.S. v. Fisher*, 6 U.S. (2 Cranch) 358, 386 (1805).

subject matter involved" and "not meant to take the place of the detailed provisions of the text,"[6] can provide only limited interpretive aid in situations involving ambiguity of the text. Thus, a heading may shed light on the section's basic thrust,[7] or on ambiguous language in the text, but it "cannot limit the plain meaning of the text,"[8] and "has no power to give what the text of the statute takes away" or, vice-versa, to take away what the statute gives.[9]

In the case of Section 62(a)(2)(A), the text is clear and unambiguous. A deduction against gross income is permitted for "expenses paid… by the taxpayer, in connection with the performance by him of services as an employee." This expense must be incurred "under a reimbursement or other expense allowance arrangement with his employer." Lastly, if a reimbursement is "provided by a third party," that is not relevant to qualifying for this deduction. This implies that expenses incurred may fall under the provision even if they are not to be reimbursed by an employer. Therefore, there are only two substantive requirements in this case. First, the taxpayer must pay an expense connected in some way to performing his job duties. Second, the expense must be under a reimbursement arrangement.

The U.S. Supreme Court has explained that "[w]ithout a statutory definition, we turn to the phrase's plain meaning at the time of enactment," which simply involves pulling up a dictionary.[10]

---

[6] *Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528 (1947).
[7] *See, e.g., Almendarez-Torres v. U.S.*, 523 U.S. 224, 234 (1998) (the words 'criminal penalties' in section heading relied on as one indication that the section does not define a separate crime, but instead sets out penalties for recidivists); *INS v. National Center for Immigrants' Rights*, 502 U.S. 183, 189 (1991) ('text's generic reference to 'employment' should be read as a reference to the 'unauthorized employment' identified in the paragraph's title').
[8] *Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 529 (1947); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) (quoting *Trainmen*).
[9] *Demore v. Kim*, 538 U.S. 510, 535 (2003) (O'Connor, J., concurring) (citing *INS v. St. Cyr*, 533 U.S. 289, 308-09 (2001)).
[10] "Without a statutory definition, we turn to the phrase's plain meaning at the time of enactment." *Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020) (citing *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011)). The U.S. Supreme Court went on to cite the Oxford English Dictionary and Merriam-Webster's Collegiate Dictionary.

Scalia's *Reading Law* also identifies this as the *Ordinary Meaning Canon*, which is commonly known amongst jurists.[11]

The plain English definition of "under," according to Merriam-Webster's Collegiate Dictionary, includes "falling short of a standard or required degree."[12]  While the IRS may argue that this interpretation of the term "under" was too broad and that the statute contemplates a reimbursement requirement given the title of the subsection, this broad interpretation without a reimbursement requirement is supported by Judge Joseph Connor's ruling in *Plante v. U.S.* wherein he held that "as long as the law allows deductions of ordinary and necessary expenses incurred in carrying on any trade or business, an employee should not be penalized in being precluded from the allowance of a deduction because his employer does not reimburse him."[13]  Indeed, the *Plante* decision emphasizes that such a rule "follow[s] what seems to be the weight of authority,"[14] indicating that there is substantial authority for the proposition.

Under Treasury Regulations, where substantial authority  exists, the position is deemed proper, even if the IRS disagrees with it: "If there is substantial authority for the tax treatment of an item, the item is treated as if it were shown properly on the return."[15]  The "substantial authority" standard is "less stringent than the more likely than not standard,"[16] meaning that substantial authority does not require that a reporting position even be likely to be upheld. There may be substantial authority for more than one position with respect to the same item.[17] And a tax

---

[11] Scalia & Gardner, *Reading Law* at 69.
[12] Merriam-Webster's Collegiate Dictionary (11th ed. 2019)
[13] *Plante v. U.S.*, 226 F. Supp. 314, 317 (D.N.H. 1963) ("Therefore, following what seems to be the weight of authority, I conclude that the better and more equitable rule is that an employee may deduct non-reimbursed payments made by himself in satisfaction of liabilities incurred while carrying on his employer's business, whether this be considered as carrying on his own business in earning his salary or as carrying on the business of his employer, or both.").
[14] *Id.*
[15] Treas. Reg. § 1.6662-4(d)(1).
[16] Treas. Reg. § 1.6662-4(d)(2).
[17] Treas. Reg. § 1.6662-4(d)(3)(i).

preparer "may [even] have substantial authority for a position that is supported *only* by a well-reasoned construction of the applicable statutory provision."[18]

Against the *Title and Heading Canon* adopted by the late Justice Scalia and late Chief Justice Marshall, the IRS will insist that the title of the subsection 62(a)(2)(A), which reads "Reimbursed expenses of employees," should be read to imply a reimbursement requirement. However, *Reading Law: The Interpretation of Legal Texts* refutes this even further.   In the "Thirteen Falsities Exposed," *Reading Law* lists a number of relevant falsities that apply here.

First, the "false notion that the spirit of a statute should prevail over its letter."[19]   Second, the "false notion that the quest in statutory interpretation is to do justice."[20]   Third, the "false notion that words should be strictly construed."[21]   Fourth, the "false notion that tax exemptions – or any other exemptions for that matter – should be strictly construed."[22]   Fifth, the "false notion that the purpose of interpretation is to discover intent."[23]   When all five of these falsities are combined in the context of interpreting Section 62(a)(2)(A), Judge Joseph Connor's interpretation becomes clear.   And lastly, the plain English definition of "arrangement" includes verbal agreements.

There is, at minimum, reasonable basis for this legal interpretation.

---

[18] Treas. Reg. § 1.6662-4(d)(3)(ii).
[19] Scalia & Gardner, *Reading Law* at 343.
[20] *Id*. at 347.
[21] *Id*. at 355.
[22] *Id*. at 359.
[23] *Id*. at 391.

## WORK-CONNECTED TEMPORARY IMPAIRMENT PREVENTION EXPENSES

The following is applicable to Counts 6, 8-9, 12-14, 18, 22, 24, 27, and 31-32.

After "*Adjusted Gross Income*" is calculated taking into account the Gross Income Deductions identified at Section 62(a)(1)–(21), which included the Section 62(a)(2)(A) deduction, one must then calculate his "taxable income" as shown below.

| | | |
|---|---|---|
| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** . . . . . . . | 9 |
| 10 | Adjustments to income from Schedule 1, line 26 . . . . . . . . . . . . | 10 |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** . . . . . . . | 11 |
| 12 | **Standard deduction or itemized deductions** (from Schedule A) . . . . . . . | 12 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A . . . . . | 13 |
| 14 | Add lines 12 and 13 . . . . . . . . . . . . . . . . . . . | 14 |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** . . . . . | 15 |

Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.          Cat. No. 11320B          Form **1040** (2023)

Section 67(b)(1)-(12) identifies a dozen statutorily-recognized itemized deductions used to calculate and arrive at "taxable income." If an expense is not expressly covered by one of the twelve explicitly enumerated statutory itemized deductions, it is treated as a "miscellaneous itemized deduction." Typically, these were expenses that case law or administrative guidance had determined were permissible as Miscellaneous Itemized Deductions. For example, the Eleventh Circuit recently "held that as a matter of first impression, hobby losses are below-the-line miscellaneous itemized deductions on federal income taxes."[24] Hence, if the deduction is enumerated, it cannot be a "Miscellaneous Itemized Deduction."

