**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL ACTION NO.** |
| | ) | |
| **Plaintiff,** | ) | **4:24-CR-00001-Y-1** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JOHN ANTHONY CASTRO,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ) | | |

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant John Anthony Castro submits the following proposed findings of fact and conclusions of law for the Court's consideration in advance of the bench trial set for May 20, 2024.

## Proposed Findings of Fact

The defense contends that this case necessitates no fact finding apart from the ultimate issue of guilt or innocence. Nevertheless, the defense provides the following detailed information in relation to each count to assist the Court in its evaluation of the evidence.

For context, the government challenges multiple deductions contained in the 33 tax returns underlying the counts set forth in the indictment. The defense contends that some such deductions were based on Mr. Castro's good-faith belief that the reporting position at issue satisfied the "reasonable basis" tax-reporting standard, allowing for the filing of a tax return with the positions at issue and negating willfulness. Some deductions, on the other hand, arose from software errors, data entry errors, and other preparer errors.

**Count Matrix**

The foregoing discussed tax arguments on which Mr. Castro relied apply to the tax returns that relate to the counts of the indictment according to the following matrix.

| Count | Name | Int/DE/Rev | Sec. 62 | Sec. 119 | Impair | Deprec. | Commut. | Chr Mtg | Childcare | 163(h)(3)(E) | Sotware Error |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Memo § | | II(B)(11) | II(B)(5) | II(B)(13) | II(B)(2)(b) | II(B)(2)(a) | II(B)(7) | II(B)(6) | II(B)(8) | |
| 3 | Boggs 17 | JSM/ADL | ✓ | | | ✓ | | | | | |
| 4 | Boggs 18 | TMH/ADL/TH | | ✓ | | ✓ | | | | | |
| 5 | Boggs 19 | VTI/DG/TH | | ✓ | | | | | | | ✓ |
| 2 | **Clayton 17** | JSM/ADL | ✓ | | | ✓ | ✓ | | ✓ | | |
| 1 | **Jackson 17** | IG/ADL | ✓ | | | ✓ | | | | | |
| 9 | Kara 17 | IG/ADL | ✓ | | ✓ | | ✓ | | | | ✓ |
| 10 | Kara 18 | IG/ADL/KH/TH | ✓ | ✓ | | ✓ | ✓ | | | | |
| 11 | Kara 19 | VTI/KH/DG/TH | ✓ | ✓ | | ✓ | | ✓ | | ✓ | |
| 28 | **Lampkin 17** | JSM/ADL | ✓ | | | | | | | | ✓ |
| 29 | **Lampkin 18** | TMH | *Error* | *Error* | *Error* | *Error* | *Error* | *Error* | *Error* | *Error* | *Error* |
| 21 | **Meyer 17** | JSM/ADL | ✓ | | | | ✓ | | | ✓ | |
| 27 | Natt 17 | IG/ADL | ✓ | | ✓ | ✓ | ✓ | | | | |
| 26 | **Putica 19** | KH/ADG/TH | ✓ | ✓ | | ✓ | ✓ | | | | ✓ |
| 25 | Quigley 17 | JSM/ADL | ✓ | | | | ✓ | | | ✓ | |
| 12 | **Ragsdale 17** | IG/ADL | ✓ | | ✓ | | ✓ | | ✓ | | |
| 13 | **Ragsdale 18** | IG/ADL | ✓ | | ✓ | ✓ | ✓ | | ✓ | | |
| 14 | Ragsdale 19 | KJB/ADG/TH | ✓ | | ✓ | | | | | | ✓ |
| 6 | **Rivera 17** | IG/ADL | ✓ | | ✓ | ✓ | ✓ | | | | |
| 7 | **Rivera 18** | IG/ADL/KH | ✓ | | | ✓ | ✓ | | | | |
| 8 | **Rivera 19** | KJB/DG/TH | | ✓ | ✓ | | | | | | |
| 15 | Sola 17 | JSM/ADL | ✓ | | | | ✓ | | | | |
| 16 | Sola 18 | IG/ADL/KH | ✓ | | | | | | | | |
| 17 | Sola 19 | KJB/IG/KH | ✓ | ✓ | | | ✓ | | ✓ | | |
| 30 | TozRam 19 | KJB/ADG/TH | ✓ | ✓ | | ✓ | | | | | |
| 31 | Turatti 17 | IG/ADL/KH/TH | | | | ✓ | | ✓ | | | |
| 32 | Turatti 18 | JSM/ADL | | ✓ | ✓ | | | | | | |
| 33 | Turatti 19 | KJB/DG/KH/TH | | ✓ | | | | | | | |
| 22 | Wells 17 | JSM/ADL | ✓ | | ✓ | ✓ | ✓ | | | | |
| 23 | Wells 18 | IG/ADL/KH | ✓ | | | | ✓ | | | | |
| 24 | Wells 19 | KJB/DG/TH | ✓ | | | ✓ | ✓ | | | | |
| 18 | Zilinski 17 | JSM/ADL | ✓ | | ✓ | ✓ | ✓ | | | | |
| 19 | Zilinski 18 | IG/ADL/KK | ✓ | | | ✓ | ✓ | | | | |
| 20 | Zilinski 19 | KJB/KH | ✓ | | | ✓ | ✓ | | | | |

# Analysis of Returns Per Taxpayer

To expedite the trial process, and to clarify how Mr. Castro's tax-reporting positions applied to each return reference in the indictment, the following information is provided for the benefit of the Court and the parties. The taxpayers are listed in alphabetical order, and when they have multiple returns, the returns are discussed chronologically.

## Boggs, James:

*Tax Year 2017*

The data was acquired over the phone by Castro employee, Joshua Scott Milam, J.D., LL.M., on Wednesday, February 28, 2018, at 5:30pm CT using the 2017 Tax Interview Packet.  Abraham DeLuna entered the data for the return on March 2, 2018, at 11:26am for 37 minutes.  A proposal was sent to the taxpayer via email on March 5, 2018, at 2:30 pm CT.  The proposal was approved by Mr. Boggs via email on March 5, 2018, at 3:27 pm CT.  The tax return was filed on March 7, 2018.  Mr. Boggs was provided a copy of the tax return on May 17, 2019.  The total fee was $4,499.  Of that total, $2,504 was for Section 119, $1,560 for Unreimbursed Employee Expenses, and $435 for Work-Connected Temporary Impairment Prevention Expenses.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A | Other Expenses | $13,950 of $14,153 | Kia Sorento[1] |
| Schedule A | Other Expenses | $203 of $14,153 | Continuing Education = $108<br><br>Pharmacy Board = $40<br><br>Department of Health Licensing = $55 |
| Schedule A | Other Miscellaneous Deductions | $9,015 | Health Premiums = $8,166 [2]<br><br>Deductibles & Copays = $405<br><br>No Detail = $231 |

---

[1] On the Schedule A, the Kia Sorento Vehicle was entered in the asset detail of the firm's tax software as "Asset 1." In the Form 2106 area of the tax software interface, it was also erroneously listed in the detail as "Asset 1," resulting in the Kia Sorento's depreciation mistakenly being treated as 100% business use rather than 52%, which was the business-use percentage that firm employees entered into the tax software's asset detail.

[2] This expense was moved to be reported on Schedule C but was not deleted from Schedule A in error.

| | | | No detail = $213 |
|---|---|---|---|
| Schedule A | Unreimbursed Employee Expenses[3] | $2,008 of $8,315 | Work Tools = $1,454 <br><br> Work Clothing = $277. Likely for special non-slip medical shoes.[4] |
| Schedule A | Unreimbursed Employee Expenses | $6,307 of $8,315 | Parking Fees and Tolls = $1,855 <br><br> Gas & Oil = $2,028 <br><br> Insurance = $4,332 |
| Schedule C | Depreciation | $6,524 | Toyota Tundra = $6,524[5] |
| Schedule C | Employee Benefits | $8,166 | Health Premiums = $8,166[6] |
| Schedule C | Utilities | $7,598 | Phone = $937 <br><br> RingCentral Fax = $336 <br><br> Cell Phone = $2,087 <br><br> AT&T Wifi = $684 <br><br> Orange County = $841 <br><br> Duke = $2,713[7] |

---

.

[4] Although initially reported as "Work Tools," the item was correctly moved it to the "Uniforms and Protective Clothing" section but was mistakenly not removed from the "Work Tools" item, unintentionally resulting in an erroneous duplication of the deduction.

[5] Unknown to Mr. Castro at the time, the asset numbers in the firm's tax software for this item were different, resulting in the software not applying the proper limit.

[6] This expense was originally on Schedule A, but was moved to be reported on Schedule C because the taxpayer was self-employed. Staff erroneously failed to delete the item from Schedule A.

[7] *See* Section 119 Position (which will be briefed separately in Defendant's Trial Memorandum)

*Tax Year 2018*

The data was acquired over the phone by employee Tiffany Michelle Hunt, J.D., LL.M., on April 10, 2019, at 5:30 pm using the 2018 Tax Interview Packet.  Abraham DeLuna entered the data for this return on April 10, 2019, at 6:02 pm CT for 23 minutes.  Tiffany Michelle Hunt, J.D., LL.M., reviewed the return on Sunday, April 14, 2019, at 12:08 am.  Because Hunt conducted the interview, it likely did not require a substantive review.  The proposal was sent to the taxpayer via email on April 14, 2019, at 6:33pm CT.  Mr. Boggs approved the proposal via email on April 14, 2019, at 6:56 pm CT.  The tax return was filed on April 16, 2019.  The fees were settled on May 8, 2019.  Mr. Boggs was provided a copy on May 17, 2019.  The total fee was $2,999.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule C | Depreciation | $30,711 | "Toyota Tundra, Section 132" = $9,787<br><br>"Kia Sorento, IRC 132" = $20,924 [8] |
| Schedule C | Employee Benefits Program | $8,622 | "Section 119, Interest" = $4,889<br><br>"Health" = $203<br><br>"Section 119, Utilities" = $813<br><br>"Section 119 = Energy" = $2,717 |
| Schedule C | Office Expenses | $7,885 | UPS = 51 [9]<br><br>USPS = 121 [10]<br><br>Adobe = 156 [11]<br><br>Amazon = $114 [12] |

---

[8] The taxpayer indicated this vehicle was placed into service in the business, so it was manually deleted from Schedule A and placed under Schedule C.  However, when the vehicle was moved to Schedule C, Abraham DeLuna, not being a tax professional, did not account for the change in the Adjusted Basis, which should have taken into account the $13,950 depreciated in the prior year.  This was a user error. Nevertheless, once on Schedule C, the firm elected to expense the vehicles under the *Home Concrete* legal theory that makes depreciation optional.  Moreover, as listed on the return itself, the vehicle was also claimed pursuant to 26 U.S.C. § 132(d); hence, the reference to "Section 132" on the tax return.
[9] This amount was specifically listed on a taxpayer-provided spreadsheet.
[10] Listed on taxpayer-provided spreadsheet.
[11] Listed on taxpayer-provided spreadsheet.
[12] Listed on taxpayer-provided spreadsheet.

| | | | |
|---|---|---|---|
| | | | Business Phone = $1,134 [13] |
| | | | Ring Central Fax = $336 [14] |
| | | | Constant Contact = $240 [15] |
| | | | Fed Ex = $267 [16] |
| | | | Eset = $114 [17] |
| | | | Office Max = $56 [18] |
| | | | Chase Service Fee = $300 [19] |
| | | | Domain Name = $20 [20] |
| | | | Online Brochure Rachk = $49 [21] |
| | | | Internet for Work = $789 [22] |
| | | | Phone Usage = $2,434 [23] |
| | | | Work Computer = $1,705 [24] |

---

[13] Listed on taxpayer-provided spreadsheet.
[14] Listed on taxpayer-provided spreadsheet.
[15] Listed on taxpayer-provided spreadsheet.
[16] Listed on taxpayer-provided spreadsheet.
[17] Listed on taxpayer-provided spreadsheet.
[18] Listed on taxpayer-provided spreadsheet.
[19] Listed on taxpayer-provided spreadsheet.
[20] Listed on taxpayer-provided spreadsheet.
[21] Listed on taxpayer-provided spreadsheet.
[22] Listed on taxpayer-provided spreadsheet.
[23] Listed on taxpayer-provided spreadsheet.
[24] Listed on taxpayer-provided spreadsheet.

| Schedule C | Taxes and Licenses | $5,914 | Real Estate [Taxes] = $5,914 |

**Tax Year 2019**

The data was acquired via uploaded documents and the 2019 Virtual Tax Interview on March 16, 2020, at 5:08 pm. David Garza entered the data for this return on March 17, 2020, at 5:40 pm CT for 41 minutes. Tiffany Michelle Hunt, J.D., LL.M., reviewed the return on March 27, 2020, at 5:24am for 54 minutes, and again at 8:07am CT for 1 minute. The proposal was sent via email on April 14, 2020. The client approved via email on April 14, 2020. The tax return was filed on March 31, 2020. The fees were paid on June 3, 2020. The client was provided a copy on June 5, 2020. The total fee was $999.

| Location | Description | Amount | Explanation |
|----------|-------------|--------|-------------|
| Schedule C1 | Car and Truck | $4,416 | Gasoline = $520<br><br>Oil Changes = $144<br><br>Parking Fees = $720<br><br>Conference Travel = $763 [25]<br><br>Auto Insurance = $2,234<br><br>Annual Registration = $35 |
| Schedule C1 | Employee Benefits[26] | $8,098 | Rent Payment = $1,689<br><br>HOA = $1,125<br><br>Home Owners Insurance = $1,795<br><br>Utilities = $928<br><br>Duke Energy = $3,371 |

---

[25] Listed in taxpayer-provided spreadsheet.
[26] *See* Sec. 119

| Schedule C1 | Interest | $1,520 | Mortgage Interest = $1,520 [27] |
|---|---|---|---|
| Schedule C1 | Office Expenses | $8,812 | UPS = $93 [28] |
| | | | USPS = $167 [29] |
| | | | FedEx = $76 [30] |
| | | | Adobe = $156 [31] |
| | | | Amazon = $114 [32] |
| | | | Ring Central Fax = $336 [33] |
| | | | Chase Service Fee = $180 [34] |
| | | | Domain Name = $20 [35] |
| | | | Online Brochure Rachk = $49 [36] |
| | | | Internet for Work = $810 [37] |
| | | | Home Office Expenses = $4,299 [38] |
| | | | Cell Phone = $540 [39] |
| | | | GoDaddy = $27 [40] |