Section 67(g) states that "no miscellaneous itemized deduction shall be allowed for any taxable year beginning after December 31, 2017, and before January 1, 2026," which, for individuals, is tax years 2018-2025.[25]

---

[24] *Gregory v. C.I.R.*, 69 F.4th 762 (11th Cir. 2023).
[25] Despite Section 62(a)(2)(A)'s unreimbursed employee expenses under a reimbursement arrangement being deemed a Section 162 Gross Income Deduction used to calculate Adjusted Gross Income, the IRS contends it is a "miscellaneous itemized deduction" that cannot be used to calculate "taxable income." The IRS is conflating Gross Income Deductions with Miscellaneous Itemized Deductions.

While Section 67(b)(5) refers generally to all medical expenses covered by Section 213, Section 67(b)(6) refers more specifically to "impairment-related work expenses."  Both are below-the-line deductions used to calculate taxable income.  However, general medical expenses are subject to their own separate rules and thresholds under Section 213.  And currently published IRS guidance recognizes that where such expenses are incurred to allow a taxpayer to be able to work, a taxpayer may take a Section 67(b)(6) deduction *or* a Section 213 deduction (though, of course, may not duplicate).[26]

"Impairment-related work expenses," however, are governed only by a brief statutory description at Section 67(d)(1)-(2), which states "For purposes of this section, the term 'impairment-related work expenses' means expenses of a handicapped individual (***as defined in section 190(b)(3)***) for… expenses in connection with such place of employment which are necessary for such individual to be able to work, and with respect to which a deduction is allowable under section 162 (determined without regard to this section)."

In accordance *Reading Law*'s *Interpretive-Direction Canon*,[27] because the term "handicapped individual" is statutorily defined at Section 190(b)(3), one must ignore the plain meaning of the term "handicapped" and instead focus squarely on the statutory definition.  As such, one must reconstruct the statute by inserting the statutory definition.

Section 190(b)(3) states that the term "handicapped individual" means "any individual who has a physical or mental disability (including, but not limited to, blindness or deafness) which for such individual constitutes or results in a functional limitation to employment, or who has any

---

[26] Deducting Medical Expenses: A Little Different For People with Disabilities, IRS, available at https://www.irs.gov/pub/irs-utl/oc_october_medical_expenses_for_pwd_v7.pdf ("If you have a disability, you can take a business deduction for expenses that are necessary for you to be able to work. If you take a business deduction for these impairment-related work expenses, they are not subject to the 7.5 percent limit that applies to medical expenses.")

[27] Scalia & Gardner, *Reading Law* at 225.

physical or mental impairment (including, but not limited to, a sight or hearing impairment) which substantially limits one or more major life activities of such individual." Disability is not defined in the Code or Treasury Regulations. Other sources, however, provide insight on its potential scope. The World Health Organization, for example, notes that health conditions such as depression can give rise to "disability,"[28] and adopts the definition that "[d]isability is an umbrella term for impairments, activity limitations and participation restrictions. It denotes the negative aspects of the interaction between a person's health condition(s) and that individual's contextual factors (environmental and personal factors)."[29]

Treasury Regulation § 1.190-2(a)(3)(ii) explains that handicapped includes a "physical or mental impairment… which substantially limits one or more of such individual's major life activities, such as performing manual tasks, walking, speaking, breathing, learning, or working."

Regulations do not specify whether these impairments must be permanent or whether they can be temporary in nature. If temporary is permissible, is it limited to long-term impairments or is it also extended to short-term impairments? Being that permanent and total disabilities are covered by our social security system, it would seem logical that this deduction would encompass partial disabilities as well as long- and short-term impairments since individuals with these characteristics would be ineligible for social security disability benefits and still have to work to cover living expenses. Treasury has not promulgated regulations to clarify these ambiguities since this statutorily enumerated Itemized Deduction was enacted into law in 1986.

Thus, a "handicapped individual" could include any person who experienced a short-term inability to work due to any illness or inability to speak due to something as innocuous as strep

---

[28] See https://www.who.int/health-topics/disability#tab=tab_1.
[29] The ICF: An Overview, published by the U.S. CDC, available at https://www.cdc.gov/nchs/data/icd/icfoverview_finalforwho10sept.pdf

throat since that "substantially limits … such individual's… speaking."  This interpretation is based upon Treasury's own broad definition of a physical impairment.

In *Reading Law*'s "Thirteen Falsities Exposed," there is a list of a number of relevant falsities that apply here.  First, the "false notion that the spirit of a statute should prevail over its letter."[30]  Second, the "false notion that the quest in statutory interpretation is to do justice."[31]  Third, the "false notion that words should be strictly construed."[32]  Fourth, the "false notion that tax exemptions – or any other exemptions for that matter – should be strictly construed."[33]  Fifth, the "false notion that the purpose of interpretation is to discover intent."[34]  When all five of these falsities are combined in the context of interpreting Section 67(d)(1)-(2), the result is quite broad.

Therefore, Section 67(d)(1)-(2) may reasonably be statutorily constructed to read that "impairment-related work expenses" means "expenses of" an individual who had a short-term inability to work at any point during the year that were "in connection with such place of employment which are ***necessary for such individual to be able to work***, and with respect to which a deduction is allowable under section 162 (determined without regard to this section)."

Focusing on the next requirement: "necessary for such individual to be able to work."

Section 67(d) was enacted in 1986.  Since it was enacted 38 years ago, Treasury has promulgated few clarifying regulations.  There has not been a single court case clarifying this statutorily enumerated below-the-line Itemized Deduction.  As a general rule, where the law is ambiguous and case authority is sparse, good faith will be presumed with regard to interpretations.[35]

---

[30] Scalia & Gardner, *Reading Law* at 343.
[31] *Id*. at 347.
[32] *Id*. at 355.
[33] *Id*. at 359.
[34] *Id*. at 391.
[35] *See Rueckert v. Gore*, 587 F. Supp. 1238 (N.D. Ill. 1984), *aff'd sub nom. Rueckert v. IRS*, 775 F.2d 208 (7th Cir. 1985).

Preventive health care has long been viewed as being necessary for employees to work without concern of contracting contagions or infecting coworkers with contagious illnesses. This general interpretation also parallels IRS guidance with respect to medical care expenses, which it provides "must be primarily to alleviate *or prevent* a physical or mental disability or illness"[36] and recognizes that, for example, "amounts paid for personal protective equipment, such as masks, hand sanitizer and sanitizing wipes, for the primary purpose of preventing the spread of the Coronavirus Disease 2019 (COVID-19 PPE) are treated as amounts paid for medical care under § 213(d) of the Internal Revenue Code (Code)."[37]   It also parallels other IRS guidance in the disability context, providing that "[q]ualified disability expenses include those for education, housing, transportation, employment training and support, assistive technology, personal support services, health, **prevention and wellness**, financial management, administrative services, legal fees, expenses for oversight and monitoring, and funeral and burial expenses."[38]

According to a report titled "Promoting Prevention Through the Affordable Care Act: Workplace Wellness" published by the National Center for Biotechnology Information, "declining workforce health contributes to an increase in health-related expenses, both in direct medical payments and indirect costs resulting from absenteeism and presenteeism. [Preventive] Wellness programs have been shown to save money; however, such programs are underused. One reason may be that the future benefits of healthy employees are significantly undervalued relative to the cost."[39]   Preventive health expenses, by virtue of their ability to reduce sick day claims and the

---

[36] IRS Publication 502 (2023), Medical and Dental Expenses.