---

[27] *Id.* This represents interest on employer-provided lodging.
[28] Taxpayer-provided spreadsheet.
[29] Taxpayer-provided spreadsheet.
[30] Taxpayer-provided spreadsheet.
[31] Taxpayer-provided spreadsheet.
[32] Taxpayer-provided spreadsheet.
[33] Taxpayer-provided spreadsheet.
[34] Taxpayer-provided spreadsheet.
[35] Taxpayer-provided spreadsheet.
[36] Taxpayer-provided spreadsheet.
[37] Taxpayer-provided spreadsheet.
[38] This was inadvertently listed in the wrong section of the return, but was a taxpayer-provided figure from the taxpayer-provided spreadsheet. *See* Sec. 119.
[39] Taxpayer provided spreadsheet states $2,642. A lesser amount is actually reported.
[40] Taxpayer-provided spreadsheet.

| | | | |
|---|---|---|---|
| | | | Biz [Business] Phone = $769 [41]<br><br>Office Max = $127 [42]<br><br>VistaPrint = $241 [43]<br><br>WiFi = $810 [44] |
| Schedule C1 | Taxes and Licenses | $4,008 | Real Estate Taxes from Form 1098 = $3,008 [45]<br><br>Franchise Fee = $1,000 [46] |
| Schedule C2 | Car and Truck | $4,089 | Gas = $3120<br><br>Oil = $144<br><br>Annual Registration = $35<br><br>Parking = $720<br><br>Vehicle Registration = $70 |
| Schedule C2 | Employee Benefits | $6,048 | "12 DD #1" = $3,456<br><br>"12 DD #2" = $2,592<br><br>[47] |
| Schedule C2 | Office Expenses | $9,801 | Google Suit[e] = $82 [48] |

---

[41] Taxpayer-provided spreadsheet.
[42] Taxpayer-provided spreadsheet.
[43] Taxpayer-provided spreadsheet.
[44] This item appears to be a staff error; an erroneous duplicate of the internet cost.
[45] *See* Sec. 119.
[46] Taxpayer-provided spreadsheet.
[47] This item appears to be an erroneous staff effort.
[48] Taxpayer-provided spreadsheet.

| | | | |
|---|---|---|---|
| | | | Website = $595 [49] |
| | | | Training & Education = $1,273 [50] |
| | | | UPS = $101 [51] |
| | | | VistaPrint = $193 [52] |
| | | | Prime Credit Solutions = $950 [53] |
| | | | RE Classes = $173 [54] |
| | | | Office Max = $28 [55] |
| | | | Amazon = $30 [56] |
| | | | BagMasters = $254 [57] |
| | | | Uline = $144 [58] |
| | | | National Pen = $113 [59] |
| | | | iPad Air = $766 [60] |
| | | | iPad Pro = $1,377 [61] |
| | | | Quill = $114 [62] |
| | | | Staples = $168 [63] |

---

[49] Taxpayer-provided spreadsheet.
[50] Taxpayer-provided spreadsheet.
[51] Taxpayer-provided spreadsheet.
[52] Taxpayer-provided spreadsheet.
[53] Taxpayer-provided spreadsheet.
[54] Taxpayer-provided spreadsheet.
[55] Taxpayer-provided spreadsheet.
[56] Taxpayer-provided spreadsheet.
[57] Taxpayer-provided spreadsheet.
[58] Taxpayer-provided spreadsheet.
[59] Taxpayer-provided spreadsheet.
[60] Taxpayer-provided spreadsheet.
[61] Taxpayer-provided spreadsheet.
[62] Taxpayer-provided spreadsheet.
[63] Taxpayer-provided spreadsheet.

| | | | Biz [Business] Phone = $366 [64] |
| | | | Cell Phone = $2592 [65] |
| | | | Checks = $12 [66] |
| | | | Workboots = $140 [67] |
| | | | Tools = $330 [68] |

**Clayton, Paul**

*Tax Year 2017*

The data was acquired over the phone by Joshua Scott Milam, J.D., LL.M, using the 2017 Tax Interview Packet on April 13, 2018, at 7:30 pm CT.  Abraham DeLuna entered the data for the return on April 14, 2018, at 5:47 pm for 17 minutes.  The proposal was sent via email on April 16, 2018.  The client approved the proposal via email on April 17, 2018.  The tax return was filed on April 17, 2018.  The client was provided a copy on May 29, 2018.  The source of the Schedule C Gross Income was from two separate IRS Forms 1099-MISC from third-party clients of the taxpayer.  The total fee was $2,999.  Of that total, $2,248 was for Unreimbursed Employee Expenses and $751 for childcare, which was disclosed as "Work-Related Family Supervision" on Statement 2 for Schedule A.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A | Other Expenses | $5,290 | Workplace Goodwill Development [Meals] = $800 [69]<br><br>Work-Related Family Supervision = $4,490 [70] |

---

[64] Taxpayer-provided spreadsheet.
[65] The Virtual Tax Interview reflects that the taxpayer indicated $2,642.
[66] Taxpayer-provided spreadsheet.
[67] In the Virtual Tax Interview, the taxpayer answered "Yes" to the question "Did you have any other work clothing expenses, like work shoes or work boots?"
[68] In the Virtual Tax Interview, the taxpayer answered "Yes" to the question "Did you have any expenses for any equipment, instruments, or tools in 2019?"
[69] *See* Sec. 162 (which will be briefed separately in Defendant's Trial Memorandum). The taxpayer stated he had business-like lunches once a week, resulting in an average bill of $7.69 for 52 weeks.  7.69 x 52 = 399.88, which rounds up to $400.
[70] *See* Sec. Childcare (which will be briefed separately in Defendant's Trial Memorandum). This position was prominently disclosed and explained on the tax return at Statement 2 for Schedule A.

| Schedule A | Unreimbursed Employee Expenses [71] | $6,999 | Vehicle Expenses at *Cohan* 70% Estimate = $3,501 [72]<br><br>Vehicle Expenses at *Cohan* 70% Estimate = $1,973 [73]<br><br>Depreciation from 2015 Listing of VW GTI = $1,525 |
| --- | --- | --- | --- |
| Schedule C | Depreciation | $20,000 | VW GTI = $20,000 [74] |
| Schedule C | Gross Receipts | $5,370 | Form 1099-MISC for Nonemployee Compensation from First Baptist Church = $1,000<br><br>Form 1099-MISC for Nonemployee Compensation from Brother Entertainment LLC = $4,370 |
| Schedule C | Supplies | $6,771 | Educator Expenses = $962 [75]<br><br>Work Tools = $5,809 [76] |
| Schedule C | Travel Expenses | $862 | Toll Charges = $862 |
| Schedule C | Employee Benefits | $13,421 | Child Care = $5,500 [77]<br><br>Medical = $7,247<br><br>Medical = $454<br><br>Medical = $220 |

---

[71] *See* Sec. 162

[72] *See* Sec. Software Error (which will be briefed separately in Defendant's Trial Memorandum). *See* Sec. Commut. (which will be briefed separately in Defendant's Trial Memorandum).

[73] *Id.*

[74] *See* Sec. Commut.

[75] This item represents $962.36 for educator expenses as a teacher in tax year 2017.

[76] This represent $1,488 for the taxpayer's cell phone service, $549 for a new phone, $1,019 for home internet at 20% business use, $2,752 for work instruments and tools, and $600 for uniform costs.

[77] According to the annual tax interview notes of Joshua Scott Milam, J.D., LL.M., the Claytons indicated they had $9,490 in day care expenses and $500 for babysitters for a total of $9,990 that were "necessary to pursue employment." Of that $9,900, firm staff determined that only $5,500 applied to the music business with the remaining $4,490 reported on Schedule A. *See* Sec. Childcare (which will be briefed separately in Defendant's Trial Memorandum).

## Jackson, Angela

### Tax Year 2017

The data was acquired over the phone by Ismael Garza on March 2, 2018, at 11:00 am CT using the 2017 Tax Interview Packet.  Abraham DeLuna entered the data for the return on March 2, 2018, at 2:29 pm CT for 9 minutes.  The proposal was sent via email on March 12, 2019, at 1:05 am CT.  In other words, this proposal was prepared in the late evening hours of Sunday night going into Monday morning after Castro worked approximately 15 hours straight.  The client approved the proposal via email on March 14, 2018.  The tax return was filed on March 14, 2018, but held in suspense prior to processing.  The taxpayer was provided a copy on April 24, 2018.  The taxpayer confirmed the content of the return with the IRS.  Thereafter, it was released for processing.  The total fee was $2,999, which was entirely attributable to Unreimbursed Employee Expenses.

| Location | Description | Amount | Explanation |
|----------|-------------|--------|-------------|
| Schedule A | Unreimbursed Employee Expenses, Work Tools [78] | $2,400 | Phone Usage = $1,440<br><br>Home Internet for Work = $960<br><br>[79] |
| Schedule A | Other Expenses | $28,600 | Workplace Goodwill Development [Meals] = $2,600 [80]<br><br>Audi Q5, Expense Election = $26,000 [81] |

## Karavangelos, Christian

### Tax Year 2017

The data was acquired over the phone by Ismael Garza on Thursday, March 15, 2018, at 11:00 am CT.  Abraham DeLuna entered the data for the return on March 15, 2018.  The proposal was sent via email on March 23, 2018.  The client approved the proposal via email on March 24, 2018.  The tax return was filed on March 24, 2018.  The total fee was $1,999.  Of that total, $240 for

---

[78] *See* Sec. 162

[79] This item was with respect to tax year 2017 when any employee was permitted to deduct unreimbursed business expenses.  The 2017 IRS Form 2106 instructions explicitly state: "Use Form 2106 if you were an employee deducting ordinary and necessary expenses for your job. See the flowchart below to find out if you must file this form. An ordinary expense is one that is common and accepted in your field of trade, business, or profession. A necessary expense is one that is helpful and appropriate for your business. An expense doesn't have to be required to be considered necessary."

[80] Taxpayer informed firm staff that she averaged $10 per day for lunch with "co-workers, colleagues, or clients" and did so 5 days a week.

[81] *See* Sec. Deprec. (which will be briefed separately in Defendant's Trial Memorandum).

Unreimbursed Employee Expenses, $852 for Work-Related Impairment Prevention Expenses, and $907 for Section 119 Self-Employed Self-Provided Lodging on the Premises.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 21 | Unreimbursed Employee Expenses [82] | $6,765 | *Work Tools = $2050*<br><br>Business Phone Usage = $1,140 [83]<br><br>Tools = $30 [84]<br><br>Business Internet Usage = $840 [85]<br><br>Ink = $40 [86]<br><br>*Form 2106 = $4715*<br><br>Tolls = $1,040 [87]<br><br>Gas & Oil = $1420<br>Car Repairs = $650<br>Car Insurance = $3180<br>At 70% [88] business use, [89] $3,675. |
| Schedule A, Line 28 | Work-Related Temporary | $14,508 | Annual Tax Interview = $5,250 [90] |

---

[82] *See* Sec. 162.  There was no limit on such deductions in 2017, and there was no requirement that the expense be associated with a reimbursement arrangement because, for tax years 2017 and prior, this category was typically deducted as a below-the-line miscellaneous itemized deduction pursuant to IRS forms.

[83] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "What is your monthly cellular telephone bill?

[84] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "Now the next major topic is primarily for more hands-on types of employment.  Did you have any expenses for any equipment, instruments, or tools in 2017? For example, if you're a nurse, this could include things like stethoscopes?"

[85] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "Did you pay each month for your home Internet service? Would you say that you use your home Internet for any work-related items, such as doing research for doing work from home? If so, it's deductible as a home-office expense."

[86] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "Did you purchase any new computer, laptop, phone, tablet, camera, printer, ink, paper, scanner, copier, fax, shredder, other office equipment or software in 2017?"

[87] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "Did you have any Tollway charges are Toll Tag costs?" This was expressed by the taxpayer as $2 one-way, indicating that $4 round-trip each day was appropriate, which was incurred 5 days a week, 52 weeks a year, and resulted in a total of 4 x 5 x 52 = $1,040.

[88] This amount resulted from a software Error.

[89] *See* Sec. Commut.

[90] *See* Sec. Impair.

| | Impairment Prevention Expenses | | Form W-2, Box 12, Code DD = $9258 [91] |
|---|---|---|---|
| Schedule C, Line 14 | Employee Benefit Programs | $1,452 | Mortgage Insurance = $1,452 [92] |

*Tax Year 2018*

The data was acquired over the phone by Ismael Garza on March 5, 2019, at 11:00 am CT using the 2018 Tax Interview Packet. Abraham DeLuna entered the data for the return on March 5, 2019. Kasondra Kay Humphreys CPA reviewed the return and changed data on March 16, 2019. Tiffany Michelle Hunt, J.D., LL.M., reviewed the return and changed data on March 17, 2019. John Anthony Castro reviewed the return that same day. The proposal was sent via email on March 17, 2019. The client approved the proposal via email on March 18, 2019. Tiffany Michelle Hunt, J.D., LL.M., accessed the return and changed data on March 21, 2019. This was most likely to add the newly acquired EIN for the photography business. The tax return was filed on March 26, 2019. The fees were fully paid on Thursday, April 18, 2019. Taxpayer was provided a copy on Monday, April 22, 2019. The total fee was $1,499. Of that total, $575 was for Unreimbursed Employee Expenses and $924 for Section 119.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Form 2106 (1-S), Line 10 | Unreimbursed Employee Business Expenses [93] | $4,611 | Toyota Corolla = $3700 [94]<br><br>Vehicle Insurance of $1302 @ 70% [95] Business Use [96] = $911 |
| Form 2106 (2-T), Line 10 | Unreimbursed Employee Business Expenses [97] | $8,705 | Nissan Sentra = $6,542 [98]<br><br>Gas & Oil = $620<br>Repairs = $240<br>Insurance = $1302 @ 70% [99] Business Use = $1,513 |

---

[91] This amount resulted from a software Error.
[92] *See* Sec. Section 119.
[93] *See* Sec. 162
[94] *See* Sec. Deprec.
[95] This amount resulted from a software Error.
[96] This amount resulted from a software Error. *See also* Sec. Commut.
[97] *See* Sec. 62
[98] *See* Sec. Deprec. The software inadvertently maintained different asset numbers, and thus the 70% limitation rate was not properly applied. As a result, as reported, the deduction should have been $4,579 instead of $6,542. The error resulted from a software error that Mr. Castro was unaware of at the time of preparation and filing.
[99] *See* Sec. Software error.

| | | | Tolls = $650 [100] |
|---|---|---|---|
| Schedule C, Line 14 | Employee Benefits Program [101] | $7,163 | Mortgage = $5,116<br><br>Electricity = $500 [102]<br><br>Medical = $1,547 [103] |
| Schedule C, Line 23 | Taxes and Licenses | $2,140 | Real Estate Taxes for the Section 119 Property |

### Tax Year 2019

The data was provided via the 2019 Virtual Tax Interview completed by Christian Karavangelos on March 17, 2020, at 12:56 pm. Shortly thereafter, employee Kasondra Kay Humphreys CPA followed up with a phone call to gather additional details at 2:30 pm CT. David Garza entered the data for the return on March 18, 2020, at 10:27 am. Tiffany Michelle Hunt, J.D., LL.M., reviewed the return on March 27, 2020, at 7:18 am. The proposal was sent via email on April 2, 2020. The client approved the proposal via email on April 3, 2020. The tax return was filed on March 31, 2020. The fees were settled on Wednesday, June 3, 2020. The client was provided a copy on Wednesday, June 10, 2020. The total fee was $2,999. Of that total, $2,051 was for Unreimbursed Employee Expenses and $448 for Section 119.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Form 2106, Line 10 | Unreimbursed Employee Expenses [104] | $17,400 | Gas & Oil = $840 [105]<br><br>Toyota Corolla = $15,600 [106]<br><br>Cell Phone = $960 [107] |
| Schedule C, Line 8 | Advertising | $4,161 | Advertising = $150 |

---

[100] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "Did you have any Tollway charges are Toll Tag costs?" The taxpayer responded with $650, which would be $1.25 one-way each day, $2.50 per day, 5 days a week for 52 weeks.