[37] Announcement 2021-7, Amounts Paid for Certain Personal Protective Equipment Treated as Medical Expenses, available at https://www.irs.gov/pub/irs-drop/a-21-07.pdf.

[38] IRS Publication 907, Tax Highlights for Persons with Disabilities, available at https://www.irs.gov/publications/p907 (emphasis added).

[39] Anderko L, Roffenbender JS, Goetzel RZ, Millard F, Wildenhaus K, et al., *Promoting Prevention Through the Affordable Care Act: Workplace Wellness*, Preventing Chronic Disease (2012).

spread of contagious illnesses in the workplace, are necessary for individuals to work with less interruptions, which increases workplace productivity and the overall health of the U.S. economy.

Moreover, the term "necessary" has generally been given a broad meaning—for example, in the Section 162 context, where courts and the IRS have interpreted it to mean an expense that is "helpful" or "appropriate" to the trade or business.[40]  Courts and the IRS have also held that an expenditure does not have to be required to be considered necessary ordinary.[41]

Based on the foregoing, it is reasonable to determine that expenses intended to prevent impairments altogether satisfy the "necessary for such individual to be able to work" requirement. And if the expense was necessary to be able to work, then it is reasonable to conclude it is inextricably linked to the working activity thereby satisfying the final requirement that it be independently deductible under Section 162.

There is, at minimum, reasonable basis for this legal interpretation.

---

[40] Welch v. Helvering, 290 U.S. 111, 113 (1933).

[41] *Id.* ("what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place and circumstance. Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often.")

## **SECTION 119**

The following is applicable to Counts 4-5, 8, 10-11, 13-14, 17, 26, 30-31, and 33.

Generally, anything of value transferred from an employer to an employee is considered taxable income. It is generally deductible by the employer under Section 162, and, unless excluded from gross income, it is taxable to the employee.[42] For example, any benefits provided by an employer to an employee, such as free coffee, is unquestionably deductible by the employer as an employee benefit. The only question is whether it's taxable income to the employee. Because the general rule is that anything given to employees is taxable, Congress enacted several provisions to exclude items from being considered taxable income to the employee. Most of these provisions are covered in Title 26 "Internal Revenue Code," Subtitle A "Income Taxes," Chapter 1 "Normal Taxes," Part III "Items Specifically Excluded from Gross Income," which covers Sections 101–140.

The most popularly known of these provisions is Section 132, *Certain Fringe Benefits*, which identifies all of the tax-free fringe benefits that an employer can offer its employees without resulting in the value of that benefit being included in the employee's gross income, such as free coffee and snacks in the breakroom.

A lesser-known provision is Section 119, *Meals or Lodging Furnished for the Convenience of the Employer*, that identifies two rather large benefits that an employer can offer its employees without resulting in the value of that benefit being included in the employee's gross income, which are lodging and meals benefits provided to the employee and his entire family.

---

[42] This explains the government's assertion that Section 119 is not a deduction-generating provision. Although technically correct, it misses the point.

For the sake of clarity, benefits are always deductible by the employer under Section 162.  The only question is whether the employee can exclude it from income.  In the self-employment context, it would be futile to provide a benefit that must be included in income since a deduction for $100 with a corresponding inclusion in income of $100 is a net-zero result.  As such, in the context of a self-employed individual, he would need to provide himself with a benefit that is specifically identified as being excluded from gross income, such as those identified in Sections 101–140, which includes Section 119.

### *Applicability of Section 119*

Section 119(a)(2) states "There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him, his spouse, or any of his dependents by or on behalf of his employer for the convenience of the employer, but only if... in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment."

From this statutory text, we can extrapolate three statutory requirements: (1) an employee is required to accept lodging as a condition of employment (2) on the business premises (3) for the convenience of the employer.

### *Condition of Employment*

In the context of a self-employed individual, if the taxpayer is operating the business from his home to avoid the cost of a commercial office location, then it is a *de facto* condition of employment that he work from home—that is, because the home *is* the location of the business where work must be performed, working from home is a necessary condition.  Therefore, by confirming with a taxpayer that they operated the business from home *and* that they did so to avoid

the cost of a commercial office location, it is reasonable to conclude that the "condition of employment" requirement was satisfied.[44]

***On the Business Premises***

Treasury Regulation § 1.119-1(c)(1) generally defines "business premises of the employer" to mean the place of employment of the employee. The prevailing legal authorities have explained that the premises must either be an integral part of the business property or a place where the employer carried on some business activities.[45]

Both the U.S. Court of Federal Claims as well the IRS itself have held that an individual's in-home activities involving business-related entertaining, working in the evenings, and working on weekends qualify a personal residence as the business premises "of the employer."[46] It logically follows that where the residence is also the sole operating location of the business, that location *is* necessarily on the business premises.

The IRS has ruled that lodging includes such items as heat, electricity, gas, water, and sewerage services.[47] Moreover, where an employer furnishes such services necessary to make the lodging habitable for the employee, the value of those services is excludible as well, which includes renovations and capital improvements that are not lavish or excessive under the circumstances.[48]

---

[44] In the context of small business corporations, unlike the 'for the convenience of the employer' standard that specifically disregards contractual provisions, this requirement can be satisfied by the existence of a legally enforceable contractual provision that makes the acceptance of the lodging a condition of employment.

[45] *See Benninghoff v. C.I.R.*, 71 T.C. 216, *aff'd*, 614 F.2d 398 (5th Cir. 1980); *Dole v. C.I.R.*, 43 T.C. 697, *aff'd*, 351 F.2d 308 (1st Cir. 1965) *acq*., 1966-2 C.B. 3.

[46] *See Adams v. U.S.*, 218 Ct. Cl. 322 (1978) ("The residence supplied to [the taxpayer] was closely identified with [his employer's] business interests and was used to advance those interests); Rev. Rul. 75-540 (value of governor's mansion is excludible from gross income based on evening and weekend work as well as entertaining key individuals).

[47] *See* Rev. Rul. 68-579 (such amounts may not be deducted by the employee since they are personal, family, or living expenses made nondeductible by section 262 but may still be deductible by the business of the self-employed individual, which achieves the same result of nontaxation on those expenses).

[48] *Id*.