[101] *See* Sec. Section 119

[102] Under the firm's reporting position, utilities that make the Section 119 lodging habitable are deductible.

[103] According to the 2018 Tax Interview Packet, this amount represents a $47 dental co-pay and $1,500 for "wife and daughter."

[104] *See* Sec. 62

[105] This amount resulted from a data-entry error by firm staff and should have been limited to the percentage of business use.

[106] *See* Sec. Deprec. This amount resulted from a data-entry error by firm staff and should have been limited to the percentage of business use.

[107] The taxpayer informed the firm that his monthly cell phone bill was $80. 80 x 12 = 960.

| | | | |
|---|---|---|---|
| | | | <u>Charitable Marketing</u>[108] <br><br> Charitable Marketing, Church = $1,935 <br><br> Charitable Marketing, Kyle Stoughton (CRU) = $300 <br><br> Charitable Marketing, The Clark Family (CRU) = $600 <br><br> Charitable Marketing, Matt Navigato (AG) = $480 <br><br> Charitable Marketing, Maria (Compassion International) = $456 <br><br> Charitable Marketing, Z Radio = $240 |
| Schedule C, Line 14 | Employee Benefits Program [109] | $28,081 | Section 119, Mortgage = $1,224 [110] <br><br> Section 119, Utilities, Electricity = $2,193 [111] <br><br> Section 119, Utilities, Water = $835 [112] <br><br> Section 119, Mandatory, HOA = $150 [113] |

---

[108] *See* Sec. Chr. Mtg. (which will be briefed separately in Defendant's Trial Memorandum).

[109] *See* Sec. 119  (which will be briefed separately in Defendant's Trial Memorandum). This reporting position was disclosed and explained on IRS Form 8275.

[110] *Id.*

[111] Under the firm's reporting position, utilities that make the Section 119 lodging habitable are deductible.  The actual amounts was provided by the taxpayer to firm staff on a spreadsheet.

[112] *Id.*

[113] *See* Sec. 119

| | | | |
|---|---|---|---|
| | | | Section 119, Mandatory, Home Insurance = $1,295 [114]<br><br>Vision = $140 [115]<br><br>Dental = $400 [116]<br><br>12DD = $15,424 [117]<br><br>12DD = $6,419 [118] |
| Schedule C, Line 15 | Insurance | $1,396 | Homeowner's Insurance = $1,396 [119] |
| Schedule C, Line 16a | Mortgage Interest | $6,264 | Mortgage Interest from Form 1098 |
| Schedule C, Line 48 | Other Expenses | $2,145 | $750 = Other Expenses from Client-Provided Spreadsheet<br><br>$1395 = Mortgage Insurance Premiums [120] |

**Lampkin, Ahmad**

*Tax Year 2017*

The data was acquired over the phone by Joshua Scott Milam, J.D., LL.M., on March 13, 2018, at 10:30 am CT using the 2017 Tax Interview Packet. Abraham DeLuna subsequently entered the data for the return on March 14-15, 2018. The proposal was sent via email on March 21, 2018. Mr. Lampkin approved the proposal via email on March 21, 2018. The tax return was electronically filed on March 24, 2018. An extension was mistakenly filed on April 25, 2018. The expected fee was $2,999 but never collected due to Mr. Lampkin's outstanding tax debts and Department of Education debt.

---

[114] *See* Sec. 163(h)(3)
[115] *See* Sec. Impair.
[116] *Id.*
[117] Code DD.
[118] *Id.*
[119] *See* Sec. 163(h)(3) (which will be briefed separately in Defendant's Trial Memorandum). This item also reflects a data entry error.
[120] *See* Sec. 119.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 21 | Unreimbursed Employee Expenses[121] | $9,666 | $426 = Union Dues [122]<br><br>$480 = Home Internet for Work [123]<br><br>$800 = Work Postage [124]<br><br>$2,580 = Uniforms and Shoes [125]<br><br>$2,880 = Dry Cleaning for Work [126]<br><br>$2,500 = Uber & Lyft [127] |
| Schedule A, Line 23 | Other Expenses | $1,700 | Workplace Goodwill Development (Meals) = $1,000<br><br>$250 = Christmas and Birthday Gifts to |

---

[121] *See* Sec. 162

[122] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you have any membership fees for any professional organizations in 2017? This includes any union dues in 2017.*" The taxpayer stated $426 in union dues.

[123] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you pay each month for your home Internet service? Would you say that you use your home Internet for any work-related items, such as doing research for doing work from home? If so, it's deductible as a home-office expense.*" The taxpayer stated $480.

[124] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you have any work-related postage or mail expenses?*" The taxpayer confirmed $800 in work postage.

[125] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you have any expenses for any uniforms?35 This could include things like flame retardant clothing for welders or scrubs for medical professionals.*" The taxpayer confirmed $2,580 in uniforms and work shoes, which was non-slip shoes.

[126] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you have any dry cleaning, tailoring, or altering expenses for any of the uniforms or work clothing?*" The taxpayer stated $2,880 for "dry cleaning for work."

[127] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "*Did you have any local transportation expenses, such as Uber, a Metro pass, railway, subway, or taxis?*" The taxpayer stated $2500, which would have been entered on Form 2106.

| | | | Coworkers or Clients [128]<br><br>$500 = Conference Fees [129] |
|---|---|---|---|
| Schedule A | Other Miscellaneous Deductions | $9,141 [130] | $1,746 = Health Insurance Premiums [131]<br><br>Box 12 Code DD = $7,395 [132] |

**Tax Year 2018**

This return was filed in error. A draft return with mock numbers was inadvertently filed prior to finalization.

The data was acquired over the phone by Tiffany Michelle Hunt, J.D., LL.M., on April 4, 2019, at 5:30pm CT, using the 2018 Tax Interview Packet. Ms. Hunt uploaded it into the ProLaw database only 13 minutes later at 5:43pm CT. The tax return was inadvertently filed prior to finalization on April 29, 2019.

Amended Returns were paper-filed on June 17, 2019. Mr. Lampkin was notified of the amendments via email on June 25, 2019.

The 2018 1040X Amendment Explanation states: "Tax return filed in error prior to finalization. Removing all deductions."

Table showing what was provided by Mr. Lampkin.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 19 | Gifts to Charity | $7,520 | "To Non Profit" = $300 |

---

[128] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you have any expenses associated with gifts or entertainment related to any coworkers or clients in 2017?*" The taxpayer stated $250 in various business gifts.

[129] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you have any expenses associated with any networking events or conferences in 2017? This could include the registration fees hotels meals with other colleagues at that conference or anything like that?*" The taxpayer confirmed $500 for "conference fees."

[130] This amount is supported by the taxpayer's Form W-2, Box 12, Code DD, which were added to the amount that he stated for premiums in his 2017 Tax Interview Packet.

[131] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "*How much would you say you paid in health insurance premiums 2017? This includes deductibles and co-pays.*" The taxpayer confirmed $1,746.

[132] *See* Sec. Software Error

| | | | AMVET = $2,620 [133] $500 = Volunteer Expenses [134] Unknown = $4,100 |
|---|---|---|---|
| Schedule A, Line 21 | Unreimbursed Employee Expenses | $90,725 | Error [135] |

### Meyer, John

#### Tax Year 2017

The data was acquired over the phone by Joshua Scott Milam, J.D., LL.M., on March 9, 2018, at 4:30 pm using the 2017 Tax Interview Packet. Abraham DeLuna entered the data for the return on March 11, 2018, at 3:38 pm CT for 41 minutes. The proposal was sent via email on March 17, 2018, at 12:16pm CT. The client approved the proposal via email on March 22, 2018. The tax return was filed on March 24, 2018. The fees were settled on July 23, 2018. The client was provided a copy on July 24, 2018. The total fee was $5,999.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 21 > Form 2106, Line 10 | Unreimbursed Employee Expenses [136] | $3,771 | *John Meyer Vehicle Expenses* Gas & Oil = $780 [137] Repairs = $2,422 [138] Insurance = $1,376 [139] @ 70%[140] Business Use[141] = $3,205 *Kelly Meyer Vehicle Expenses* |

---

[133] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet: "*Did you make any donations of property in 2018?*" The taxpayer confirmed that he donated $2,620 to AMVET, a non-profit veterans services organization.

[134] Volunteer expenses incurred while working with charitable organizations are deductible.

[135] This item results from an error in a mock draft return to determine at what point the Alternative Minimum Tax blocks the benefit of any further deductions.

[136] *See* Sec. 162.

[137] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*On average, about how much did you spend on gas each week? Multiply this number by 52 to arrive at an estimated amount for the whole year.*" The taxpayer responded: $15, so 15 x 52 = $780.

[138] Firm intake notes indicate this was for "Explorer and Suburban."

[139] *Id.*

[140] *See* Sec. Software Error.

[141] *See* Sec. Commut.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| | | | Gas & Oil = $260 [142] Repairs = $549 @ 70% [143] Business Use [144] = $566 |
| Schedule A, Line 21 > Form 2106, Line 10 | Other Expenses | $7,516 | "Workplace Goodwill Development" Meals = $120 [145] Deductible Investment Interest = $1,156 [146] Depreciation = $6,240 [147] |

## Natt, Michael

The data was acquired over the phone by Ismael Garza on February 22, 2018, at 2:30pm using the 2017 Tax Interview Packet.  Abraham DeLuna entered the data for the return on February 22, 2018.  The proposal was sent via email on February 23, 2018.  The outstanding proposal was deemed approved in accordance with the Tax Year 2017 Terms & Conditions on June 14, 2018. The tax return was filed on June 14, 2018.  The fees were settled on or about July 24, 2018. The taxpayer was provided a copy of the return.  The total fee was $1,999.  Of that total, $1,699 was for Unreimbursed Employee Expenses and $300 for Work-Connected Temporary Impairment Prevention Expenses.

| Location | Description | Amount | Explanation |
|---|---|---|---|

---

[142] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*On average, about how much did you spend on gas each week? Multiply this number by 52 to arrive at an estimated amount for the whole year.*"  The taxpayer responded: $5, so 5 *x* 52 = $260.

[143] *See* Sect Software Error.

[144] *See* Sec. Commut.

[145] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*There's a misunderstanding in the public that work or business matters absolutely have to be discussed when it comes to meals and entertainment in order for it to be deductible. That's entirely false. The reason it's false is that a lot of times we don't necessarily have breakfast or lunch or give a gift to somebody because we like them. In the work context, it's because were trying to develop good relationships with our coworkers, superiors, or clients, so even though work or business may not have been specifically discussed, it was clearly business motivated. And for that reason, its deductible as goodwill development. In 2017, did you have any work-related meal expenses? Meals are generally considered a personal expense, but, if you had the lunch or breakfast at the worksite on a business trip or with other co-workers colleagues or clients, these qualify as job-related deductible business meals? So on average, how much would you say you spent on job-related breakfasts or lunches each week in 2017? And what was the average bill?*"  The taxpayer responded: 1 time per week, average bill of $3 for only 40 weeks out of the year, so 1 *x* 3 *x* 40 = $120.

[146] *See* Sec. 163(h)(3).

[147] *See* Sec. Software Error.

| Schedule A, Line 21, Statement 7 | Unreimbursed Employee Expenses [148] | $6,251 | Uniforms and Work Clothing = $1,040 [149] |
|---|---|---|---|
| | | | *Work Tools = $2,360* |
| | | | Phone Usage = $1,440 [150] |
| | | | Home Internet for Work = $720 [151] |
| | | | Software = $200 [152] |
| | | | *Form 2106 = $2,851* |
| | | | Tollway and Tol Tag Charges = $520 |
| | | | Gas & Oil = $970 Repairs = $200 Insurance = $2,160 3300      @70% [153] Business Use [154] = $2,331 |
| Schedule A, Line 23 | Other Expenses | $15,648 | Workplace Goodwill Development (Meals) = $1,248 [155] |

---

[148] *See* Sec. 162

[149] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "*Did you have any dry cleaning, tailoring, or altering expenses for any of the uniforms or work clothing?*" Client confirmed $1040 for dry cleaning.

[150] 2017 Tax Interview Packet: "*What is your monthly cellular telephone bill? The reason we generally deduct this as business usage cell phone is because in our modern era it is almost a requirement to have a cell phone. If a person doesn't have a cell phone, I think they would find it very difficult to find a job and to keep that job because generally supervisors and executives one of the get in touch with their employees at any given time, so if you feel that that description fits your situation which it does about 99% of the time today, then yourself on his can be deductible.*" The legal reasoning was explained in the question. The taxpayer agreed and provided the $1440 amount, which is an average of $120 per month.

[151] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "*Did you pay each month for your home Internet service? Would you say that you use your home Internet for any work-related items, such as doing research for doing work from home? If so, it's deductible as a home-office expense.*" The taxpayer confirmed and provided an amount of $720.

[152] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "Did you purchase any new computer, laptop, phone, tablet, camera, printer, ink, paper, scanner, copier, fax, shredder, other office equipment or software in 2017?" The taxpayer confirmed and provided amount.