### *Convenience of the Employer*

Both the U.S. Court of Appeals for the Fifth Circuit as well as the U.S. Court of Federal Claims have held that the convenience-of-the-employer and condition-of-employment tests are essentially the same.[49]  Under both tests, there must be a "direct nexus" between the lodging furnished and the asserted business interests of the employer.[50]

In the case of home-based start-ups, there is a business interest in keeping overhead costs as low as possible.  If the cost of commercial office space can be avoided, it is financially responsible and prudent to avoid it.  By confirming this with a taxpayer, it is reasonable to conclude the "convenience of the employer" requirement is satisfied.

In the context of small business corporations, although an employment agreement may lack the statement of an express requirement to accept lodging, it is not fatal; nevertheless, it must be shown that the lodging is necessary as a practical matter to the performance of the employee's duties, such as being effectively on-call at all time to tend to the needs of their businesses.[51]

### *Meals on the Business Premises*

The U.S. Court of Appeals for the Third Circuit has held that "the furnishing of groceries to the taxpayer under the facts of this case, where such groceries were furnished for the convenience of the employer on the premises of the employer [which also happened to be where the taxpayer resided] and where such groceries were prepared into meals and consumed by the taxpayer on the employer's premises [which was also where the taxpayer resided], constitutes meals furnished within the meaning of § 119."[52]

---

[49] *See Bob Jones University v. U.S.*, 229 Ct. Cl. 340 (1982) ("there does not appear to be any substantial difference between the 'convenience of the employer' test and the 'required as a condition of his employment' test"); *Benninghoff v. C.I.R.*, 71 T.C. 216 (1978) ("The 'convenience of employer' and 'condition of employment' tests are essentially the same."), *aff'd*, 614 F.2d 398 (5th Cir. 1980).
[50] *See Adams v. U.S.*, 218 Ct. Cl. 322 (1978); TAM 9404005.
[51] *See Coyner v. Bingler*, 344 F.2d 736 (3d Cir. 1965).
[52] *Jacob v. U.S.*, 493 F.2d 1294, 1296 (3d Cir. 1974).

As the statutory text of Section 119 itself states, the tax-free nature of this benefit extends to "him, his spouse, or any of his dependents." This is the express and unambiguous text of the statute enacted into law by Congress.

***Application to Self-Employed Individuals***

The application of Section 119 to self-employed individuals—that is, the treatment of a self-employed person as an employee for such purposes—is by no means novel. Self-employed individuals are treated as employees in numerous contexts. For instance, section 401(c)(1) provides that "[t]he term "employee" includes, for any taxable year, an individual who is a self-employed individual for such taxable year." This definition, utilized in the statutory provision governing qualified pensions, employee profit-sharing agreements, and employee stock bonus plans, underscores that the treatment of self-employed persons as employees is commonplace.

The partnership context sheds further light on the issue. Prior to 1954, Social Security and Medicare taxes did not apply to self-employed individuals. This is because courts interpreting the 1939 Code viewed a partnership and its partners as one inseparable unit pursuant to the "aggregate theory." Similarly, a sole proprietorship business and the individual running it were also viewed as one inseparable legal unit; the same person. Hence, there was no self-employment tax because it was not considered legally possible for an individual to employ himself. In other words, in the context of a self-employed individual, the "aggregate theory" did not permit the IRS to view that person as both the employer and employee; it was "one inseparable legal unit."[53]

However, over time, some federal courts began to adopt the "entity theory" that viewed a partnership and a partner as two separate entities for federal income tax purposes even if there was no actual entity. As part of the 1954 overhaul of the Internal Revenue Code, as explained by the

---

[53] *Armstrong v. Phinney*, 394 F.2d 661, 663 (5th Cir. 1968).

Fifth Circuit, "Congress rejected this 'aggregate theory' in favor of the 'entity theory'"[54]—a change that, in the circuit court's view, fundamentally changed the analysis of whether a partner is an employee. .

The application of the Self-Employment Tax in the partnership context sheds further light.  The Self-Employment Tax is comprised of both the employer portion of the Federal Insurance Contributions Act (FICA) tax and the employee's portion.  The Self-Employment Tax, that is, treats a self-employed individual as both the employer and the employee.  In fact, a self-employed individual is treated so precisely as an employer that he is permitted to deduct the employer portion of the Self-Employment Tax just as company-employers are permitted to do. This, combined with the fact that the Internal Revenue Code, despite its lengthy nature, does not define "employee," and leaves its meaning to interpretation, indicates that it is reasonable to conclude that the treatment of a self-employed individual as both the employer and employee was not limited to the purposes of the Self-Employment Tax.  It is reasonable to conclude that it was intended to extend to other contexts under the Internal Revenue Code.

In *Armstrong v. Phinney*, the U.S. Court of Appeals for the Fifth Circuit explained that the appeal presented "a novel question for our determination: Under the Internal Revenue Code of 1954 is it legally possible for a partner to be an employee of his partnership for purposes of section 119 of the Code?"[55]  It answered that question in the affirmative: A partner may be an employee

---

[54] *Id.* (citing H.R.Rep. No. 1337, 83d Cong., 2d Sess. 67 (1954), U.S.Code Cong. & Admin.News 1954, pp. 4025, 4093).  In the factual context of the *Armstrong* case that dealt with a partnership, the Fifth Circuit explained that "[u]nder the entity approach, the [Section 119 arrangement] is to be treated in the same manner as though the [employee] were an outsider dealing with the [employer]."
[55] 394 F.2d 661, 662 (5th Cir. 1968).

of the partnership.  While the IRS disagrees with this holding, the *Armstrong* decision remains valid law in the Fifth Circuit.

The facts in *Armstrong* were that the "partnership provides a home at the ranch for taxpayer and his family, most of the groceries, utilities and insurance for the house, maid service and provides for the entertainment of business guests at the ranch."  The partnership, of which he was a partner, was entitled to deduct such expenditures, and those deductions therefore flowed through to the partner.  "Taxpayer did not include the value of these emoluments in his gross income for the years 1960, 1961 or 1962. The Internal Revenue Service determined that these items should have been included and therefore increased his taxable income… taxpayer brought this suit seeking to recover the paid deficiencies on the ground that he is an employee of the ranch and that, as such, he comes within the provisions of section 119 of the Internal Revenue Code of 1954 and is therefore entitled to exclude the value of the items in question from his gross income"[56]

The Fifth Circuit found that the "earlier cases, *Doak* and *Moran*… were grounded on the theory, present throughout the 1939 Code, that a partnership and its partners are one inseparable legal unit.  It noted, however, that in 1954 Congress rejected this 'aggregate theory' in favor of the 'entity theory.'"[57]

The Fifth Circuit then held that, pursuant to the Congressionally adopted Entity Theory, "it is now possible for a partner to stand in any one of a number of relationships with his partnership, including those of creditor-debtor, vendor-vendee, and employee-employer. Therefore, in this case the government is not entitled to a judgment as a matter of law."[58]

---

[56] *Id*. at 662–63.
[57] *Id*. at 663.
[58] *Id*. at 663–64.  In Footnote 9 of the *Armstrong* case, the Fifth Circuit explained that "the only case presenting the question of whether under the 1954 Code a partner can stand in an employee-employer relationship with his partnership for purposes of the section 119 exclusion is *Wilson v. United States*, Ct.Cl.1967, 376 F.2d 280, which held that such a relationship could not exist, relying on the 1939 Code cases discussed earlier in this opinion."  By