[153] *See* Sec. Software Error.

[154] *See* Sec. Commut.

[155] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet: "*There's a misunderstanding in the public that work or business matters absolutely have to be discussed when it comes to meals and entertainment in order for it to be deductible. That's entirely false. The reason it's false is that a lot of times we don't necessarily have breakfast*

| | | | |
|---|---|---|---|
| | | | Depreciation (Nissan Rogue) = \$14,400 [156] |
| Schedule A, Line 28 | Work-Connected Temporary Impairment Prevention Expenses [157] | \$2,400 | No details. |

**Putica, Michael**

*Tax Year 2019*

On March 19, 2020, the data was provided by the client via the 2019 Virtual Tax Interview. Katherine Jean Barnes, J.D., LL.M., uploaded the data report into ProLaw. Between March 22-25, 2020, Alexander Gomez entered the data for the return. On March 25, 2020, Alexander Gomez and Michael exchange emails regarding Michael's wife's vehicle used in her piano tutoring business. On April 2, 2020, Tiffany Michelle Hunt, J.D., LL.M., and Kasondra Kay Humphreys CPA both reviewed the return. On April 7, 2020, the tax return was filed. On April 14, 2020, Tiffany sent the proposal via email. On June 10, 2020, the federal refund cleared settling the fee. On June 22, 2020, Michael was provided a copy of his 2019 Tax Return.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule 1, Line 11 / Form 2106, Line 6 | Unreimbursed Employee Expenses [158] | \$47,160 | \$60k Vehicle @ 70%[159] Business Use [160] = \$42,000 [161]  \$2500 Gas \$400 Oil \$3100 Repairs @ 70% = \$4,200 |

---

*or lunch or give a gift to somebody because we like them. In the work context, it's because were trying to develop good relationships with our coworkers, superiors, or clients, so even though work or business may not have been specifically discussed, it was clearly business motivated. And for that reason, its deductible as goodwill development. In 2017, did you have any work-related meal expenses? Meals are generally considered a personal expense, but, if you had the lunch or breakfast at the worksite on a business trip or with other co-workers colleagues or clients, these qualify as job-related deductible business meals? So on average, how much would you say you spent on job-related breakfasts or lunches each week in 2017? And what was the average bill?"* The taxpayer confirmed 5 days a week, average bill of \$4.80, for 52 weeks. 5 *x* 4.80 *x* 52 = \$1,248.

[156] *See* Sec. Deprec. and Sec. Commut. The original purchase was \$24,000. The tax software made the determination to deduct 50% upfront and then depreciate the remaining \$12k over 5 years, so \$2,400 per year. This resulted in \$12,000 + \$2400 = \$14,400. However, the item was input in the incorrect section by firm staff, so the 70% business-use limit was not applied. If it had been placed in the correct section and fully expensed, the taxpayer could have deducted \$16,800.

[157] *See* Sec. Impair.

[158] *See* Sec. 162.

[159] *See* Sec. Software Error.

[160] *See* Sec. Deprec.

[161] *See* Sec. Commut.

| | | | |
|---|---|---|---|
| | | | Cell Phone = $960 [162] |
| Schedule E, Line 6 | Auto and Travel | $5,800 | Software Error [163] |
| Schedule C, Line 9 | Car and Truck Expenses | $6,340 | Gas = $3,000 Oil = $240 Tires = $900 Insurance = $2200 [164] |
| Schedule C, Line 13 | Depreciation | $38,000 | Mazda CX- = $38,000 [165] |
| Schedule C, Line 14 | Employee Benefit Programs [166] | $36,576 | Section 119 Lodging Principal = $4,268 Section 119 Loan-Mandated Insurance = $913 Section 119 HOA = $2,800 Section 119 Utilities = $4,536 [167] Vision = $500 [168] Routine Medical Check-Ups = $6,972 [169] 12DD = $16,587 [170] |
| Schedule C, Line 18 | Office Expenses | $905 | Client Spreadsheet = $55 Cell Phone = $600 [171] |

---

[162] The taxpayer provided this information during the 2019 Virtual Tax Interview and indicated that his monthly cell bill was $80, so 80 *x* 12 = $960.

[163] *See* Sec. Software Error.

[164] *See* Sec. Software Error. This item also reflects a data entry error.

[165] *See* Sec. Deprec. Data entry error.

[166] *See* Sec. 119 This position was prominently disclosed and explained on Form 8275.

[167] *See* Sec. 119

[168] *See* Sec. Impair.

[169] This items appears to result from an error.

[170] *See* Sec. Software Error.

[171] This reflects the amount that the taxpayer provided firm staff during the 2019 Virtual Tax Interview. The taxpayer indicated his wife's monthly cell bill was $50, so 50 *x* 12 = $600.

| | | | Newspapers = $250 [172] |
|---|---|---|---|
| Schedule C, Line 22 | Supplies Expenses | $31,797 | Client Spreadsheet = $31,796.63 [173] |
| Schedule C, Line 23 | Taxes and Licenses | $13,682 | Form 1098 Real Estate Taxes [174] |

**Quigley, Brian**

The data was acquired over the phone by Joshua Scott Milam, J.D., LL.M., on Friday, February 2, 2018, at 7:30 pm CT using the 2017 Tax Interview Packet. Abraham DeLuna entered the data for the return on February 5, 2018, at 2:48 pm for 20 minutes. The proposal was sent via email on February 7, 2018. The client approved the proposal via email on February 7, 2018. The tax return was filed on February 12, 2018. The fees were settled on March 15, 2018. The client was provided a copy of the tax return on May 16, 2018. The total fee was $749. Of that total, $408 was for Unreimbursed Employee Expenses and $25 for Work-Connected Temporary Impairment Prevention Expense.

| **Location** | **Description** | **Amount** | **Explanation** |
|---|---|---|---|
| Schedule A, Line 21 | Unreimbursed Employee Expenses [175] | $1,847 | *Work Tools*<br><br>Office Supplies = $120 [176]<br><br>Projector for Classroom = $600 [177]<br><br>*Form 2106*<br><br>Gas & Oil = $290<br>Insurance = $1,320 |

---

[172] This amount reflects the taxpayer's response to the 2019 Virtual Tax Interview = "*Did you have any expenses associated with any subscription or research expenses associated with your job?*" The taxpayer indicated $250 in newspaper expenses for research.

[173] The taxpayer provided this information on a spreadsheet. A note in the firm's tax software suggests this may have been a piano. *See* Sec. Deprec.

[174] This amount reflects the taxpayer's response to the 2019 Virtual tax Interview = "*Did you pay any real estate taxes in 2019?*" The taxpayer said yes and provided $13,682. *See* Sec. 119

[175] *See* Sec. 162

[176] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you purchase any new computer, laptop, phone, tablet, camera, printer, ink, paper, scanner, copier, fax, shredder, other office equipment or software in 2017?*" Client responded with $20 for "printer paper" and $100 for "Miscellaneous Home School Materials." Joshua Scott Milam, J.D., LL.M., who conducted the interview, determined that this was linked with Mr. Quigley's job.

[177] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you purchase any new office desk chair furniture and equipment office supplies office machines like monitors are routers or any repairs and maintenance of any of those types of items in 2017?*" The taxpayer responded: $600 for "Projector for Classroom."

| | | | @70%[178] Business Use[179] = $1,127 |
|---|---|---|---|
| Schedule A, Line 23 | Other Itemized Deductions | $6,843 | "Workplace Goodwill Development" Meals = $104 [180] <br><br> Continuing Education = $900 [181] <br><br> Home Office Expenses = $2,400 <br><br> Deductible Interest = $1,020 [182] <br><br> Depreciation = $2,419 |

**Ragsdale, Randolph and Robin**

*Tax Year 2017*

The data was acquired over the phone by Ismael Garza on March 9, 2019, at 10:00 am CT using the 2017 Tax Interview Packet. Abraham DeLuna entered the data for the return on March 9-15, 2018. The proposal was sent via email on March 16, 2018. The client approved the proposal via email on March 26, 2018. The tax return was filed and accepted by the IRS on March 30, 2018. The client was provided a copy on May 3, 2018. The total fee was $1,999. Of that total, $1,455 was for

---

[178] *See* Sec. Software Error.

[179] *See* Sec. Commut.

[180] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*There's a misunderstanding in the public that work or business matters absolutely have to be discussed when it comes to meals and entertainment in order for it to be deductible. That's entirely false. The reason it's false is that a lot of times we don't necessarily have breakfast or lunch or give a gift to somebody because we like them. In the work context, it's because were trying to develop good relationships with our coworkers, superiors, or clients, so even though work or business may not have been specifically discussed, it was clearly business motivated. And for that reason, its deductible as goodwill development.*
*In 2017, did you have any work-related meal expenses? Meals are generally considered a personal expense, but, if you had the lunch or breakfast at the worksite on a business trip or with other coworkers colleagues or clients, these qualify as job-related deductible business meals? So, on average, how much would you say you spent on job-related breakfasts or lunches each week in 2017? And what was the average bill?*" The taxpayer responded once a week (1), average bill of $2 for all 52 weeks, so 1 *x* 2 *x* 52 = $104.

[181] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you have any personal professional development expenses in 2017? This could include self-education expenses like books at Barnes & Noble that are intended to make you better at your current profession and like that?*" The taxpayer responded with $900 for "Home School Curriculum." The amount was deducted in error.

[182] *See* Sec. 163(h)(3). The amended return moved this item to be reflected on Schedule A, Line 13, and corrected the amount to $1,026.

Unreimbursed Employee Expenses and $544 for Work-Connected Temporary Impairment Prevention Expenses.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 21, Statement 3 | Unreimbursed Employee Expenses [183] | $6,937 | *Work Tools*<br>Phone Usage = $2,615 [184]<br>Home Internet Used for Work = $477 [185]<br><br>Uniforms and Protective clothing = $454 [186]<br><br>*Form 2106*<br>Gas & Oil = $2,145<br>Repairs = $434<br>Insurance = $2,265<br>Total of $4,844 @ 70%[187] Business Use[188] = $3,391 |
| Schedule A, Line 23, Statement 2 | Other Expenses | $8,265 | Workplace Goodwill Development (Meals) = $1,404 [189] |

---

[183] *See* Sec. 162

[184] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*What is your monthly cellular telephone bill? The reason we generally deduct this as business usage cell phone is because in our modern era it is almost a requirement to have a cell phone. If a person doesn't have a cell phone, I think they would find it very difficult to find a job and to keep that job because generally supervisors and executives one of the get in touch with their employees at any given time, so if you feel that that description fits your situation which it does about 99% of the time today, then yourself on his can be deductible.*" The taxpayer confirmed and provided a specific figure: $2,615.

[185] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you pay each month for your home Internet service? Would you say that you use your home Internet for any work related items, such as doing research for doing work from home? If so, it's deductible as a home-office expense.*" The taxpayer confirmed and stated $477.

[186] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you have any expenses for any uniforms?35 This could include things like flame retardant clothing for welders or scrubs for medical professionals.*" The taxpayer confirmed and provided an amount of $454.

[187] *See* Sec. Software Error.

[188] *See* Sec. Commut.

[189] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*There's a misunderstanding in the public that work or business matters absolutely have to be discussed when it comes to meals and entertainment in order for it to be deductible. That's entirely false. The reason it's false is that a lot of times we don't necessarily have breakfast or lunch or give a gift to somebody because we like them. In the work context, it's because were trying to develop good relationships with our coworkers, superiors, or clients, so even though work or business may not have been specifically discussed, it was clearly business motivated. And for that reason, its deductible as goodwill development. In 2017, did you have any work-related meal expenses? Meals are generally considered a personal expense, but, if you had the lunch*

| | | | Work-Related Family Supervision = $416 [190] |
| | | | Qualified Deductible Legal Fees = $729 [191] |
| | | | Depreciation (Statute of Limitations Applies) = $5,716 |
| Schedule A, Line 28 | Other Miscellaneous Deductions | $4,373 | Work-Connect Temporary Impairment Prevention Expenses = $4,373 [192] |

*Tax Year 2018*

The data was acquired over the phone by Ismael Garza on April 9, 2019, at 5:00 pm CT using the 2018 Tax Interview Packet. Abraham DeLuna entered the data for the return on April 9, 2019. Ismael entered more data for the return on April 26, 2019. The proposal was sent via email on May 2, 2019. The client approved the proposal via email on May 2, 2019. The tax return was filed on May 10, 2019. The client paid the fee on or about June 4, 2019. The client was provided a copy of his return on July 3, 2019. The total fee was $3,499.

| **Location** | **Description** | **Amount** | **Explanation** |
|---|---|---|---|
| Schedule 1, Line 11 > Form 2106, Line 6 | Unreimbursed Employee Expenses, Randy [193] | $26,416 | Child Care Expenses = $3,481 [194]<br><br>Tolls = $51 [195] |

---

*or breakfast at the worksite on a business trip or with other coworkers colleagues or clients, these qualify as job-related deductible business meals? So on average, how much would you say you spent on job-related breakfasts or lunches each week in 2017? And what was the average bill?*" The taxpayer indicated 5 times per week at $4.40 average per bill for 52 weeks, so 5 *x* 4.4 *x* 52 = $1144. Wife was 1 time per week at $5 average bill for 52 weeks, so 1 *x* 5 *x* 52 = 260. 1144 + 260 = $1,404 as reported.

[190] *See* Sec. Childcare. This was disclosed on the tax return in Statement 2 to Schedule A.

[191] The 2017 Tax Interview Packet indicates these are legal fees.

[192] *See* Sec. Impair.

[193] *See* Sec. 162.

[194] *See* Sec. Childcare.

[195] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*The next section covers expenses you paid in connection with your job during the existence of reimbursement understanding with your employer. If it was your understanding with your employer that you would be allowed a reimbursement but did not actually receive a reimbursement, you can claim a deduction for it…. Did you have any Tollway charges are Toll Tag costs?*" The taxpayer confirmed and provided a total of $51 for tolls.

| | | | |
|---|---|---|---|
| | | | Work-Related Meal Expenses = $2,860 [196] |
| | | | Goodwill Development (Gifts to Colleagues and Clients) = $179 [197] |
| | | | Work Computer = $880 [198] |
| | | | Phone Service for Work = $2,246 [199] |
| | | | Research Expenses = $25 [200] |
| | | | Home Internet for Work = $440 [201] |

[196] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*There's a misunderstanding in the public that work or business matters absolutely have to be discussed when it comes to meals and entertainment in order for it to be deductible. That's entirely false. The reason it's false is that a lot of times we don't necessarily have breakfast or lunch or give a gift to somebody because we like them. In the work context, it's because were trying to develop good relationships with our coworkers, superiors, or clients, so even though work or business may not have been specifically discussed, it was clearly business motivated. And for that reason, its deductible as goodwill development. In 2018, did you have any work-related meal expenses? Meals are generally considered a personal expense, but, if you had the lunch or breakfast at the worksite on a business trip or with other coworkers colleagues or clients, these qualify as job-related deductible business meals? So, on average, how much would you say you spent on job-related breakfasts or lunches each week in 2018? And what was the average bill?*"  The taxpayer provided 1 day per week, average bill of $5, for 52 weeks, which totaled to $260 for himself.  For his wife, he indicated 5 days per week, average bill of $10, for 52 weeks, which totaled $2,600.  Total reported was $2,860.