*Armstrong* has been recognized by many scholarly treatises.   In citing to *Armstrong*, Mertens Law of Federal Income Taxation, a highly regarded treatise that has been cited hundreds of times in federal court, states, "It has been held that meals and lodging provided to a 5% partner who was treated as an employee by the partnership may qualify for the [Section 119] exclusion."[60] In citing to *Armstrong*, McGaffey Legal Forms with Tax Analysis states, a self-employed "partner may be eligible under § 119 to exclude from gross income meals or lodging furnished for the convenience of the employer."[61]   Edwin T. Hood's *Federal Taxation of Close Corporations* states, "sole proprietors and partners lack employee status because a sole proprietorship or a partnership is not viewed as an entity separate and distinct from the sole proprietor or the partners, and consequently, no entity exists that employs the proprietor or partners…*But see* Armstrong v. Phinney."[62]

There is, at minimum, a reasonable basis for this legal interpretation.

---

"earlier in this opinion," the Fifth Circuit was referring to the section of the opinion where they explained that Congress adopted the "entity theory" where the business is viewed as a separate entity for tax purposes, which is the entire legal rationale for the self-employment tax and why a self-employed person can deduct the "employer" share of the Social Security and Medicare contribution.

[60] *Meals and Lodging Furnished to Employees*, 1 Mertens Law of Fed. Income Tax'n § 7:200.

[61] 4 McGaffey Leg. Fms. With Tax Analysis § 19:23

[62] *Status as Employee*, 1 Federal Taxation of Close Corporations § 2:17.

## DEPRECIATION IS NOT MANDATORY

The following is applicable to Counts 1-4, 6-7, 10-11, 13, 18-20, 22, 26-27, and 30.

There is no express provision in the Internal Revenue Code that says depreciation is mandatory.  When a large asset is purchased, such as a vehicle, it is typically done with a bank loan.  However, the practical economic effect is that the car dealership receives full payment for the vehicle from a financial institution.[63]

Section 167 of the Internal Revenue Code states that "[t]here **shall be allowed** as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including reasonable allowance for obsolescence) of property used in the trade or business or of property held for the production of income."  This section of the Code says a taxpayer shall be allowed to depreciate certain property, but nowhere in the statute is there any suggestion that the taxpayer *must* depreciate certain property.  Indeed, the dictionary definition of "allowed" is "to give an opportunity" or "to make a possibility,"[64] implying that depreciation is not mandatory.

Section 263, which is titled "Capital expenditures" and under the Internal Revenue Code, Subtitle A, Chapter 1, Subchapter B, Part IX, titled "Items Not Deductible," merely states that "[n]o deduction shall be allowed for… [a]ny amount paid out for new buildings or for permanent improvements of betterments made to increase the value of any property or estate."  This is referencing and applicable only to "new buildings" and "permanent improvements" made with the specific intent to "increase the value" of said buildings.  This provision would be inapplicable to the purchase of an existing building or permanent improvements made for a purpose other than to "increase the value."

---

[63] Even if a car dealership offers in-house financing, it is through a separate and distinct legal entity that operates as a related financial institution.

[64] Meriam Webster online.

### A Lack of Statutory Support

There is no express statutory authority for the position that depreciation is mandatory.  In 2010, the U.S. Tax Court held that if a statute's language is clear and unambiguous, it forecloses the ability of the U.S. Treasury to promulgate gap-filling regulations.[65]  As such, according to the U.S. Tax Court, regulations that go against the clear and unambiguous language in a statute are invalid as a matter of law.  Therefore, it is reasonable to conclude that even if the IRS cites to its own regulations, those regulations are arguably invalid for lacking explicit statutory support.

The lack of Congressionally enacted statutory language for this tax concept illustrates why the U.S. Supreme Court has scaled back its 1984 decision in *Chevron v. NRDC* to provide largely unfettered deference to an agency's interpretation of a statute it is tasked with enforcing.[66]  It explains why the U.S. Supreme Court in 2024 is presently considering completely abrogating the *Chevron* decision in the cases of *Loper Bright Enterprises, Inc. v. Raimondo* and, jointly, *Relentless, Inc. v. Department of Commerce*.  The U.S. Supreme Court is displaying its frustration that the body of law has become far too complex with concepts and rules being read into the statute that are not actually there.

### The Supreme Court Responds in Home Concrete

In 2012 the U.S. Supreme Court held, in *U.S. v. Home Concrete & Supply, LLC*, that a properly promulgated regulation that contradicted the plain meaning of a statutory term was invalid as a matter of law.[68]  In that case, the IRS made assessments that were outside of the generally applicable statute of limitations for tax assessments, but within the extended statute of limitations that would have been applicable, under the applicable statutory text, if the taxpayer had "omit[ed]"

---

[65] *See Intermountain v. C.I.R.*, 134 T.C. 211 (2010).
[66] *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)
[68] *See U.S. v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836 (2012).

a substantial amount from income.  Relying upon a promulgated regulation, the IRS maintained that the taxpayer's overstatement of its basis in an asset that it sold (which caused less gain to be reported on the sale of the asset) constituted an "omission" within the meaning of the regulation, which provided a more expansive scope.   The U.S. Supreme Court, however, disagreed with the IRS, and held that "omission" and "overstatement" were not only irreconcilable, but direct opposites; "omission," it advised, is something left out, whereas "overstatement" connotes something added in.  Because the regulation contradicted the plain meaning of a term in the statute, it was deemed to be invalid as a matter of law.

The U.S. Supreme Court's *Home Concrete* decision opened the door to reasonable legal questions: how many other regulations could now potentially be deemed invalid as a matter of law for going against the plain meaning of the statute?  Did the *Home Concrete* case arguably abrogate prior U.S. Supreme Court cases that had previously upheld agency interpretations that had no actual supporting statutory text?

For example, in 1970, in *Woodward v. Commissioner*, the U.S. Supreme Court, deferring to "longstanding Treasury regulations" in a pre-*Home Concrete* era, held that "[s]ince the inception of the present federal income tax in 1913, capital expenditures have not been deductible."[69]  To support that assertion, the U.S. Supreme Court cited Section "IIB of the Income Tax Act of 1913, 38 Stat. 167" in Footnote 2.  However, the Income Tax Act of 1913, Section II, Subsection B, Paragraph 2, reads as follows: "[I]n computing net income for the purpose of the normal tax, there shall be allowed as deductions… a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business … but no deduction shall be made for any amount of expense of restoring property or making good the exhaustion thereof for which

---

[69] 397 U.S. 572, 574 (1970).

an allowance is or has been made: *Provided*, That no deduction shall be allowed for any amount paid out for new buildings, permanent improvements, or betterments, made to increase the value of any property or estate."