[197] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*Did you have any expenses associated with gifts or entertainment related to any coworkers or clients in 2018?*"  The taxpayer provided an amount of $179.

[198] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*Did you purchase any new computer, laptop, phone, tablet, camera, printer, ink, paper, scanner, copier, fax, shredder, other office equipment or software in 2018?*"  The taxpayer indicated he purchased a office computer for $880.

[199] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*What is your monthly cellular telephone bill? The reason we generally deduct this as business usage cell phone is because in our modern era it is almost a requirement to have a cell phone. If a person doesn't have a cell phone, I think they would find it very difficult to find a job and to keep that job because generally supervisors and executives one of the get in touch with their employees at any given time, so if you feel that that description fits your situation which it does about 99% of the time today, then yourself on his can be deductible.*"  The taxpayer confirmed and provided a precise amount of $2,246.

[200] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*Did you have any expenses associated with any subscription or research expenses associated with your job, such as magazines, newspapers, or publications? For example, a stock broker in New York having a subscription to the Wall Street Journal. You may actually enjoy reading the Wall Street Journal on a daily basis, but just because you like it doesn't mean that it's not deductible since it is a qualified research expenses associated with your job.*"  The taxpayer confirmed and provided an amount of $25 for "research."

[201] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*Did you pay each month for your home Internet service? Would you say that you use your home Internet for any work related items, such as doing research*

| | | | Postage = $91 [202] |
| | | | |
| | | | Work-Connected Temporary Impairment Prevention Expenses = $6,967 [203] |
| | | | |
| | | | Gas & Oil = $1,143 Insurance = $2,708 @70% [204] Business Use = $2,696 [205] |
| | | | |
| | | | Ford Escape Depreciation = $6,500 [206] |
| Schedule 1, Line 11 > Form 2106, Line 6 | Unreimbursed Employee Expenses, Robin | $9,594 | Gas & Oil = $957 @ 70% [207] Business Use [208] = $670 |
| | | | |
| | | | Ford Escape Depreciation = $8,924 [209] |

*Tax Year 2019*

The data was initially acquired over the phone by Katherine Jean Barnes, J.D., LL.M., on Friday, March 27, 2020, at 1 pm CT. Thereafter, Randolph Ragsdale completed the 2019 Virtual Tax Interview on Sunday, March 29, 2020, at 4:31 pm CT. Alexander Gomez entered the data for the return on April 2 -3, 2020. Katherine Jean Barnes, J.D., LL.M., reviewed the return on April 30, 2020, at 10:34 am CT and worked on it for 1 hour and 14 minutes. Thereafter, Tiffany Michelle Hunt, J.D., LL.M., reviewed the return the same day at 1:58 pm and worked on it for 48 minutes. The proposal was sent via email on May 2, 2020. The client approved the proposal via email on May 3, 2020. The tax return was filed on May 1, 2020. The fees were settled on July 10, 2020. The client

---

*for doing work from home? If so, it's deductible as a home-office expense.*"  The taxpayer confirmed and provided an amount of $440.

[202] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*Did you have any job-related postage or mail expenses?*"  The taxpayer confirmed and provided a precise amount of $91 for "postage."

[203] *See* Section Impair.

[204] *See* Sec. DD Software Error.

[205] *See* Sec. Deprec. Under Section 280F, because this vehicle use was more than 50%, Section 179 expense was permissible.

[206] *Id.*

[207] *See* Sec. DD Software Error.

[208] *See* Sec. Commut

[209] *See* Sec. Deprec.

was provided a copy on July 21, 2020. The total fee was $5,999. Of that total, $3,450 was for Unreimbursed Employee Expenses and $2,549 for Work-Connected Temporary Impairment Prevention Expenses.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule 1 > Line 11 > Form 2106, Line 10 | Unreimbursed Employee Expenses [210] | $8,560 | *Ford Escape Actual Expenses* [211]<br><br>Gas = $676 [212]<br>Oil Change = $48<br>Repairs = $922<br>Insurance = $2,755<br>All @ 70%<br>$3,081<br><br>*Section 62(a)(2)(A)*<br><br>Childcare = $4,293<br><br>Phone Usage = $796 [213]<br><br>Dry Cleaning for Uniforms = $390 [214] |
| Schedule 1 > Line 11 > Form 2106, Line 10 | Unreimbursed Employee Expenses [215] | $29,070 | *Ford Explorer*<br><br>Depreciation of $39,112 at 70% = $27,378 [216]<br><br>Gasoline   $19/week $988<br>Tires & Breaks = $292<br>@70% Business Use = $896 |

---

[210] *See* Sec. 161. This position was disclosed and explained on IRS Form 8275.

[211] Figures provided by the taxpayer via the 2019 Virtual Tax Interview.

[212] The 2019 Virtual tax Interview asked what the taxpayer's weekly gasoline expenses were. The taxpayer indicated $13 per week, so 13 x 52 = 676. 70% business use percentage.

[213] Virtual Tax Interview.

[214] Virtual Tax Interview.

[215] *See* Sec. 162 This position was disclosed and explained on IRS Form 8275.

[216] *See* Sec. Deprec.

| | | | |
|---|---|---|---|
| | | | *Section 62(a)(2)(A)*<br><br>Cell Phone Usage = $796 [217] |
| Schedule A, Line 16 | Other Itemized Deductions | $30,586 | *Work-Connected Impairment Prevention Expenses*[218]<br><br>Medical Check-Ups, Routine = $1,496<br><br>Medications = $400<br><br>Vision = $190<br><br>Dental = $140<br><br>Code 12 DD = $28,360 [219] |

**River, Linda**

*Tax Year 2017*

The data was acquired over the phone by Ismael Garza on March 13, 2018 at 5:00 pm CT using the 2017 Tax Interview Packet. Abraham DeLuna entered the data for the return on March 15, 2018, at 5:48 pm for 18 minutes. The proposal was sent via email on March 21, 2018. The client approved the proposal via email on March 21, 2018. The tax return was filed on March 24, 2018, at 1:14 pm. The fees were settled on August 9, 2018. The client was provided a copy on February 5, 2020. The total fee was $2,999. Of that total, $2,684 was for Unreimbursed Employee Expenses and $315 for Work-Related Temporary Impairment Prevention Expenses.

| **Location** | **Description** | **Amount** | **Explanation** |
|---|---|---|---|
| Schedule A, Line 21 | Unreimbursed Employee Expenses [220] | $7,445 | Uniforms and Protective Clothing = $600 [221]<br><br>*Work Tools* |

---

[217] Virtual Tax Interview.

[218] *See* Sec. Impair.

[219] *See* Sec. Software Error.

[220] *See* Sec. 162.

[221] This amount reflects the taxpayer's response to the Annual Tax Interview question: "Did you have any expenses for any uniforms? This could include things like flame retardant clothing for welders or scrubs for medical professionals." The taxpayer was an insurance specialist for a hospital.

| | | | Business Phone Usage = $2760 [222] |
|---|---|---|---|
| | | | Business Internet Usage = $540 |
| | | | Ink = $120 [223] |
| | | | Office Supplies = $40 [224] |
| | | | *From Form 2106* |
| | | | Gas and Oil, $1600 Repairs, $500 Insurance. $2736 |
| | | | Internal Safe Harbor of 70% [225] Business Use [226] Vehicle = $3,385 |
| Schedule A, Line 23 | Other Expenses | $19,400 | Workplace Goodwill Development (i.e., meals) = $10 a Day *x* 5 Days a Week *x* 52 Weeks in a Year = $2,600 [227] Depreciation = $16,800 [228] [229] |
| Schedule A, Line 28 | Other Miscellaneous Deductions | $4,168 [230] | Work-Related Temporary |

---

[222] The taxpayer indicated that the average monthly bill was $230, so 230 *x* 12 = $2,760.

[223] *See* Sec. 162. This amount reflects the taxpayer's response to the Annual Tax Interview question: "Did you purchase any new computer, laptop, phone, tablet, camera, printer, ink, paper, scanner, copier, fax, shredder, **other office** equipment or software in 2017?" The taxpayer indicated that she paid $120 out of pocket for office ink.

[224] *See* Sec. 162 This amount reflects the taxpayer's response to the Annual Tax Interview question: "Did you purchase any new **office** desk chair furniture and equipment **office** supplies **office** machines like monitors are routers or any repairs and maintenance of any of those types of items in 2017?" The taxpayer indicated that she paid $40 out of pocket for office supplies.

[225] *See* Sec. Software Errors.

[226] *See* Sec. Commut.

[227] Client reported an average of $10 per day on lunch with colleagues, coworkers, and clients, and that she did that every workday. 10 *x* 5 *x* 52 = 2600.

[228] *See* Sec. Deprec. Sec. Software Error.

[229] *See* Sec. Commut.

[230] The Indictment states $4,168 but amount was actually $4,198.

| | | | Impairment Expenses = $4,198 [231] |
|---|---|---|---|

### Tax Year 2018

The data was acquired by Ismael Garza on Saturday, March 9, 2019, at 3 pm. Abraham DeLuna entered the data for the return on March 11, 2019. Kasondra Kay Humphreys CPA reviewed the return on March 20, 2019. The vehicle was transferred to the correct section on this tax return. The proposal was sent via email on March 22, 2019. The client approved the proposal via email on March 22, 2019. The tax return was filed on March 27, 2019. All fees were paid on April 18, 2019. The taxpayer was provided a copy on April 29, 2019. The total fee was $1,999. Of that total, $173 was for Unreimbursed Employee Business Expenses and $1,826 for vehicle error. Linda provided conflicting information regarding her vehicle. For tax year 2018, she told Ismael it was the same vehicle. However, during the tax year 2019 interview, Linda then says that the new Hyundai was purchased in 2018 for $28,000.

| **Location** | **Description** | **Amount** | **Explanation** |
|---|---|---|---|
| Schedule 1, Line 24 | Unreimbursed Employee Expenses [232] | $32,018 | Work-Related Meal Expenses = $1,560 [233]<br><br>Phone Usage = $1,896 [234]<br><br>Home Internet for Work = $540 [235]<br><br>Hyundai Elantra = $25,200 [236]<br><br>Vehicle Expenses, Gasoline and Oil of $1416 and Insurance of $2616 at 70% [237] |

---

[231] *See* Sec. Impair

[232] *See* Sec. 162.

[233] In the 2018 Tax Interview Packet, the taxpayer stated 5 days a week, average lunch tab of $6 throughout the year. 5 *x* 6 *x* 52 = 1560.

[234] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet: "What is your monthly cellular telephone bill? 158 *x* 12 = 1896.

[235] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet: "Did you pay each month for your home Internet service? Would you say that you use your home Internet for any work-related items, such as doing research for doing work from home? If so, it's deductible as a home-office expense." 45 *x* 12 = 540.

[236] *See* Sec. Deprec. The Hyundai was removed from the wrong depreciation section and placed in the correct 2106 section. However, frim staff failed to enter the accumulated depreciation and incorrectly entered the "Date in Service." The 2019 Tax Packet indicates that the taxpayer purchased a Hyundai in 2018. This conflicts with entry "SAME" in the 2018 Packet. The 2019 Packet says the taxpayer bought a new Hyundai in 2018 for $28,000.

[237] *See* Sec. Software Error.

| | | | Business Use[238] = $2,822 [239] |
|---|---|---|---|

**Tax Year 2019**

The data was acquired over the phone by Tiffany Michelle Hunt, J.D., LL.M., on February 15, 2020, using the 2019 Tax Interview Packet.  Tiffany determined whether Linda's activity qualified as a business.  Tiffany assisted Linda in acquiring an Employer Identification Number for her activity after determining Linda satisfied Sections 183 (Business v. Hobby Analysis) and 469 (Material Participation Analysis).  David Garza entered the data for the return on February 21, 2020. Tiffany Michelle Hunt, J.D., LL.M. and Kasondra Kay Humphreys CPA reviewed the return on February 28, 2020.  The proposal was sent via email on February 29, 2020, at 3:04pm CT.  The client approved the proposal via email on February 29, 20200, at 6:01 pm CT. The tax return was filed on Sunday, March 1, 2020, at 11:17am CT.  The client settled her fees on March 19, 2020.  The client was provided a copy of the tax return on March 23, 2020.  The total fee was $1,499.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 16 | Other Itemized Deductions (Work-Related Temporary Impairment Prevention Expenses) [240] | $3,434 | Premiums = $1,626<br><br>Vision Expenses = $434<br><br>Prescription Expenses = $1,000<br><br>Dental Expenses = $190<br><br>Medical Expenses = $150<br><br>Medical Miles = $34 |
| Schedule C, Line 14 | Employee Benefit Programs (Section 119) [241] | $25,677 | General Note<br><br>Phone Usage = $1,908<br><br>Internet = $540<br><br>Computer = $1,700<br><br>Kitchen Mixer = $350 |

---

[238] *See* Sec. Commut.
[239] Error
[240] *See* Sec. Impair. This position was disclosed and explained on Form 8275.
[241] *See* Sec. 119. This position was disclosed and explained on Form 8275.

| | | | |
|---|---|---|---|
| | | | Mortgage = $13,427 <br><br> Water & Electricity = $3,192 <br><br> Tollway Costs = $50 <br><br> Vehicle Gas = $1,300 <br><br> Vehicle Oil = $250 <br><br> Vehicle Tires = $478 <br><br> Vehicle Insurance = $2,406 <br><br> Vehicle Registration Renewal = $76 |

**Sola, Javier**

*Tax Year 2017*

The data was acquired over the phone by Joshua Scott Milam, J.D., LL.M., on Monday, February 5, 2018, at 5:30 pm using the 2017 Tax Interview Packet.  Abraham DeLuna entered the data for the return on February 6, 2018, at 6:25 pm CT for 29 minutes.  The proposal was sent via email on February 7, 2018, at 10:40pm CT after working for nearly 14 hours straight.  The proposal was approved via email on February 7, 2018, at 10:44 pm CT only 4 minutes later.  The tax return was filed on February 13, 2018.  The fees were settled on March 15, 2018.  The taxpayer was provided a copy on May 16, 2018.  The total fee was $1,499.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 21 | Unreimbursed Employee Expenses [242] | $4,484 | *Work Tools = $1656* <br><br> Business Phone = $936 <br><br> Internet Usage = $720 <br><br> *Form 2106 = $2828[243]* <br><br> Gas & Oil = $2335 Repairs = $805 |

---

[242] *See* Sec. 162
[243] The make and model of the vehicle to which these expenses relate is not listed.

| | | | |
|---|---|---|---|
| | | | Insurance = $900<br>All @ 70% [244]<br>Business Use [245] = $2,828 |
| Schedule A, Line 23 | Other Expenses | $598 | Continuing Education = $245 [246]<br><br>Professional Exams & License Fees = $222 [247]<br><br>Qualified Deductible Legal Fees = $131 [248] |
| Schedule C, Line 9 | Car and Truck Expenses | $4,040 | *Honda Civic*<br><br>Gas, Oil, Repairs and Insurance = $2335 + 805 + 900 = $4,040 [249] |
| Schedule C, Line 13 | Depreciation | $1,632 | Depreciation for Honda Civic (Statute of Limitations Apply) = $1,632 |
| Schedule C, Line 14 | Employee Benefits Program | $2,348 | Section 165 = $1,700 [250]<br><br>Health Reimbursement = $240 [251] |

---

[244] *See* Sec. Software Error

[245] *See* Sec. Commut.