There was no statutory text in 1913 to support the overly broad regulation that all capital expenditures are not deductible.  Instead, the 1970 U.S. Supreme Court based its reasoning on "longstanding Treasury regulations"—an approach that has since been discarded, resulting in substantial uncertainty with respect to the volumes of tax regulations currently on the books.  Indeed, this type of wholesale deference to agency regulations is precisely what the U.S. Supreme Court eliminated 42 years later in the *Home Concrete* case.

### The Full Impact of the Home Concrete Case

What does it mean if *Home Concrete* abrogated the *Woodward* decision and its progeny?  It would mean the Treasury regulations interpreting Section 167 and 263 are invalid as a matter of law.

By its express terms, Section 263's definition of "capital expenditures" is expressly limited to real estate.  Not even the broadest interpretation of any statutory terms can support extending it to other items, such as a vehicle or computer.

It is reasonable to conclude that Section 167 is permissive by stating there "shall be allowed" a depreciation deduction, which arguably permits taxpayers to determine whether to spread a deduction over several years or claim it in the year acquired.

By its express terms, Section 168 merely provides the rules that apply to "the depreciation deduction provided by Section 167(a) for any tangible property."[70]

---

[70] Section 179(a) states that a "taxpayer *may elect* to treat the cost of any section 179 property as an expense which is not chargeable to capital account."  It is reasonable to  conclude that this sentence implies that a taxpayer who is otherwise obligated to maintain a "capital account" can elect to not charge a cost to said account and instead fully deduct the expense.

By its express terms, Section 162 states there "shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."  It is ordinary and necessary to incur expenses to acquire computers and printers.  It is ordinary and necessary to have a business vehicle.

There is, at minimum, a reasonable basis for this legal position.

## COMMUTING

The following is applicable to Counts 2, 6-7, 9-10, 12-13, 15, 17-27, and 32.

Section 162(a)(2) clearly and unambiguously states, "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including… traveling expenses… while away from home in the pursuit of a trade." When a person leaves their home in the morning to commute to work, they are "away from home in the pursuit of a trade."

Section 262 states that "no deduction shall be allowed for personal… expenses." When a person commutes to work, that is not an expense that would have been incurred notwithstanding one's employment since there would be no need to drive to a location you're not employed at or required to be at.

Nevertheless, in the U.S. Supreme Court case of *Commissioner v. Flowers* in 1946, the U.S. Supreme Court held that the statute was mandatorily required to be "read in light of the interpretation give it by" Treasury regulations that are "deemed to possess implied legislative approval and to have the effect of law."[71] This degree of wholesale deference to a regulation would not be provided by the U.S. Supreme Court today. In fact, in the 2012 U.S. Supreme Court case of *Home Concrete*, a regulation properly promulgated in accordance with the notice and public comment requirements of the Administrative Procedures Act was held invalid as a matter of law because the regulation conflicted with the plain meaning of a statutory term.

In the case of commuting, it is reasonable to conclude that these longstanding Treasury regulations are in conflict with the plain meaning of the statute. Moreover, it is reasonable to conclude that the *Home Concrete* case effectively abrogated all prior cases that relied upon this

---

[71] *C.I.R. v. Flowers*, 326 U.S. 465, 469 (1946).

degree of wholesale deference to agency regulations, including the *Flowers* case on commuting, which is supported by the fact that the U.S. Supreme Court is again considering severely limiting or possibly even abrogating the doctrine of *Chevron* judicial deference to agency regulations in the pending case of *Relentless, Inc. v. Department of Commerce*.  The *Home Concrete* case coupled with the currently pending *Relentless* case illustrate the federal judiciary's growing frustration with regulations that unreasonably interpret statutes in a manner inconsistent with the plain language of the statutory text enacted into law by Congress.

No Court has held that *Home Concrete* did not abrogate *Flowers*; it remains an open issue. As a general rule, where the law is ambiguous and case authority is sparse (or non-existent as in this case), good faith will be presumed with regard to interpretations.[72]

Moreover, in 1984 (after the 1946 *Flowers* decision), Congress enacted Section 280F(d)(6)(B), the plain statutory text of which expressly states that "qualified business use means any use in a trade or business of the taxpayer."  Against the fact that under the tax law an employee is considered to be engaged in the trade or business of performing services as an employee,[73] the potential implications of Section 280F(d)(6)(B) become clear: The taxpayer's use of a vehicle in carrying on their trade or business satisfies the "any use" standard (that was enacted post *Flowers*) and, therefore, gives rise to deductibility.  Whether the position is ultimately correct or incorrect is not the issue—the question is whether there is a reasonable basis in the law, as that standard is interpreted.  And although that standard remains vague, authorities have tended to quantify such a standard as generally ranging from 10 to 30 percent of being upheld: "'Reasonable basis' has been

---

[72] *See Rueckert v. Gore*, 587 F. Supp. 1238 (N.D. Ill. 1984), *aff'd sub nom. Rueckert v. IRS*, 775 F.2d 208 (7th Cir. 1985).
[73] E.g., Treas. Reg. § 1.199A-5(a) ("the trade or business of performing services as an employee").

viewed as having a 10-20% likelihood of success if challenged."[74] "'Reasonable basis' is a lower level of authority than the "realistic possibility" standard but is still higher than a frivolous position."[75]  Note further that the Congressional Joint Committee on Taxation, in summarizing the law in this context, has previously stated that: "If a taxpayer takes a position contrary to a rule or regulation, the taxpayer is not treated as disregarding the rule or regulation if the position has a realistic possibility of being sustained on its merits."[76]

Lastly, and for the foregoing reasons, there is a reasonable basis for the alternative position that commuting qualifies as a Working Condition Fringe Benefit under Section 132(a)(3), (d).[77]

---

[74] Robert G. Woodward, Tax Opinions, 2010 ABA Tax-CLE 0923078 ¶ III.B (Sept. 2010), Westlaw, 2010 WL 4607769.

[75] AICPA Finalizes New Standards on Tax Positions, The Tax Advisor (citing AICPA Statements on Standards for Tax Services, Section 1.1, paragraph 5(b), (c).

[76] STUDY OF PRESENT-LAW PENALTY AND INTEREST PROVISIONS AS REQUIRED BY SECTION 3801 OF THE INTERNAL REVENUE SERVICE RESTRUCTURING AND REFORM ACT OF 1998 (INCLUDING PROVISIONS RELATING TO CORPORATE TAX SHELTERS), Vol. 1, Joint Committee on Taxation, p. 162 (July 22, 1999).

[77] *See* Treas. Reg. § 1.132-5(a)(1); *also see* Treas. Reg. § 1.132-5(b)(1)(i) ("In general, with respect to an employer-provided vehicle, the amount excludable as a working condition fringe is the amount that would be allowable as a deduction under section 162 or 167 if the employee paid for the availability of the vehicle.").

## <u>CHARITABLE MARKETING</u>

The following is applicable to Count 11.