[246] According to the Annual Tax Interview Packet that was conducted while on the phone with the taxpayer, the question was "*Did you have any continuing education, training, or certification expenses and 2017? This would include CLEs if you're an attorney or anything like that?*" and the taxpayer stated $245 for a "Real Estate Continuing Education."

[247] According to the Annual Tax Interview Packet while on the phone with the taxpayer, the question was "*Did you have any professional exam or license renewal fees in 2017?*" and the taxpayer's response that that this was $222 for a "Real Estate Certification Exam."

[248] According to the Annual Tax Interview Packet this was $110 for a new passport and an additional $21 for a visa to enter the country of Turkey.

[249] Data Entry Error.

[250] According to the Annual Tax Interview Packet, "*The next question is regarding casualty expenses. This covers theft and property damage. Theft is pretty straightforward. It doesn't necessarily have to be reported to the authorities; as long as the theft took place and was not compensated by insurance. Property damage can be tricky. The basic idea is that it's the value of the damage itself; not whether you paid for the repair. This can be as simple as a rock on the highway cracking your windshield or a storm causing a broken window. Anything like this in 2017?*" The taxpayer's response that that this was $1400 for "Roof Damage Repairs" and $300 for "Inspection for Mold."

[251] Deducted in Error.

| | | | Health Reimbursement = $408 [252] |
|---|---|---|---|

**Tax Year 2018**

The data was acquired over the phone by Ismael Garza on Tuesday, February 12, 2019, at 4 pm CT using the 2018 Tax Interview Packet.  Abraham DeLuna entered the data for the return on February 13, 2019.  Kasondra Kay Humphreys CPA reviewed the return on February 18, 2019. The proposal was sent via email on February 20, 2019.  The client approved the proposal via email on February 21, 2019.  The tax return was filed on February 26, 2019.  The fees were settled on March 22, 2019.  The taxpayer was provided a copy on March 22, 2019.  The total fee was $999.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule 1, Line 24 > Form 2106, Line 10 | Unreimbursed Employee Expenses [253] | $7,224 | *Section 62(a)(2)(A)*<br><br>Work-Related Meals = $1,560 [254]<br><br>Work Phone = $550<br><br>Phone Usage = $936<br><br>Home Internet for Work = $720<br><br>*Vehicle Expenses*<br><br>Gas & Oil = $2044 |

---

[252] Deducted in Error.

[253] *See* Sec. 162.  This position was disclosed and explained on Form 8275.

[254] This amount reflects the taxpayer's response to the Tax Interview Packet = "*Now, we understand that most people, including our firm, believed that Congress had abolished all itemized deductions, but the truth is that there were several hidden provisions that allow our firm to generate the same, if not better, results than last year, which we'll go over together.... We'll first start with some basic background information and then get to the more substantive questions regarding **job-related expenses that were not reimbursed under a company arrangement** ... Now the first major topic is going to be all of your UNREIMBURSED JOB-RELATED EXPENSES as mentioned before. ... There's a misunderstanding in the public that work or business matters absolutely have to be discussed when it comes to meals and entertainment in order for it to be deductible. That's entirely false. The reason it's false is that a lot of times we don't necessarily have breakfast or lunch or give a gift to somebody because we like them. In the work context, it's because were trying to develop good relationships with our coworkers, superiors, or clients, so even though work or business may not have been specifically discussed, it was clearly business motivated. And for that reason, its deductible as goodwill development. In 2018, did you have any work-related meal expenses? Meals are generally considered a personal expense, but, if you had the lunch or breakfast at the worksite on a business trip or with other co-workers colleagues or clients, these qualify as job-related deductible business meals? So on average, how much would you say you spent on job-related breakfasts or lunches each week in 2018? And what was the average bill?*"  The taxpayer responded with 5 days per week with an average bill of $6, 5 *x* 6 *x* 52 = 1560.

| | | | Insurance = $1020 At 70% Business Use = $2145 Depreciation = $1,313 |
|---|---|---|---|
| Schedule C, Line 16a | Interest | $7,842 | Mortgage Interest from Form 1098 = $7,842 [255] |
| Schedule C, Line 48 | Other | $918 | Mortgage Insurance Points = $918 [256] |

### Tax year 2019

The data was acquired over the phone by Katherine Jean Barnes, J.D., LL.M., on Friday, January 31, 2020, at 8:00 am. Ismael Garza entered the basic data for the return on February 4, 2020, at 2:30pm over a 23-minute period.  After that, Alexander Gomez worked on the return on February 7, 2020, at 10:12am for 19 minutes and then again at 2:01pm for over 2 hours.  Kasondra Kay Humphreys CPA reviewed the return on February 12, 2020, at 11:50am and worked on the return for 3 and a half hours. The proposal was sent via email on February 19, 2020.  The client approved the proposal via email on February 19, 2020.  Tiffany Michelle Hunt, J.D., LL.M., reviewed the return and changed data on February 24, 2020, at 10:39am CT for 14 minutes.    The tax return was filed on March 4, 2020.  The fees were settled on March 25, 2020. The taxpayer was provided a copy on March 31, 2020.  The total fee was $4,499.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule 1, Line 11 > Form 2106, Line | Unreimbursed Employee Expenses [257] | $6,671 | *Employee Expenses* "Goodwill Development" Meals = $200 [258] |

---

[255] *See* Sec. 119.

[256] *Id.*  The tax software system automatically moved this item from the Form 1098 that was linked to the Schedule C and put it under Line 48, Other Expenses.

[257] *See* Sec. 162

[258] This amount reflects the taxpayer's response to the 2019 Tax Interview Packet = "*Now, we understand that most people, including our firm, believed that Congress had abolished all itemized deductions, but the truth is that there were several hidden provisions that allow our firm to generate the same, if not better, results than last year, which we'll go over together…. We'll first start with some basic background information and then get to the more substantive questions regarding job-related expenses that were not reimbursed under a company arrangement …**The next section covers expenses you paid in connection with your job during the existence of reimbursement understanding with your employer. If it was your understanding with your employer that you would be allowed a reimbursement but did not actually receive a reimbursement, you can claim a deduction for it.**. … No. each Week Average Bill x 52 Estimated Annual Total .. Did you have any expenses associated with gifts or entertainment related to any coworkers or clients in 2019?*"  The taxpayer responded with $200 for "Christmas dinner for church volunteers."

| | | | | Phone Usage (Half) = $468 [259]<br><br>Home Internet for Work (Half) = $390 [260]<br><br>Tolls = $240 [261]<br><br>*Vehicle Expenses*<br><br>Gasoline = $3,900 [262]<br>Oil = $200 [263]<br>Repairs = $500 [264]<br>Insurance = $1,200 [265] @ 70% [266] Business Use [267] = $4,060<br><br>Depreciation (Statute of Limitations Apply) = $1,313 |
|---|---|---|---|---|

[259] This amount reflects the taxpayer's response to the 2019 Tax Interview Packet = "*What is your monthly cellular telephone bill? The reason we generally deduct this as business usage cell phone is because in our modern era it is almost a requirement to have a cell phone. If a person doesn't have a cell phone, I think they would find it very difficult to find a job and to keep that job because generally supervisors and executives one of the get in touch with their employees at any given time, so if you feel that that description fits your situation which it does about 99% of the time today, then yourself on his can be deductible..*" The taxpayer responded: $78 per month, s78 x 52 = $936. Half is $468. The other half was added to Schedule C.

[260] This amount reflects the taxpayer's response to the 2019 Tax Interview Packet = "*Did you pay each month for your home Internet service? Would you say that you use your home Internet for any work related items, such as doing research for doing work from home? If so, it's deductible as a home-office expense.*" The taxpayer responded: $65, 65 x 12 = 780. However, half was claimed here and the other half on Schedule C.

[261] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*Did you have any Tollway charges are Toll Tag costs?*" The taxpayer responded: $240.

[262] This amount reflects the taxpayer's response to the 2019 Tax Interview Packet = "*On average, about how much did you spend on gas each week? Multiply this number by 52 to arrive at an estimated amount for the whole year.*" The taxpayer responded with $75, so 75 x 52 = 3900.

[263] *Id.*

[264] This amount reflects the taxpayer's response to the 2019 Tax Interview Packet = "*Did you have any other repairs or maintenance costs associated with your work vehicle in 2018?*" The taxpayer responded with $500 for "brakes and maintenance." There was also $900 for tires that was not entered by mistake.

[265] This amount reflects the taxpayer's response to the 2019 Tax Interview Packet = "*How much did you pay for your auto insurance last year? Payments for auto insurance are typically quarterly semiannually or annually, if you can't remember a specific number, you can just provide a reasonable good faith estimate and we can go with that for now.*" The taxpayer responded with $2400, but because it was attributable to both his vehicle and his wife's, deduction for half: $1200.

[266] *See* Sec. Software Error.

[267] *See* Sec. Commut.

| Schedule C, Line 14 | Employee Benefits Program [268] | $5,608 | Dependent Care = $2,800 [269]<br><br>Insurance Premiums H&W (Husband and Wife) = $1,728 [270]<br><br>Insurance Premiums Kids = $240 [271]<br><br>Prescriptions = $420<br>Prescriptions = $420 |
| --- | --- | --- | --- |
| Schedule C, Line 16a | Interest | $7,687 | Mortgage Interest = $7,687 [272] |
| Schedule C, Line 17 | Legal and Professional Services | $1,000 | Castro & Co. Fees = $1,000 |
| Schedule C, Line 21 | Repairs and Maintenance | $598 | Oil Changes = $200 [273]<br><br>Plumbing = $398 [274] |
| Schedule C, Line 23 | Taxes and Licenses | $2,916 | Ford Explorer Tax or Inspection = $80<br><br>Real Estate Taxes = $2,836 [275] |
| Schedule C, Line 25 | Utilities | $858 | Phone Usage (Half) = $468<br><br>Internet Usage (Half) = 390 |
| Schedule C, Line 27a > Line 48 | Other | $918 | Mortgage Insurance Premiums = $918 [276] |

---

[268] *See* Sec. 119.
[269] *See* Sec. Childcare.
[270] Deducted in error.
[271] *Id*.
[272] *See* Sec. 119 This position was disclosed and explained on IRS Form 8275.
[273] *See* Sec. 119. Data Entry Error.
[274] *See* Sec. 119
[275] *See* Sec. 119
[276] *See* Sec. 119

| | | | |
|---|---|---|---|

**Tozeto-Ramos, Fabio**

*Tax Year 2019*

The data was acquired via the 2019 Virtual Tax Interview.   Katherine Jean Barnes, J.D., LL.M., uploaded it on July 9, 2020, at 1:14 pm.  Alexander Gomez entered the data for the return on July 9, 2020.  The proposal was sent by Tiffany Michelle Hunt, J.D., LL.M., via email on July 10, 2020, at 5:04 pm CT.  The client approved the proposal via email on July 15, 2020, at 12:26pm CT. The tax return was filed on July 30, 2020, at 2:31 pm.  All fees were paid on September 17, 2020. Taxpayer was provided a copy on October 2, 2020; only 15 days later.  This case involved a new U.S. tax resident with a spouse and dependents who did not have an IRS-issued Individual Taxpayer Identification Number (ITIN). The fee was $7,999.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule 1, Line 11 Form 2106, Line 4 | Unreimbursed Employee Expenses [277] | $9,350 | Educator Expense = $200<br><br>Amendment = $9,150 [278] |
| Schedule C, Line 8 | Advertising | $300 | Networking = $300 [279] |
| Schedule C, Line 9 | Car and Truck Expenses | $4,540 | Gas = $2,080<br>Oil = $60<br>Auto Insurance = $2,000<br>Registration = $400 [280] |
| Schedule C, Line 13 | Depreciation | $21,000 | Toyota Sienna = $30,000 [281] |
| Schedule C, Line 14 | Employee Benefit Programs [282] | $33,132 | Rent / Mortgage = $4,000 [283] |

---

[277] *See* Sec. 162.  This position was disclosed and explained on Form 8275.
[278] The original return only claimed a standard deduction of $12,200 when, in fact, the taxpayer was entitled to a standard deduction of $24,400. To remedy this, $9,150 was added to original return as an above-the-line deduction to adjust the AGI to reflect actual income.
[279] *See* Sec. 162
[280] This item was from the 2019 Virtual Tax Interview where the taxpayer indicated he had an average of $40 per week in gas expenses.  $40 x 52 = $2080.
[281] *See* Sec. Deprec.
[282] *See* Sec.119.  This position was disclosed and explained on Form 8275.
[283] *See* Sec.119.

| | | | |
|---|---|---|---|
| | | | "Sec 119 Work Related Meals" = $2,340 [284]<br><br>"Box 12 DD" = $24,592 [285]<br><br>Out of Pocket Medications = $300<br>Dental = $200<br>Other Medical = $1700 [286] |