Section 170(c) defines a charitable contribution as a "gift."  A gift has been defined by the U.S. Supreme Court as stemming from "detached and disinterested generosity."[78]  The U.S. Supreme Court has also explained that "if the payment proceeds primarily from… the incentive of anticipated benefit of an economic nature, it is not a gift."[79]

If a taxpayer primarily anticipated a marketing, promotional, or business benefit from the contribution, there is reasonable basis to reclassify the charitable contribution as an advertising expense.  Indeed, in Revenue Ruling 67-246, "where consideration in the form of admissions or other privileges or benefits is received in connection with payments by [the taxpayer] . . . the presumption is that the payments are not gifts."  The following description is from The Tax Advisor, an AICPA publication, regarding the common scenario involving the recharacterization of a charitable contribution as an advertising expense:

> ***Advertising and marketing expense***: Under certain conditions, a business may deduct what would appear to be a charitable contribution as an advertising and marketing expense. For the expense to be classified as an advertising expense, the business needs to substantiate that it received something in return (a direct benefit), so the cost can be classified as an "ordinary and necessary business expense." If the business just has its name and logo published, the IRS does not consider that to be a "substantial return benefit" and does not consider it to be a deductible advertising expense. Instead, it would be more beneficial for the business to follow the guidance provided under IRS Publication 598, *Tax on Unrelated Business Income of Exempt Organizations*, of what constitutes an advertising expense, which includes (1) messages containing qualitative or comparative language, price information, or other indications of savings or value; (2) an endorsement; and (3) inducements to purchase, sell, or use the products or services. When these attributes are in place, the business would likely be able to deduct the fair market value (FMV) of its total contribution as a marketing expense.[80]

---

[78] *C.I.R. v. Lo Bue*, 351 U.S. 243, 246 (1956).
[79] *C.I.R., v. Duberstein*, 363 U.S. 278, 285 (1960).
[80] *Recommendations for Charitable Contributions Made by Businesses*, The Tax Advisor, AICPA, Oct. 1, 2017 (available at https://www.thetaxadviser.com/issues/2017/oct/charitable-contributions-businesses.html).

## DEDUCTING CHILDCARE

The following is applicable to Counts 2, 12-13, and 17.

In 1937, Henry and Lillie Smith were husband and wife.  They were both employed on a full-time basis; very uncommon in those times.  They engaged the services of nursemaids to care for their children and those services were performed outside the home; the modern equivalent of an infant daycare facility.

According to Section 24(a)(1) of the Revenue Act of 1936, the law in effect at the time, Congress declared that in "computing net income, no deduction shall in any case be allowed in respect of personal , living, or family expenses."[81]

The Commissioner of Internal Revenue initiated an examination of their federal income tax return.  Upon examination, the Commissioner disallowed the deduction for child care expenses and issued a deficiency notice.  Mr. & Mrs. Smith petitioned for judicial review before the U.S. Board of Tax Appeals in the case we now know as *Smith v. Commission*.[82]  Notably, the Board of Tax Appeals was a predecessor to the U.S. Tax Court, and its decisions are subject to contrary decisions in the courts of appeal and, of course, the U.S. Supreme Court, thus limiting its precedential role.

### *Smith v. Commissioner*

Judge Clarence Opper presided over the case.  In his ruling, he called "the working wife a new phenomenon."  He explained that he was not prepared to declare that the care of children is anything "other than a personal concern" since the wife's services as "custodian of the home and

---

[81] The statutory successor to this provision is Section 262(a) of the Code: "Except as otherwise expressly provided in this chapter [Sections 1 through 1400z-2], no deduction shall be allowed for personal, living, or family expenses." Unlike the former provision, the modern provision's opening preposition phrase leaves open the possibility of other statutory exceptions that were not previously taken into consideration.  Therefore, Section 262 is now subordinate to other statutory sections that may permit the deductibility of "personal, living, or family expenses."

[82] *Smith v. Commission*, 40 B.T.A. 1038 (1939), *aff'd*, 113 F.2d 114 (2d Cir. 1940).

protector of its children are ordinarily rendered without monetary compensation."[83]  Judge Opper elaborated and explained that, in this case, "the wife has chosen to employ others to discharge *her* domestic function."  According to Judge Opper, because he considered a woman's natural function to be a homemaker caring for the children, it was inherently a personal expenditure to hire others to perform her function and, therefore, not deductible on that basis.

It is reasonable to conclude that Judge Opper's improper reasoning in *Smith v. Commissioner* renders this case no longer good law.  Indeed, at least one federal court already found that the prevailing interpretation of Section 262 "might impose a particular burden on working women"[84] calling into question the *Smith* decision's continued validity.  Nevertheless, it has been relied upon and cited to in the federal judiciary 26 times[85] as recently as *2011* in *Kuntz v. Commissioner* under the doctrine of *stare decisis* without revisiting the reasoning.[86]

It is reasonable to conclude that *Smith v. Commissioner* is not entitled to *stare decisis* in light of the discriminatory basis upon which the legal reasoning rested.

---

[83]Judge Opper cited *Burkhart v. Commissioner*, a case in which compensation rendered to a wife for domestic services was judicially declared to be "not income" for federal income tax purposes.  11 B.T.A. 275 (1928).  Again, for clarification, that case denied a deduction to a husband for child care by declaring that his payment to his wife was "not income" to her.

[84] *Nammack v. C.I.R.*, 56 T.C. 1379, 1384 (1971), *aff'd sub nom.*, 459 F.2d 1045 (2d Cir. 1972).

[85] *Hubbart v. C.I.R.*, 4 T.C. 121 (1944); *O'Connor v. C.I.R.*, 6 T.C. 323 (1946); *Seese v. C.I.R.*, 7 T.C. 925 (1946); *Wendell v. C.I.R.*, 12 T.C. 161 (1949); *Ochs v. C.I.R.*, 195 F.2d 692 (2d Cir. 1952); *Jackson v. C.I.R.*, 13 T.C.M. (CCH) 1175 (T.C. 1954); *C.I.R. v. Moran*, 236 F.2d 595 (8th Cir. 1956); *Ingalls v. Patterson*, 158 F. Supp. 627 (N.D. Ala. 1958); *King v. C.I.R.*, 19 T.C.M. (CCH) 1519 (T.C. 1960); *Levy v. C.I.R.*, 20 T.C.M. (CCH) 1534 (T.C. 1961); *Kroll v. C.I.R.*, 49 T.C. 557 (1968); *Carroll v. C.I.R.*, 51 T.C. 213 (1968), *aff'd sub nom. Carroll v. C.I.R.*, 418 F.2d 91 (7th Cir. 1969); *Drake v. C.I.R.*, 52 T.C. 842 (1969); *International Artists Ltd. v. C.I.R.*, 55 T.C. 94 (1970); *Fred W. Amend Co. v. C.I.R.*, 55 T.C. 320 (1970), *aff'd sub nom.* 454 F.2d 399 (7th Cir. 1971); *Simenstad v. U.S.*, 325 F. Supp. 1249 (N.D. Cal. 1971); *Nammack v. C.I.R.*, 56 T.C. 1379 (1971), *aff'd sub nom.*, 459 F.2d 1045 (2d Cir. 1972); *Smail v. C.I.R.*, 60 T.C. 719 (1973), *aff'd sub nom.*, No. 73-1960, 1974 WL 2793 (10th Cir. Oct. 9, 1974); *Hanagan v. C.I.R.*, 33 T.C.M. (CCH) 642 (T.C. 1974); *O'Reilly v. C.I.R.*, 33 T.C.M. (CCH) 1153 (T.C. 1974); *Baldwin v. C.I.R.*, 36 T.C.M. (CCH) 995 (T.C. 1977); *Shonkwiler v. C.I.R.*, 37 T.C.M. (CCH) 546 (T.C. 1978); *Green v. C.I.R.*, 74 T.C. 1229 (1980); *Briggs v. C.I.R.*, 75 T.C. 465 (1980), *aff'd*, 694 F.2d 614 (9th Cir. 1982); *Calarco v. C.I.R.*, No. 1530-03S, 2004 WL 1616387 (T.C. July 20, 2004); *Kuntz v. C.I.R.*, 101 T.C.M. (CCH) 1239 (T.C. 2011).