**Turatti, Federico**

*Tax Year 2017*

Joshua Scott Milam, J.D., LL.M., conducted the interview on February 19, 2018, at 1:30 pm CT. Abraham DeLuna entered the data for the return on February 20-27, 2018. Proposal was sent via email on February 26, 2018, at 10:39 pm CT. Proposal was approved via email on February 26, 2018, at 10:53 pm CT. Tax return was filed on February 28, 2018. Taxpayer was provided a copy on May 16, 2018. The total fee was $9,999.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 21 | Unreimbursed Employee Expenses, See Statement 11 [287] | $8,482 | Work Tools = $3500<br><br>Work Computer = $2100<br><br>Office Furniture = $200<br><br>Office Router = $300<br><br>Work Internet Usage = $900<br><br>Uniforms and Protective Clothing = $2980<br><br>Form 2106 = $2002 |

---

[284] *See* Sec. 119
[285] Deducted in error.
[286] Deducted in error.
[287] *See* Sec. 162

| | | | |
|---|---|---|---|
| | | | 70%[288] Business Use[289] Vehicle with Gas & Oil Expenses of $2860 = 2860 $x$ .7 = 2002 |
| Schedule A, Line 28 | Other "Miscellaneous" Deductions, See Statement 10 | $37,502 | <u>Work-Connected Temporary Impairment Prevention Expenses[290]</u> = $37,002 <br><br> Medications = $300 <br><br> Doctors = $600 <br><br> Vision-Related = $500 <br><br> Insurance = $11,600 <br><br> Health = $3,012 <br><br> "More Health" from Toyota Form W-2, Box 12, Code DD = $30,346 [291] <br><br> Section 165 Deduction = $500 [292] |

**Tax Year 2018**

The data was acquired over the phone by Ismael Garza on February 25, 2019, at 11 am CT using the 2018 Tax Interview Packet. Abraham DeLuna entered some of the data for the return on February 25, 2019. That same day, Kasondra Kay Humphreys CPA also entered data on February 25, 2019. Tiffany Michelle Hunt, J.D., LL.M., entered data and reviewed the return on February 27, 2019. Castro made some adjustments to the data on March 3, 2019. Tiffany prepared and sent the proposal via email on March 12, 2019, at 6:18pm CT. Proposal was approved via email on March 12, 2019, at 6:34 pm CT. Tax return was filed on March 14, 2019, and confirmed accepted by the IRS that same day. Taxpayer was provided a copy on April 10, 2019; only 27 days later after the

---

[288] *See* Sec. Software Error.
[289] *See* Sec. Commut.
[290] *See* Sec. Impair
[291] Deducted in error.
[292] Deducted in error.

refund cleared.  The total fee was $20,999.  Of that total, $10,595 was for Section 119 Expenses, $150 for Business-Connected Impairment Prevention Expense, $75 for Child Care Expenses, $5,627 for the Medical Expense Error, and $5,863 for Unreimbursed Employee Expenses.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule C, Line 14 | Employee Benefits Program [293] | $98,519 | Mortgage Interest & Principal = $45,600<br><br>Electricity = $3,400 [294]<br><br>Water = $960 [295]<br><br>Gas = $1,800 [296]<br><br>Section 119 Lodging Taxes = $11,275 [297]<br><br>Medical Impairment = $1,000 [298]<br><br>Medical Reimbursement = $5,331<br>Medical Reimbursement = $28,653 [299] |

*Tax Year 2019*

An Annual Tax Interview was scheduled for Katherine Jean Barnes, J.D., LL.M., on February 27, 2020, at 1 pm CT.  However, Katie did not upload the 2019 Annual Tax Questionnaire until March 18, 2020.  Therefore, it appears that Katie did not do the phone-based interview on February 27, 2020, at 1 pm CT.  Instead, she made the client complete the 2019 Annual Tax Questionnaire. The metadata also reflects that the PDF document was modified in GMT Time Zone -5, which is the East Coast where Turatti was located.  The client provided all data and checked the boxes confirming he watched the explanatory videos.  David Garza entered the data for the return on March 20, 2020. Kasondra Kay Humphreys CPA reviewed the return for accounting compliance on March 21, 2020. Tiffany Michelle Hunt, J.D., LL.M., reviewed the return for legal compliance on March 21, 2020.

---

[293] *See* Sec. 119.
[294] *See* Sec. 119.
[295] *See* Sec. 119.
[296] *See* Sec. 119.
[297] *See* Sec. 119.
[298] *See* Sec. Impair.
[299] According to the 2018 Tax Interview Packet, this was in the section Title "Sch A, Row 1, Medical and Dental Expenses."  According to the taxpayert, $28,653 was for his special needs daughter's out-of-state medical exams and $5,331 was for hotels while in Chicago for medical reasons, $33,984 in total.

The proposal sent via email on March 22, 2020, at 5:10 pm CT. Proposal was approved via email on March 22, 2020, at 6:51 pm CT. Tax return was filed on March 22, 2020. All fees were paid on May 14, 2020. Taxpayer was provided a copy on May 20, 2020. The total fee was $24,999.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule C, Line 14 | Employee Benefit Programs [300] | $116,480 | Mortgage = $63,207 [301]<br><br>"Sec 119 Homeowners Insurance" = $2,225 [302]<br><br>"Sec 119, Utilities" = $3,600 [303]<br><br>Medical = $26,105 [304]<br><br>Vision = $200 [305]<br><br>"Box 12 DD" = $21,143 [306] |
| Schedule C, Line 16a | Interest | $15,544 | This is from IRS Form 1098, Mortgage Interest Statement, Line 1. It was linked to the Schedule C in accordance with the Section 119 legal position. |
| Schedule C, Line 17 | Legal and Professional Services | $21,000 | These were Castro & Co.'s fees for tax preparation charged and paid for on or about April 10, 2019. |
| Schedule C, Line 23 | Taxes and Licenses | $11,262 | This is from IRS Form 1098, Mortgage |

---

[300] *See* Sec. 119.
[301] *See* Sec. 119.
[302] *See* Sec. 119.
[303] *See* Sec. 119.
[304] *See* Sec. Impair.
[305] *See* Sec. 162.
[306] *See* Sec. Software Error.

| | | | |
|---|---|---|---|
| | | | Interest Statement, Line 1. It was linked to the Schedule C in accordance with the Section 119 legal position. |

## Wells, Crystal

### Tax Year 2017

The data was acquired over the phone by Joshua Scott Milam, J.D., LL.M., on Saturday, March 24, 2018, at 2:30 pm using the 2017 Tax Interview Packet. Abraham DeLuna entered the data for the return on March 27, 2018, at 10:58 am CT. Castro reviewed the return on Saturday, March 31, 2018, at 12:55 am CT after working for 16 hours straight. Proposal was sent via email on Saturday, March 31, 2018, at 1:11am CT. Proposal was approved via email on April 5, 2018. Tax return was filed on April 6, 2018. The fees were settled on August 17, 2018. Taxpayer was provided a copy on November 2, 2018. The total fee was $1,499.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 21 | Unreimbursed Employee Expenses [307] | $6,210 | Uniforms and Protective Clothing (Scrubs and Non-Slip Shoes) = $500 [308]<br><br>Phone Usage = $1,440 [309]<br><br>Home Internet for Work = $720 [310] |

---

[307] *See* Sec. 162

[308] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you have any expenses for any uniforms? This could include things like flame retardant clothing for welders or scrubs for medical professionals. Did you have any other work clothing expenses, and this can include things like work shoes or work boots like nonslip shoes for medical professionals more steel-toed boots for construction.*" The taxpayer responded with $300 for "Work Uniforms" and $200 for "Work Shoes."

[309] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*What is your monthly cellular telephone bill? The reason we generally deduct this as business usage cell phone is because in our modern era it is almost a requirement to have a cell phone. If a person doesn't have a cell phone, I think they would find it very difficult to find a job and to keep that job because generally supervisors and executives one of the get in touch with their employees at any given time, so if you feel that that description fits your situation which it does about 99% of the time today, then yourself on his can be deductible.*" The taxpayer responded with $120, 120 x 12 = 1440.

[310] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*Did you pay each month for your home Internet service? Would you say that you use your home Internet for any work related items, such as doing research for doing work from home? If so, it's deductible as a home-office expense.*" The taxpayer responded with $60, multiplied by 12 to get to $720.

| | | | |
|---|---|---|---|
| | | | Office Supplies = $200 [311]<br><br>_Form 2106 = 3350_<br>Gas & Oil = $1,100 [312]<br><br>Repairs = $600 [313]<br>Insurance = $2400 @70% [314] Business Use [315] = $2,870<br><br>Tolls = $480 [316] |
| Schedule A, Line 23 | Other Expenses | $15,150 | "Workplace Goodwill Development" (Meals) = $150 [317]<br><br>Chevy Malibu Expensed Election = $15,000 [318] |
| Schedule A, Line 28 | Other Miscellaneous Deductions | $4,820 | Work-Connected Temporary Impairment |

---

[311] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "_Did you purchase any new computer, laptop, phone, tablet, camera, printer, ink, paper, scanner, copier, fax, shredder, other office equipment or software in 2017?_" The taxpayer responded with $200 for "Office Supplies.".

[312] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "_On average, about how much did you spend on gas each week? Multiply this number by 52 to arrive at an estimated amount for the whole year._" Client responded: $20 per week for 52 weeks, so 20 x 52 = 1040. The taxpayer also said 2 oil changes for $30 each, so that's $60. 1040 + 60 = 1100.

[313] The taxpayer indicated a new tire for $100 and total other repairs and maintenance of $500, resulting in 100 + 500 = 600.

[314] _See_ Sec. Software Error.

[315] _See_ Sec. Commut.

[316] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "_Did you have any Tollway charges are Toll Tag costs?_" Client responded with $480 for "Toll Charges." This was likely expressed as an average, $40/month.

[317] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "_There's a misunderstanding in the public that work or business matters absolutely have to be discussed when it comes to meals and entertainment in order for it to be deductible. That's entirely false. The reason it's false is that a lot of times we don't necessarily have breakfast or lunch or give a gift to somebody because we like them. In the work context, it's because were trying to develop good relationships with our coworkers, superiors, or clients, so even though work or business may not have been specifically discussed, it was clearly business motivated. And for that reason, its deductible as goodwill development. In 2017, did you have any work-related meal expenses? Meals are generally considered a personal expense, but, if you had the lunch or breakfast at the worksite on a business trip or with other co-workers colleagues or clients, these qualify as job-related deductible business meals? So on average, how much would you say you spent on job-related breakfasts or lunches each week in 2017? And what was the average bill?_" The taxpayer responded: one time per week, average bill of $2.88 for 52 weeks, so 1 x 2.88 x 52 = 149.76, which the system rounded to $150.

[318] _See_ Sec. Deprec. The firm inadvertently failed to limit the deduction to only the business-use percentage.

| | | | Prevention Expenses = $4,820 [319] |
|---|---|---|---|

### Tax Year 2018

The data was acquired over the phone by Ismael Garza on March 14, 2019, at 1 pm CT using the 2018 Tax Interview Packet. Abraham DeLuna entered the data for the return on March 14, 2019, at 2:26 pm CT for 63 minutes. Kasondra Kay Humphreys CPA reviewed the return on March 22, 2019, at 2:04 pm for 15 minutes and again on March 25, 2019, at 3:11 pm for 4 minutes. Castro reviewed the return on March 29, 2019, at 12:39 am for 2 minutes. Proposal was sent via email on March 30, 2019, at 5:59 pm. Proposal was approved via email on April 12, 2019, at 10:46 am. Tax return was filed on April 12, 2019. The fees were settled on May 8, 2019. Taxpayer was provided a copy on July 2, 2019. The total fee was $500.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule 1, Line 24 > Form 2106, Line 10 | Unreimbursed Employee Expenses [320] | $10,739 | Tollway Charges = $350 [321]<br><br>"Goodwill Development" (Gifts to Clients or Co-Workers) = $200<br><br>Phone Usage = $1680 [322]<br><br>License Expenses = $100 [323] |

---

[319] *See* Sec. Impair.

[320] *See* Sec. 162.

[321] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*Now, we understand that most people, including our firm, believed that Congress had abolished all itemized deductions, but the truth is that there were several hidden provisions that allow our firm to generate the same, if not better, results than last year, which we'll go over together…. We'll first start with some basic background information and then get to the more substantive questions regarding **job-related expenses that were not reimbursed under a company arrangement** … Now the first major topic is going to be all of your UNREIMBURSED JOB-RELATED EXPENSES as mentioned before. … Did you have any Tollway charges are Toll Tag costs?*" The taxpayer responded: $350.

[322] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*What is your monthly cellular telephone bill? The reason we generally deduct this as business usage cell phone is because in our modern era it is almost a requirement to have a cell phone. If a person doesn't have a cell phone, I think they would find it very difficult to find a job and to keep that job because generally supervisors and executives one of the get in touch with their employees at any given time, so if you feel that that description fits your situation which it does about 99% of the time today, then yourself on his can be deductible.*" The taxpayer responded with $1680, expressed as $140 per month.

[323] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*Did you have any professional exam or license renewal fees in 2018?*" The taxpayer responded with $100 for "Nursing License."

| | | | Home Internet for Work = $720 [324] |
|---|---|---|---|
| | | | Work Uniforms = $300 [325] |
| | | | Work Shoes = $100 [326] |
| | | | _Vehicle Expenses_<br>Gas = $1040 [327]<br>Oil = $90 [328]<br>Brakes = $100 [329]<br>Insurance $2040<br>@70% [330]   Business<br>Use[331] = $2,289 |
| | | | Depreciation (Different Chevy Malibu) = $5,000 [332] |

---

[324] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "_Did you pay each month for your home Internet service? Would you say that you use your home Internet for any work-related items, such as doing research for doing work from home? If so, it's deductible as a home-office expense._"   The taxpayer responded with $720, which would have been expressed as $60 per month.

[325] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "_Did you have any expenses for any uniforms? This could include things like flame retardant clothing for welders or scrubs for medical professionals._"   The taxpayer responded with $300 for "scrubs."

[326] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "_Did you have any other work clothing expenses, and this can include things like work shoes or work boots like non-slip shoes for medical professionals more steel-toed boots for construction?_"   The taxpayer responded with $100 for "shoes."   Because she works in a medical facility, these would have definitely been facility-approved non-slip shoes for medical environments.

[327] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "_On average, about how much did you spend on gas each week?_"   The taxpayer responded with 20, so 20 x 52 = 1040.