[86] T.C. Memo. 2011-52 (T.C. 2011).  In this case, a husband had a wife with Alzheimer's disease.  In order to pursue gainful employment, he had to hire a caregiver.  The U.S. Tax Court denied the deduction.  The taxpayer chose not to appeal because the expense survived as a deductible medical expense.  The court, in a footnote, also pointed out that the taxpayers could have claimed a credit under Section 21, which evidences that the taxpayers were simply not knowledgeable of the law.

***Current Law***

Under the modern Section 262, Congress declared that "Except as otherwise expressly provided in this chapter [Sections 1 through 1400z-2], no deduction shall be allowed for personal, living, or family expenses."  Unlike the former provision, the modern provision leaves open the possibility of exceptions that may exist in other Code sections.   Section 262 is, therefore, subordinate to other sections that may permit the deductibility of "personal, living, or family expenses," including Section 162.  Nevertheless, focusing squarely on Section 262, in order to determine whether an expense is personal, living, or family expense, one must review all applicable case law.  There are surprisingly only three on-point cases.

In the 1956 case of *Commissioner v. Moran*, the U.S. Court of Appeals for the Eighth Circuit held that a personal expense exists when it is a type of service that is generally incurred by all people.[88]  This seems odd since the precise statutory text of Section 162 requires a business expense to be "ordinary."  However, the *Moran* case involved tax years 1949 and 1950.  At that time, the modern Section 262 was codified at Section 24 that simply held you could not deduct "[p]ersonal, living, or family expenses, except extraordinary medical expenses" even if it *would* otherwise qualify under Section 162 as "ordinary and necessary."  However, the 1954 overhaul of the Code modified this by creating a general exception in the proposition: "***Except as otherwise expressly provided in this chapter***, no deduction shall be allowed for personal, living, or family expenses."  The precatory language could certainly be read to overturn or result in a different outcome than *Moran*, as it could be read to have effectively superseded such a reading by statute by expressly making Section 162 a potential exception.

---

[88] *C.I.R. v. Moran*, 236 F.2d 595 (8th Cir. 1956).

As further evidence of the accuracy of this analysis, the 1956 case of *Commissioner v. Doak* before the U.S. Court of Appeals for the Fourth Circuit was tasked with analyzing an issue from tax year 1950, which included the old Section 24 predecessor to Section 262.[89]  The Fourth Circuit in *Doak* explained that Section 24 was "a broad provision enacted by Congress to close the door to such items which might be, in certain situations, otherwise deductible."[90]  After 1954, Section 262 was modified to incorporate Section 162 as an exception, so it is reasonable to conclude that Doak is also no longer good law based on changes to the statutory scheme.

As Samantha Trussell of George Mason University's Antonin Scalia Law School explained, "The working wife was a new phenomenon in 1939 with most families consisting of the single working father.  However, the same *cannot* be said today, as most families consist of dual-earner couples due to necessity. It has been eighty years since *Smith* was decided and society and families have changed drastically since then. Therefore, this case should no longer control what is an ordinary and necessary business expense."[91]

Indeed, as Trussel correctly notes, the *Smith* court "held that the working wife was not an ordinary phenomenon, but this is no longer true today. In 2013, 69.9% of women were working mothers with children under the age of eighteen. The working mother is an "ordinary" phenomenon in today's society and childcare is "necessary" if both parents work."[92]  In other words, the actual text of the current provision—particularly when combined with monumental shifts in social behavior that have resulted in the "working mother" no longer being a "new phenomenon" but, instead, the "new norm" (and that by a super majority)—supports a reading that such expenditures are, in fact, deductible.  Indeed, as Justice Oliver Wendell Holmes poignantly noted, "A word is

---

[89] *C.I.R. v. Doak*, 234 F.2d 704 (4th Cir. 1956).
[90] *Id.* at 707.
[91] Samantha Trussell, *Stuck in the Fifties*, 15 J.L. Econ. & Pol'y 257, 276 (2020).
[92] *Id.* at 277.

not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and time in which it is used."

There is, at minimum, reasonable basis for this legal interpretation.

**LOAN-MANDATED HOMEOWNERS INSURANCE DEDUCTIBLE AS**

**SUBSTITUTED MORTGAGE INSURANCE PER SECTION 163(H)(3)(E)**

The following is applicable to Counts 11, 21, and 25.

Section 163(h)(3)(E) states, "Premiums paid or accrued for qualified mortgage insurance by a taxpayer during the taxable year in connection with acquisition indebtedness with respect to a qualified residence of the taxpayer shall be treated for purposes of this section as interest which is qualified residence interest."

Section 163(h)(4)(E)(ii) defines "qualified mortgage insurance" to be "private mortgage insurance (as defined by section 2 of the Homeowners Protection Act of 1998 (12 U.S.C. 4901), as in effect on the date of the enactment of this subparagraph)."

12 U.S.C. § 4901(13) defines "private mortgage insurance" as "mortgage insurance other than mortgage insurance made available under the National Housing Act, Title 38, or Title V of the Housing Act of 1949."

Without a clear statutory definition, the plain meaning of the terms applies. Mortgage insurance is intended to cover a situation where something occurs that could result in nonpayment of the mortgage, such as a natural disaster that completely destroys the home. And the primary reason that financial institutions mandate homeowner's insurance is to secure their interest, which is repayment of the mortgage. In effect, by contractually mandating homeowners' insurance in the mortgage loan, they are insuring the mortgage. In other words, lender-mandated homeowners' insurance is a surrogate for mortgage insurance.

Indeed, this conclusion is a logical interpretation. The rationale for affording mortgage insurance the characterization of "interest" (which is deductible) is that the mortgage insurance is a cost to the homeowner of purchasing and financing the house—that is, it is a component of the

lender-mandated cost to borrow funds to purchase the house.  Much the same, lender-mandated homeowner's insurance is a lender-mandated cost to borrow funds to purchase and finance the house.  This parallel rationale underscores the substance of the insurance, which in tax law governs treatment rather than the "form."

Therefore, it is reasonable to conclude that loan-mandated homeowners' insurance is *de facto* Substituted Mortgage Insurance.  The return inadvertently referred to this as Deductible Investment Interest.

There is, at minimum, reasonable basis for this legal position.