[328] This amount reflects the taxpayer's response to the  2018 Tax Interview Packet = "_About how many times would you say you change your oil each year? And what's the average cost per change for you?_" The taxpayer responded 3 at $30 each, so $90 in total.  1040 + 90 = 1130, which is what was reported.

[329] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "_Did you have any entire tire changes or tire rotations in 2018, and if so, was a total cost for it?_"   The taxpayer responded with $100 for "brakes."   This was listed under Repairs.

[330] _See_ Sec. Software Error.

[331] _See_ Sec. Commut.

[332] _See_ Sec. Commut.

**Tax Year 2019**

The data was provided by Crystal Wells with the phone-based guided assistance of Katherine Jean Barnes, J.D., LL.M., on April 9, 2020, at 3 pm CT using the 2019 Virtual Tax Interview. David Garza entered the data for the return on April 10, 2020. Tiffany Michelle Hunt, J.D., LL.M., reviewed the return on April 13, 2020, at 1:14 pm for 68 minutes. Proposal was sent via email on April 23, 2020. Tax return was filed on April 22, 2020. The fees were settled on June 26, 2020. Taxpayer was provided a copy on July 6, 2020. The total fee was $999. Of that total, $900 was for Unreimbursed Employee Expenses and $99 for Work-Connected Temporary Impairment Prevention Expenses.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule 1, Line 11 > Form 2106, Line 10 | Unreimbursed Employee Expenses [333] | $9,382 | *Vehicle Expenses*<br><br>Gas = $780 [334]<br>Oil = $80 [335]<br>Tires and Breaks = $200 [336]<br>Insurance = $8400 [337] @70% [338] Business Use [339] = $6,622<br><br>*Other*<br><br>Tollway Charges = $800 [340]<br><br>Phone Usage = $1,560 [341]<br><br>Work Uniforms = $400 [342] |
| Schedule A, Line 16 | Other Itemized Deductions | $7,203 | Work-Connected Temporary Impairment Prevention Expenses = $7,203 [343] |

---

[333] *See* Sec. 162.
[334] *See* Sec. Commut.
[335] *See* Sec. Commut.
[336] *See* Sec. Commut.
[337] *See* Sec. Commut.
[338] *See* Sec. Software Error.
[339] *See* Sec. Commut.
[340] *See* Sec. Commut.
[341] *See* Sec. 162.
[342] *See* Sec. 162.
[343] *See* Sec. Impair.  This position was disclosed and explained on Form 8275.

In 2017, Ms. Wells identified a Chevy Malibu with a purchase price of $17,400.  In 2018, she identified a Chevy Malibu with a different purchase price of $5,000.  Now, for this 2019 return, she identifies a "Chrysler" Chevy Malibu with a purchase price of $10,000.  Ms. Wells appears to have been misleading.  First with Joshua Scott Milam, J.D., LL.M. for tax year 2017, then Ismael Garza for tax year 2018, and then with Katherine Jean Barnes, J.D., LL.M. for tax year 2019.

## Zilinski, Joseph

### Tax Year 2017

The data was acquired over the phone by Joshua Scott Milam, J.D., LL.M., on Friday, March 9, 2018, at 5:30 pm CT using the 2017 Tax Interview Packet.  Abraham DeLuna entered the data for the return on March 12, 2018, at 1:21 pm CT for 23 minutes and then again on March 16, 2018, at 2:44 pm CT for 4 minutes.  Proposal was sent via email on March 18, 2018.  Proposal was approved via email the same day on March 18, 2018. Tax return was filed on March 19, 2018.  The fees were settled on April 11, 2018. Taxpayer was provided a copy on April 24, 2018.  The total fee was $1,499.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 21 | Unreimbursed Employee Expenses [344] | $9,219 | Uniforms and Protective Clothing = $550 [345]<br><br>Phone Usage = $2,280 [346]<br><br>Home Internet for Work = $540<br><br>Tolls = $900 [347]<br><br>_Joseph's Vehicle_<br><br>Gas & Oil = $2,360 [348] |

---

[344] _See_ Sec. 162

[345] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "_Did you have any expenses for any uniforms? This could include things like flame retardant clothing for welders or scrubs for medical professionals.  Did you have any other work clothing expenses, and this can include things like work shoes or work boots like nonslip shoes for medical professionals more steel-toed boots for construction?_" Client responded with $550 for "Uniforms."

[346] 2017 Tax Interview Packet = "_What is your monthly cellular telephone bill? The reason we generally deduct this as business usage cell phone is because in our modern era it is almost a requirement to have a cell phone. If a person doesn't have a cell phone, I think they would find it very difficult to find a job and to keep that job because generally supervisors and executives one of the get in touch with their employees at any given time, so if you feel that that description fits your situation which it does about 99% of the time today, then yourself on his can be deductible._" The taxpayer responded with $190 per month, so 190 _x_ 12 = $2,280.  The actual precise amount was $2,279.64.

[347]_See_ Sec. Commut.

[348] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "_On average, about how much you spend on gas each week? Multiply this number by 52 to arrive at an estimated amount for the whole year._" The

| | | | Repairs = $800 [349] Insurance = $1,980 @70% [350]   Business Use [351] = $3,598  *Kayla's Vehicle*  Gas & Oil = $1,840 [352]  Repairs = $90 [353] @70% [354]   Business Use [355] = $1,351 |
|---|---|---|---|
| Schedule A, Line 23 | Other Expenses | $17,750 | "Workplace Goodwill Development" (Meals) = $350 [356]  Depreciation for $15k Hyundai Tiburon = $9,000  Depreciation for $14k Nissan Rogue = $8,400 [357] |

---

taxpayer responded: $40 per week for 52 weeks, so $2080.  The client indicated 4 oil changes at $70 each, so $280.  2080 + 280 = $2,360.

[349] The taxpayer provided $450 for "New Tires and Installation" and $350 for "Radiator and Battery on Tiburon."

[350] *See* Sec. Software Error.

[351] *See* Sec "Commut."

[352] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*On average, about how much did you spend on gas each week? Multiply this number by 52 to arrive at an estimated amount for the whole year.*" Client responded: $30 per week for 52 weeks, so $1560.  The taxpayer indicated 4 oil changes at $70 each, so $280.  1560 + 280 = $1,840.

[353] The taxpayer provided $90 for "Battery on Rogue," which was a reference to her Nissan Rogue.

[354] *See* Sec. Software Error.

[355] *See* Sec. Commut.

[356] This amount reflects the taxpayer's response to the 2017 Tax Interview Packet = "*There's a misunderstanding in the public that work or business matters absolutely have to be discussed when it comes to meals and entertainment in order for it to be deductible. That's entirely false. The reason it's false is that a lot of times we don't necessarily have breakfast or lunch or give a gift to somebody because we like them. In the work context, it's because were trying to develop good relationships with our coworkers, superiors, or clients, so even though work or business may not have been specifically discussed, it was clearly business motivated. And for that reason, its deductible as goodwill development. In 2017, did you have any work-related meal expenses? Meals are generally considered a personal expense, but, if you had the lunch or breakfast at the worksite on a business trip or with other co-workers colleagues or clients, these qualify as job-related deductible business meals? So on average, how much would you say you spent on job-related breakfasts or lunches each week in 2017? And what was the average bill?*" The taxpayer responded: one time per week, average bill of $6.73 for 52 weeks, so 1 x 6.73 x 52 = 349.96, which the system rounded to $350.

[357] *Id.*

| Schedule A, Line 28 | Other Miscellaneous[358] Deductions | $1,518 | Work-Connected Temporary Impairment Prevention Expenses[359] = $1,518 |
|---|---|---|---|

### Tax Year 2018

The data was acquired over the phone by Ismael Garza on Saturday, March 9, 2019, at 4pm CT using the 2018 Tax Interview Packet.  Abraham DeLuna entered the data for the return on March 11, 2019, at 4:40 pm CT for 44 minutes.  Kasondra Kay Humphreys CPA reviewed the return on March 20, 2019, at 11:11 am CT for 18 minutes.  Proposal was sent via email on March 21, 2019. Proposal was approved via email on March 22, 2019.  Tax return was filed on March 26, 2019.  The fees were settled on April 18, 2019. Taxpayer was provided a copy on April 22, 2019.  The total fee was $1,999.

| Location | Description | Amount | Explanation |
|---|---|---|---|
| Schedule A, Line 24 > Form 2106, Line 10 | Unreimbursed Employee Expenses [360] | $13,302 | Phone Usage = $1,668 [361]<br><br>Home Internet for Work = $1,416 [362]<br><br>Depreciation of Honda Civic = $9,000 [363] |

---

[358] This is a misnomer by the IRS.  Line 28 is for Statutory Itemized Deductions other than "Miscellaneous Itemized Deductions," which are those specifically identified at Section 67(b)(1)-(12).

[359] *See* Sec. Impair.

[360] *See* Sec. 162

[361] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*Now, we understand that most people, including our firm, believed that Congress had abolished all itemized deductions, but the truth is that there were several hidden provisions that allow our firm to generate the same, if not better, results than last year, which we'll go over together…. We'll first start with some basic background information and then get to the more substantive questions regarding **job-related expenses that were not reimbursed under a company arrangement** … Now the first major topic is going to be all of your UNREIMBURSED JOB-RELATED EXPENSES as mentioned before. … What is your monthly cellular telephone bill? The reason we generally deduct this as business usage cell phone is because in our modern era it is almost a requirement to have a cell phone. If a person doesn't have a cell phone, I think they would find it very difficult to find a job and to keep that job because generally supervisors and executives one of the get in touch with their employees at any given time, so if you feel that that description fits your situation which it does about 99% of the time today, then yourself on his can be deductible.*"  The taxpayer responded with $1,668, which was expressed as $139 per month for 12 months, 139 x 12 = 1668.

[362] This amount reflects the taxpayer's response to the 2018 Tax Interview Packet = "*Did you pay each month for your home Internet service? Would you say that you use your home Internet for any work-related items, such as doing research for doing work from home? If so, it's deductible as a home-office expense.*"  The taxpayer responded with $1,416, which would have been expressed as $118 per month.

[363] *See* Sec. Deprec

| | | | |
|---|---|---|---|
| | | | *Vehicle Expenses*<br><br>Gas & Oil = $1,740 @70%[364] Business Use[365] = $1,218 |
| Schedule A, Line 24 > Form 2106, Line 10 | Unreimbursed Employee Expenses | $15,292 | Depreciation (De Facto Expense) of Nissan Rogue = 12,600 [366]<br><br>*Vehicle Expenses*<br><br>Gas & Oil = $1,280<br>Insurance = $2,565 @70% Business Use[367] = $2,692 |

**Tax Year 2019**

The data was provided by Joseph Zilinski on Thursday, February 24, 2020, after he completed the 2019 Tax Interview Packet and sent it to Katherine Jeane Barnes, J.D., LL.M., who had previously spoken with him on Thursday, February 20, 2020, at 6 pm CT. Kasondra Kay Humphreys CPA entered the data for the return and reviewed it on March 4, 2020, at 2:54pm CT for 41 minutes. Proposal was sent via email on March 10, 2020. Shortly thereafter, tax return was mistakenly filed on March 11, 2020, prior to client approval. Joseph later confirms via telephone that he wished to leave everything as-is. On July 14, 2019, Joseph paid the remaining out-of-pocket fee. He was provided a copy on July 14, 2020. The total fee was $1,999.

| **Location** | **Description** | **Amount** | **Explanation** |
|---|---|---|---|
| Schedule 1, Line 11 > Form 2106, Line 10 | Unreimbursed Employee Expenses [368] | $15,538 | Tolls = $1,800 [369]<br><br>Phone Usage = $852[370]<br><br>Home Internet for Work = $1,140 [371] |

---

[364] *See* Sec. Software Error.
[365] *See* Sec. Commut.
[366] *See* Sec. Deprec.
[367] *See* Sec. Commut.
[368] *See* Sec. 162.
[369] *See* Sec. Commut.
[370] *See* Sec. 162.
[371] *See* Sec. 119.

| | | | Honda Fit = $10,000 [372] |
|---|---|---|---|
| | | | *Vehicle Expenses* |
| | | | Gas & Oil = $1,430 [373] |
| | | | Insurance = $1,064 @70% Business Use[374] = $1,746 |
| Schedule 1, Line 11 > Form 2106, Line 10 | Unreimbursed Employee Expenses | $15,653 | Mac Book Air = $1,200 [375] |
| | | | Phone Usage = $850[376] |
| | | | Nissan Rogue = $12,600 [377] |
| | | | *Vehicle Expenses* |
| | | | Gas & Oil = $1,430 [378] |
| | | | @70% Business Use[379] = $1,001 |

---

[372] *See* Sec. Deprec.

[373] This amount reflects the taxpayer's response to the 2019 Self-Completed Tax Packet where asked "*On average, about how much did you spend on gas each week?*"  Client-provided response: $22.50, so 22.50 x 52 = $1170.  The taxpayer then provided 4 oil changes at 65 each, so 65 x 4 = 260.  Finally, 1170 + 260 = $1,430.

[374] *See* Sec. Commut.

[375] *See* Sec. 162.

[376] *See* Sec. 162.

[377] *See* Sec. Deprec.

[378] This amount reflects the taxpayer's response to the 2019 Self-Completed Tax Packet where asked "*On average, about how much did you spend on gas each week?*"  Client-provided response: $22.50, so 22.50 x 52 = $1170.  The taxpayer then provided 4 oil changes at 65 each, so 65 x 4 = 260.  Finally, 1170 + 260 = $1,430.

[379] *See* Sec. Commut.

**Conclusions of Law**

The defense contends that the only legal conclusion the Court need find is whether for each count of the indictment, the government has proven each element of the offense beyond a reasonable doubt.

The defense, particularly focusing on the element of willfulness, at the close of all the evidence will request the Court to find the defendant "not guilty" on all counts.

Respectfully submitted,

/s/ Franklyn Mickelsen
Franklyn Mickelsen
TX Bar No. 14011020
Broden & Mickelsen
2600 State Street
Dallas, TX 75204
(214) 720-9552
(214) 720-9594 (facsimile)
mick@texascrimlaw.com

/s/ Jason B. Freeman
Jason B. Freeman
TX Bar No. 24069736
7011 Main Street
Frisco, TX 75034
(214) 984-3410
(214) 984-3409 (facsimile)

Attorneys for Defendant
John Anthony Castro

**CERTIFICATE OF SERVICE**

I, Jason Freeman, certify that on May 6, 2024, I caused a copy of the foregoing document to be served via electronic filing on all counsel of record.

/s/ Jason Freeman
Jason B. Freeman